1  D. EDWARD HAYS, #162507
   ehays@marshackhays.com
2  LAILA RAIS, #311731
   lrais@marshackhays.com
3  MARSHACK HAYS WOOD LLP
   870 Roosevelt
4  Irvine, California 92620
   Telephone: (949) 333-7777
5  Facsimile: (949) 333-7778

6  Attorneys for Petitioning Creditors,
   CREATIVE ART PARTNERS, LLC
7  MARTIN SIMONE
   FRANK & SIMONE, LLP
8  MACOY CAPITAL MORTGAGE, LLC
   ALLSTATE LENDING GROUP, INC.
9

10              UNITED STATES BANKRUPTCY COURT

11       CENTRAL DISTRICT OF CALIFORNIA – SANTA ANA DIVISION

| | |
|---|---|
| 12  In re | Case No. 8:25-bk-11409-SC |
| 13  CHANTILLY ROAD, LLC, | Chapter 7 |
| 14 | PETITIONING CREDITORS' MOTION TO APPOINT INTERIM TRUSTEE |
| 15        Alleged Debtor. | PURSUANT TO 11 U.S.C. § 303(g) |
| 16 | Hearing: |
| 17 | Date:   July 29, 2025<br>Time:   11:00 a.m. |
| 18 | Ctrm:  5C<br>Place:  411 W. 4th Street |
| 19 | Santa Ana, California 92701 |

20  TO THE HON. SCOTT C. CLARKSON, UNITED STATES BANKRUPTCY COURT JUDGE,

21  THE OFFICE OF THE UNITED STATES TRUSTEE, AND INTERESTED PARTIES:

22        Petitioning Creditors, Creative Art Partners, LLC, Martin Simone, Frank & Simone LLP,

23  Macoy Capital Mortgage, LLC, and Allstate Lending Group, Inc. (collectively, "Petitioning

24  Creditors"), submit this Motion to Appoint Interim Trustee Pursuant to 11 U.S.C. § 303(g)

25  ("Motion"). In support of this Motion, Petitioning Creditors represent as follows:

26  / / /

27

28

                                    1

# TABLE OF CONTENTS

1.   **Summary of Argument**.................................................................................2

2.   **Background** ...............................................................................................3

A.   **Corporate Formation of Chantilly Road, LLC, and its Acquisition of the Bel Air Property** ..............................................................................................3

B.   **CSRPF 2's Loan to Chantilly** .....................................................................4

C.   **Chantilly's Previous Chapter 11 Case** .......................................................5

D.   **The Current Involuntary Bankruptcy Case**.................................................6

3.   **Legal Argument** .......................................................................................6

C.   **Appointment of an interim trustee is necessary to preserve the Estate's property and prevent loss.**...........................................................................8

4.   **Conclusion** ...............................................................................................11

Declaration of D. Edward Hays ...........................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Berg & Berg Enters., LLC v. Boyle*,

   178 Cal. App. 4th 1020, 100 Cal. Rptr. 3d 875 (2009) .......................... 2, 10

*Dollar Tree Stores Inc. v. Toyama Partners LLC*, No. C 10-0325 SI, 2011 U.S. Dist. LEXIS 83873

   (N.D. Cal. Aug. 1, 2011) ..................................................................... 2, 10

*In re Case C&C Dev. Group, LLC*,

   2011 Bankr. LEXIS 4537, at *1 (Bankr. D. Fla. Nov. 15, 2011)...............8, 9

*In re Ctr. For Mgmt. & Tech., Inc.*,

   2007 Bankr. LEXIS 3734, at * 6 (Bankr. Md. Oct. 26, 2007) .......................8

*In re Diamondhead Casino Corp.*,

   540 B.R. 499, 505 (Bankr. D. Del. 2015).......................................................7

MOTION TO APPOINT A TRUSTEE

*In re James Plaza Joint Venture*,

   62 B.R. 959 (Bankr. S.D. Tex. 1986) ............................................................................ 7

**Statutes**

11 U.S.C. § 303(f).......................................................................................................... 8

11 U.S.C. § 303(g).......................................................................................................... 7

**Rules**

Fed. R. Bankr. Proc. 2001 ............................................................................................. 8

MOTION TO APPOINT A TRUSTEE

## 1.    Summary of Argument

In an involuntary bankruptcy, the Court may appoint an interim trustee prior to the entry of an order for relief "if necessary to preserve the property of the estate or to prevent loss to the estate." In this case, the Debtor's only asset is a $20+ million mansion located in the exclusive Bel Air community and commonly known as 1116 Chantilly Road, Los Angeles, CA 90077 ("Property"). The Debtor, however, does not seek to prevent the loss of the Property in a foreclosure. Instead, the Debtor's insider or affiliate, CSPRF2, has filed a motion for relief from stay so that it can foreclose on the Property and leave the estate and its creditors with nothing. If this were a Chapter 11 and an insider sought relief from stay foreclose on the estate's only asset, the Court would undoubtedly appoint a trustee *sua sponte* before creditors could even file a motion.

Despite the Petitioning Creditors request for payment of behalf of their claims, CSRPF 2, on behalf of Chantilly, has refused to make any payments and has instead sought dismissal of Chantilly's prior Chapter 11 bankruptcy case, filed an answer contesting the involuntary petition, and separately filed a motion for relief from stay to foreclose on the Property. According to CSPRF2's motion for relief from stay, the Debtor is insolvent in that the liens recorded against the Property exceed its value. Under California law, members of an LLC have fiduciary duties to creditors upon becoming insolvent. *Berg & Berg Enters., LLC v. Boyle*, 178 Cal. App. 4th 1020, 100 Cal. Rptr. 3d 875 (2009). *Dollar Tree Stores Inc. v. Toyama Partners LLC*, No. C 10-0325 SI, 2011 U.S. Dist. LEXIS 83873 (N.D. Cal. Aug. 1, 2011) [applying *Berg* to an LLC]. By contesting the involuntary (to avoid the immediate appointment of a Chapter 7 trustee) while seeking relief from stay to foreclose the Estate's only asset, the Debtor's insiders are breaching their fiduciary duties. Appointment of an interim trustee is necessary to preserve the property of the estate and to prevent loss to the estate.[1]

---

[1] In CSPRF2's motion for relief from stay, and in the separate motion for relief from stay filed by the senior lender, both movants take the position that the value of the Property is less than secured claims. But, without a neutral trustee marketing the Property and analyzing the validity of CSPRF2's alleged secured claim (which is already being contested by Debtor's former management as infected with usurious interest, the issue of whether equity exists that can be administered for the benefit of creditors remains unknown. Currently, the Debtor is not marketing the Property.

## 2.     Background

### A.     Corporate Formation of Chantilly Road, LLC, and its Acquisition of the Bel Air Property

On or about March 12, 2018, Chantilly was organized as a limited liability company for the purpose of acquiring and developing the property commonly known as 1116 Chantilly Road, Los Angeles, CA 90077 ("Property"). The Property is located in the exclusive Bel Air neighborhood. At that time of acquisition, the Property was an empty lot. It has now been developed into an 18,500 sq. ft. luxurious mansion which received its certificate of occupancy in June 2024.[2]

Chantilly was owned by Leviathan and managed by The Kraken, LLC.[3]

Leviathan LLC ("Leviathan") was formed by the Rudomin family to develop real estate. Leviathan's operating agreement identified that it was managed by The Kraken, LLC ("The Kraken"). Leviathan's operating agreement identified the following membership interests: (a) Adrian Rudomin ("Adrian") 37%, (b) Diego Rudomin ("Diego") 37%, (c) Pablo Rudomin ("Pablo") 12.5%, (d) Isaac Rudomin[4] 12.5%, and (e) The Kraken, LLC 1%.

To manage Leviathan, the Rudomin family created The Kraken, LLC. Adrian was the manager of The Kraken.

There are multiple deeds of trust recorded against the Property. The first deed of trust ("First DOT") is held by Banc of California.[5] The second deed of trust ("Second DOT") is held by CSPRF 2. The third deed of trust ("Third DOT") is held by All State Lending Group.

Development of the Property is complete, and it is ready to be sold.

/ / /

/ / /

---

[2] Videos and photos of the property are readily available online:
https://youtu.be/n9xWmwaNF9s?si=SLZVnJmZDHzGx3Ab
https://maltzauctions.com/auction/indirect-interest-1116-chantilly-rd-los-angeles/
[3] *See* Bankruptcy Case No. 8:24-bk-13197-SC, Dk. No. 74, Declaration of Adrian Rudomin, pg. 2.
[4] Collectively, Adrian Rudomin, Diego Rudomin, Pablo Rudomin, Isaac Rudomin are referred to as the "Guarantors."
[5] According to a recently filed relief from stay motion, the first lienholder is Civic Real Estate Holdings III, LLC. *See,* Dk. No. 13.

3

## B.    CSRPF 2's Loan to Chantilly[6]

While developing the Property, Chantilly faced significant delays and cost increases, which led it to seek out additional funding.

In November 2023, Capstack Partners LLC ("Capstack") agreed to loan Chantilly $2,350,000 ("Loan"). The Note was guaranteed by the Rudomins and their entities.

The funds for the Loan were provided by CSPRF 2, an affiliate of Capstack.

The Loan was secured by a second-in-priority Deed of Trust recorded against the Property. The Guarantors including the Kraken also pledged their membership interests in Leviathan (which owned Chantilly).

CSPRF 2 alleges that on or about August 1, 2024, the day the loan matured, Chantilly defaulted.

On August 2, 2024, CSRPF 2 recorded a notice of default to begin the foreclosure process.

On August 20, 2024, CSRPF 2 alleges that it issued (1) a notice of sale, announcing that a public sale of the Guarantors' and the Kraken's membership interests in Leviathan would be conducted by online bidding on October 4, 2024, at 2:30 pm, and (2) a notification of disposition of collateral to the Guarantors and the Kraken that their membership interests in Leviathan would be auctioned.

Beginning October 2, 2024, Chantilly executed four forbearance agreements ("Forbearance Agreements"), extending the auction to December 4, 2024. In exchange, Chantilly was required to pay, and did pay, CSRPF 2, $442,670 – an amount equal to 11 months of regular payments.

CSPRF 2 alleges that its auction was conducted on December 4, 2024. CSRPF 2 submitted a credit bid in the amount of $1,000, which was the winning bid. As a result, CSRPF 2 contends that it purchased all of the Guarantors' and the Kraken's membership interests in Leviathan (which gave it ownership and control of Chantilly).

---

[6] *See* Bankruptcy Case No. 8:24-bk-13197-SC, Dk. No. 74, Declaration of Adrian Rudomin.

MOTION TO APPOINT A TRUSTEE

Immediately after the auction, CSRPF 2 contends that it amended Leviathan's operating agreement to identify CSRPF 2 as the sole member of Leviathan with David Blatt being named the manager Leviathan.

After CSPRF 2 took control of Chantilly, it has not caused Chantilly to pay its debts owed to other creditors. Instead, it is contesting the involuntary petition and seeking relief from stay to foreclose for its own benefit.

## C.     Chantilly's Previous Chapter 11 Case

On December 15, 2024, a voluntary petition under Chapter 11 of Title 11 of the United States Code was filed by the Rudomins on behalf of Chantilly, initiating case no. 8:24-bk-13197-TA ("Chapter 11 Case").

In its Schedules, Chantilly listed the value of the Property as $28,060,000. *See* Dk. No. 1.

On January 14, 2025, as Dk. No. 29, CSPRF 2, filed a motion to dismiss the Chapter 11 Case ("Motion to Dismiss"), alleging that proper authorization was not provided for the filing of the case since it now owned and controlled Chantilly.

On February 19, 2025, as Dk. No. 74, Chantilly filed an Opposition to the Motion to Dismiss ("Opposition"), arguing that, among other things, the terms of the Loan and Forbearance Agreements were usurious under California law, and that the sale of the Guarantors' and The Kraken's membership interests was invalid.

On February 26, 2025, as Dk. No. 76, Creditors filed a Joinder to the Opposition, arguing that dismissal of the case would result in CSRPF 2 foreclosing on the Property, Chantilly's only asset, to the sole benefit of CSRPF 2 and to the irreparable detriment to Chantilly's bankruptcy estate and creditors.

On May 12, 2025, the Chapter 11 Case was reassigned from the Hon. Theodor C. Albert to the Hon. Scott C. Clarkson. *See* Dk. No. 116.

On May 19, 2025, as Dk. No. 119, the Court entered an order dismissing the Chapter 11 Case. No hearing was held prior to entry of the dismissal.

MOTION TO APPOINT A TRUSTEE

**D.      The Current Involuntary Bankruptcy Case**

On May 25, 2025, the Petitioning Creditors filed an involuntary petition under Chapter 7 of Title 11 of the United States Code against Chantilly, initiating Case No. 8:25-bk-11409-SC. Chantilly appears to be a single asset real estate debtor. As such, unless relief from stay is granted sooner, the automatic stay will expire on the later of 30 days after the court determines it is a SARE or 90 days after entry of an order for relief.

On June 20, 2025, as Dk. Nos. 7 and 8, CSPRF 2 filed a Motion for Relief from the Automatic Stay, requesting a hearing on shortened notice ("RFS"). A hearing has not yet been set on the RFS.

Rather than discharging its fiduciary duty to attempt to sell the Property for the benefit of Chantilly's creditors, CSPRF 2 instead has sought dismissal of the prior bankruptcy case and now relief from stay in this case. If allowed to foreclose, no creditors will receive any distributions on account of their claims. The Petitioning Creditors have sent written demands for payment to CSPRF 2's counsel. It has rejected these requests.

On June 23, 2025, as Dk. No. 9, Chantilly filed its Answer to the Involuntary Petition denying the allegations that an order for relief should be entered.

On July 1, 2025, as Dk. No. 10, Petitioning Creditors filed a Status Report.

On July 8, 2025, as Dk. No. 11, Chantilly filed a response to the Status Report.

On July 8, 2025, as Dk. Nos 13 and 14, Civic Real Estate Holdings III, LLC ("CREH") filed a Motion for Relief From the Automatic Stay, requesting a hearing on shortened notice ("CREH RFS"). A hearing has not yet been set on the CREH RFS.

**3.      Legal Argument**

Chantilly is not paying its debts as they become due. Chantilly, through CSRPF 2, has refused to make payments to the Petitioning Creditors despite their written demands. *See* Hays Declaration, ¶ 11. Debtor's Schedules filed in the Chapter 11 Case demonstrate that the Petitioning Creditors' claims totaled approximately 89% of the creditors of Chantilly's Chapter 11 bankruptcy estate, not including insiders and holders of the First DOT and Second DOT. Refusal to make

payments to the Petitioning Creditors is substantial non-payment of Chantilly's debts as they become due. In addition, Chantilly has taken the position that it is insolvent by contending that the First DOT and Second DOT completely encumber the Property, the sole asset of the Estate, leaving the holder of the Third DOT completely unsecured. *See* Motion for RFS, Dk. No. 7, pg 8.

### A.    An interim trustee should be appointed in this case.

Section 303(g) states:

> At any time after the commencement of an involuntary case under chapter 7 of this title but before an order for relief in the case, the court, on request of a party in interest, after notice to the debtor and hearing, and if necessary to preserve the property of the estate or to prevent loss to the estate, may order the United States trustee to appoint an interim trustee under section 701 of this title to take possession of the property of the estate and to operate any business of the debtor.

11 U.S.C. § 303(g).

"There is limited case law applying section 303(g), no doubt because the request for such relief is rare." *In re Diamondhead Casino Corp.*, 540 B.R. 499, 505 (Bankr. D. Del. 2015) (citations omitted). "In order to appoint a trustee, a movant must show 'a substantial risk of loss to the estate.'" *Id*. Protection of the sole asset of an estate has been found to warrant the appointment of an interim trustee. *See In re James Plaza Joint Venture*, 62 B.R. 959 (Bankr. S.D. Tex. 1986) (Granting the movant's request to appoint an interim trustee to prevent dissipation of the sole asset of the bankruptcy estate, funds on deposit, prior to an adjudication on the merits of the involuntary petition). The Petitioning Creditors assert that all of the elements of Section 303(g) have been satisfied and that the appointment of an interim trustee is appropriate.

### B.    Procedure for the appointment of an interim trustee

Federal Rule of Bankruptcy Procedure 2001 governs the procedure for appointing an interim trustee:

> (a) After an involuntary Chapter 7 case commences but before an order for relief, the court may, on a party in interest's motion, order the United

States trustee to appoint an interim trustee under § 303(g). The motion must set forth the need for the appointment and may be granted only after a hearing on notice to the debtor; the petitioning creditors; the United States trustee; and other parties in interest as the court orders.

(b) An interim trustee may be appointed only if the movant furnishes a bond, in an amount the court approves, to indemnify the debtor for any costs, attorney's fees, expenses, and damages allowable under § 303(i).

(c) The Order's Content. The court's order must state the reason the appointment is needed and specify the trustee's duties.

(d) The Interim Trustee's Final Report. Unless the court orders otherwise, after the qualification of a trustee selected under § 702, the interim trustee must: (1) promptly deliver to the trustee all records and property of the estate that are in the interim trustee's possession or under its control; and (2) within 30 days after the trustee qualifies, file a final report and account.

Here, the Petitioning Creditors have met all procedural requirements under Section 303(g) and Fed. R. Bankr. Proc. 2001 by the filing of this Motion. The Petitioning Creditors each have a claim against Chantilly and thus have a financial stake in Chantilly's case. The Petitioning Creditors are undoubtedly parties in interest. The Petitioning Creditors commenced this involuntary Chapter 7 case. An order for relief has not yet been granted in this case. This Motion sets forth the need for the appointment of an interim trustee. Notice of this Motion has been provided to Chantilly, the United States trustee, and the other parties in interest.

## C.    Appointment of an interim trustee is necessary to preserve the Estate's property and prevent loss.

"[U]ntil an order for relief in the case, any business of the debtor may continue to operate, and the debtor may continue to use, acquire, or dispose of property as if an involuntary case concerning the debtor had not been commenced." 11 U.S.C. § 303(f); *In re Case C&C Dev. Group, LLC*, 2011 Bankr. LEXIS 4537, at *1 (Bankr. D. Fla. Nov. 15, 2011). The time "between the date of an involuntary case's commencement and the date of any order for relief" is referred to as the "gap period." *In re Ctr. For Mgmt. & Tech., Inc.*, 2007 Bankr. LEXIS 3734, at * 6 (Bankr. Md. Oct. 26, 2007). "A creditor may, during this 'gap period,' seek the appointment of an interim trustee to

1  prevent the alleged debtor from dissipating, concealing, or converting its assets." *In re Case C&C*

2  *Dev. Group, LLC*, 2011 Bankr. LEXIS 4537, at *1 (Bankr. D. Fla. Nov. 15, 2011).

3      The sole asset of Chantilly's bankruptcy estate is the Property. As such, Chantilly appears to

4  be a single asset real estate ("SARE") debtor. Therefore, unless relief from stay is granted sooner,

5  the automatic stay will expire on the later of 30 days after the court determines it is a SARE or 90

6  days after entry of an order for relief.

7      The risk of dissipation of Chantilly's sole asset is high. In its Motion for RFS, CSPRF 2

8  contends that the Property is worth only $21 million and that Civic Real Estate Holdings III, LLC,

9  the holder of the First DOT, is owed approximately $17,598,889,80 and that the Second DOT

10  secures a claim of approximately $3,376,938.77.[7] In the CREH RFS, CREH opines that the $21

11  million valuation is "over-optimistic and that "any equity cushion Civic may have had in the

12  Property may already be gone"[8] and alleges that it is owed $17,888,377.58.[9] Based on these

13  contentions, CSPRF 2 contends that the First DOT and the Second DOT exhaust all equity in the

14  Property before considering the Third DOT which secures an approximate $2.5 million claim. In

15  other words, CSPRF 2 explicitly takes the position that Chantilly is insolvent.

16      ### i.    CSRPF 2 has demonstrated its intent to engage in self-dealing

17      Although a creditor acting in its own best interests would typically not be an issue, the

18  circumstances here are different. CSRPF 2 has positioned itself as both a secured creditor of the

19  estate and as the insider in control of the Alleged Debtor. *See* Bankruptcy Case No. 8:24-bk-13197,

20  proof of claim 22-1; Motion to Dismiss.

21      Under California law, the members of an LLC owe fiduciary duties to creditors "to the

22  avoidance of actions that divert, dissipate, or unduly risk corporate assets that might otherwise

23  be used to pay creditors claims. This would include acts that involve self-dealing or the

24  preferential treatment of creditors." *Berg & Berg Enters., LLC v. Boyle*, 178 Cal. App. 4th 1020,

---

26  [7] See Dk. No. 7, pg. 8.

27  [8] *See* Dk. No. 13, pg 15.

28  [9] *See* Dk. No. 13, pg 9.

MOTION TO APPOINT A TRUSTEE

1   100 Cal. Rptr. 3d 875 (2009). *Dollar Tree Stores Inc. v. Toyama Partners LLC*, No. C 10-0325

2   SI, 2011 U.S. Dist. LEXIS 83873 (N.D. Cal. Aug. 1, 2011) [applying *Berg* to an LLC].

3       Rather than discharging its fiduciary duty to attempt to sell the Property for the benefit

4   of Chantilly's creditors, CSPRF 2 instead sought dismissal of the prior bankruptcy case and now

5   relief from stay in this case. If allowed to foreclose, no creditors will receive any distributions

6   on account of their claims. The Petitioning Creditors have sent written demands for payment to

7   CSPRF 2's counsel. It has failed to honor these requests. *See* Hays Declaration, ¶ 11.

8       Given that CSPRF 2's intent is clear to foreclose and not take any steps to try to pay

9   creditors, an interim trustee must be appointed to preserve the estate's interest in the Property. Only

10  a neutral trustee can be trusted to market the Property for sale and to evaluate whether CSPRF 2's

11  claim should be disputed as usurious, avoided as constructively fraudulent, or subordinated.[10] The

12  Rudomins already have litigation pending alleging claims for usury.

13      Based on the conduct of CSRPF 2, the Petitioning Creditors believe that it is in the best

14  interests of the Estate that an interim trustee, as a neutral party, be immediately appointed to preserve

15  Chantilly's only asset (which CSPRF 2 seeks to foreclose). If appointed, a Trustee can evaluate

16  whether the Property can be sold for an amount that would benefit the Estate. Because CSPRF 2 has

17  a conflict of interest in seeking to foreclose the Estate's only asset to the detriment of all creditors, a

18  Trustee is the only safeguard to protecting the interests of creditors. A Trustee can also evaluate

19  claims for breach of fiduciary duty based on CSPRF 2's actions in ignoring creditor claims and

20  seeking to foreclose the debtor's only asset for its exclusive benefit.

21

22

23

24

25

26

---

[10] Given that CSPRF 2 only made the loan in exchange for the members of Chantilly pledging their interests in the debtor, the claim arises out of and relates to its the purchase or acquisition of the debtor's membership interests. As such, it may be subject to subordination under 11 U.S.C. § 510(b). If subordinated, then the lien that secures the subordinated claim must be transferred to the estate under 11 U.S.C. § 510(c)(2).

**4.      Conclusion**

For all the foregoing reasons, Petitioning Creditors believe that sufficient cause exists to appoint an interim trustee in this case and respectfully request that one be appointed.


Dated: July 8, 2025                                     MARSHACK HAYS WOOD LLP


                                                        By:  /s/ D. Edward Hays
                                                            D. EDWARD HAYS
                                                            Attorneys for Petitioning Creditors,
                                                            CREATIVE ART PARTNERS, LLC
                                                            MARTIN SIMONE
                                                            FRANK & SIMONE, LLP
                                                            MACOY CAPITAL MORTGAGE, LLC
                                                            ALLSTATE LENDING GROUP, INC.

# Declaration of D. Edward Hays

I, D. EDWARD HAYS, say and declare as follows:

1.      I am an individual over 18 years of age and competent to make this declaration.

2.      If called upon to do so, I could and would competently testify as to the facts set forth in this Declaration. The facts set forth below are true of my personal knowledge.

3.      I am an attorney at law duly admitted to practice before this Court and all courts of the State of California.

4.      I am a founding partner of the law firm of Marshack Hays Wood LLP, attorneys for Petitioning Creditors, Creative Art Partners, LLC, Martin Simone, Frank & Simone LLP, Macoy Capital Mortgage, LLC, and Allstate Lending Group, Inc., and maintain offices at 870 Roosevelt, Irvine, California, 92620.

5.      Unless otherwise stated, the facts set forth in this declaration are personally known to me and if called as a witness, I could and would competently testify thereto.

6.      All terms not otherwise defined herein are used as they are defined in the Motion.

7.      I make this declaration in support of Petitioning Creditors Motion to Appoint Interim Trustee Pursuant to 11 U.S.C. § 303(g) ("Motion.")

8.      I reviewed the docket in this case and the Chapter 11 case prior to execution of this Declaration to refresh my memory as to the dates on which particular documents were filed.

9.      On February 26, 2025, I sent an e-mail to CSPRF2's counsel, Gabriel Herrera, asking if CSPRF2 had made any decisions about committing to pay Chantilly's debts to my firm's clients (now the Petitioning Creditors).

10.     I never received a response to this e-mail.

11.     Because the Debtor never paid my firm's clients, they filed the involuntary petition which commenced this bankruptcy case.

12.     In the Debtor's prior Chapter 11 case, my firm's clients filed proofs of claim to which no objections were ever filed. True and correct copies of these claims are attached as follows:

Exhibit 1 – Proof of Claim 1-1 filed by Creative Art Partners

1     Exhibit 2 – Proof of Claim 6-1 filed by Macoy Capital

2     Exhibit 3 – Proof of Claim 16-1 filed by Martin Simone

3     Exhibit 4 – Proof of Claim 17-1 filed by Simone & Roos, LLC

4     13.     Pursuant to the Schedules and Statements filed in the prior Chapter 11 case, the

5  Debtor appears to be a single asset real estate case (although the Debtor's former management did

6  not check the box on the petition). A true and correct copy of the petition, schedules, and statements

7  filed to commence the prior Chapter 11 are attached as Exhibit 5.

8     14.     In this case, on June 20, 2025, CSPRF2 has filed a motion for relief from stay. See,

9  Dk. Nos. 7 and 8. No hearing has yet to be set on this motion.

10     15.     In this case, on July 8, 2025, the senior lender CREH filed its motion for relief from

11  stay. See, Dk. Nos. 13 and 14.

     I declare that the foregoing is true and correct under the penalty of perjury. Executed July 8,

13  2025.

14                                    */s/ D. Edward Hays*
                                     D. EDWARD HAYS
15

16

17

18          4929-6990-6258, v. 3

19

20

21

22

23

24

25

26

27

28

MOTION TO APPOINT A TRUSTEE

**EXHIBIT 1**

**Fill in this information to identify the case:**

Debtor 1    Chantilly Road, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court    **Central District of California**

Case number:  **24–13197**

**FILED**

**U.S. Bankruptcy Court**
**Central District of California**

12/24/2024

**Kathleen J. Campbell, Clerk**

## Official Form 410
## Proof of Claim

12/24

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| 1. Who is the current creditor? | Creative Art Partners, LLC |
| --- | --- |
| | Name of the current creditor (the person or entity to be paid for this claim) |
| | Other names the creditor used with the debtor |

| 2. Has this claim been acquired from someone else? | ☑ No |
| --- | --- |
| | ☐ Yes. From whom? |

| 3. Where should notices and payments to the creditor be sent? | Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- | --- |
| Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | Creative Art Partners, LLC | |
| | Name | Name |
| | 6542 Hayes Dr.<br>Los Angeles, CA 90048 | |
| | Contact phone       3236902077 | Contact phone |
| | Contact email<br> accounts@creativeartpartners.com | Contact email |
| | Uniform claim identifier (if you use one): | |

| 4. Does this claim amend one already filed? | ☑ No | | |
| --- | --- | --- | --- |
| | ☐ Yes. Claim number on court claims registry (if known) | Filed on | |
| | | | MM / DD / YYYY |

| 5. Do you know if anyone else has filed a proof of claim for this claim? | ☑ No | |
| --- | --- | --- |
| | ☐ Yes. Who made the earlier filing? | |

EXHIBIT 1, PAGE 14

**Part 2:** **Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No <br> ☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
| 7. **How much is the claim?** | $ 130630.00      **Does this amount include interest or other charges?** <br> ☑ No <br> ☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c). <br> Limit disclosing information that is entitled to privacy, such as healthcare information. <br><br> Breach of artwork rental agreement |
| 9. **Is all or part of the claim secured?** | ☑ No <br> ☐ Yes. The claim is secured by a lien on property. <br> **Nature of property:** <br> ☐ Real estate.   If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.* <br> ☐ Motor vehicle <br> ☐ Other. Describe: _____ <br><br> **Basis for perfection:** _____ <br><br> Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.) <br><br> **Value of property:** $ _____ <br> **Amount of the claim that is secured:** $ _____ <br> **Amount of the claim that is unsecured:** $ _____   (The sum of the secured and unsecured amounts should match the amount in line 7.) <br><br> **Amount necessary to cure any default as of the date of the petition:** $ _____ <br><br> **Annual Interest Rate** (when case was filed) _____ % <br> ☐ Fixed <br> ☐ Variable |
| 10. **Is this claim based on a lease?** | ☑ No <br> ☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
| 11. **Is this claim subject to a right of setoff?** | ☑ No <br> ☐ Yes. Identify the property: _____ |

Official Form 410            Proof of Claim            page 2

EXHIBIT 1, PAGE 15

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | | Amount entitled to priority |
|---|---|---|---|---|

A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority.

☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B).    $ _____

☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7).    $ _____

☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4).    $ _____

☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8).    $ _____

☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5).    $ _____

☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies    $ _____

\* Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment.

## Part 3:  Sign Below

The person completing this proof of claim must sign and date it. FRBP 9011(b).

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both.**
18 U.S.C. §§ 152, 157 and 3571.

Check the appropriate box:

☐    I am the creditor.

☑    I am the creditor's attorney or authorized agent.

☐    I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐    I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    12/24/2024

MM / DD / YYYY

/s/  Carlos M. Carvajal

Signature

Print the name of the person who is completing and signing this claim:

Name    Carlos M. Carvajal

First name    Middle name    Last name

Title    Attorney

Company

Identify the corporate servicer as the company if the authorized agent is a servicer

Address    14 Penn Plaza, Suite 2020

Number   Street

New York, NY 10122

City   State   ZIP Code

Contact phone    2123819210    Email    carlos@cmcesq.com

EXHIBIT 1, PAGE 16

# CREATIVE ART PARTNERS

## CURATION SERVICE and RENTAL AGREEMENT for:
## 1116 Chantilly Rd.

THIS ARTWORK RENTAL AGREEMENT (this "Agreement") provides for curation, delivery, installation and rental of artwork and display materials (the "Artwork").

This Agreement is dated for identification purposes only as of December 16, 2022 and is entered into between and among **CREATIVE ART PARTNERS, LLC (CAP)** a California limited liability company, located for notice purposes at 6542 Hayes Drive, Los Angeles, CA on the one hand, and **CHANTILLY ROAD, LLC (CHR)** located for notice purposes at 2337 Roscomare Rd #2-148, Los Angeles, CA 90077. For purposes of this Agreement, CAP and CHR may be referred to individually as a "Party" and collectively as the "Parties."

### RECITALS

A.      CAP and its associates own all right, title and interest (other than the copyright) in and to those certain pieces of artwork subject of this Agreement (the "Artwork")

B.      CHR has listed 1116 Chantilly Rd Los Angeles, CA 90077 (the "Premises") for sale, and in conjunction therewith, CHR wishes to rent the Artwork on a short-term basis for purposes of staging the same at the premises in the course of opening the premises to prospective purchasers

C.      The Parties are entering into this Agreement in order to memorialize the terms by which CHR will rent the Artwork from CAP, on the terms and subject to the conditions set forth in this Agreement

        NOW, THEREFORE, the Parties hereby agree as follows

1.      **ARTWORK RENTAL AND RELATED MATTERS**

        1.1      **Rental**  CHR hereby rents from CAP, and CAP hereby rents to CHR, the Artwork, during the Rental Period (as defined below) and on the terms and subject to the conditions set forth in this Agreement.  CHR's rental of the Artwork shall be for the sole and exclusive purposes of staging the same at the Premises in the course of opening the Premises to prospective purchasers.

        1.2      **Rental Restrictions**  At no time during the Rental Period or thereafter shall CHR: (i) cause, allow or permit the Artwork to be used for any purpose whatsoever other than

EXHIBIT 1, PAGE 17

as set forth in Section 1.1 above, (ii) cause, allow or permit any lien, claim, security interest or other encumbrance to be charged against or imposed upon Artwork, including any claim asserted against or imposed upon CHR or any of CHR's assets, including as part of any bankruptcy proceedings (iii) cause, allow or permit any restoration, conservation, framing, re-framing or other alteration of any kind to be undertaken with respect to the Artwork; or (iv) lend out the Artwork or otherwise remove the same from the Premises. CAP reserves the right to remove and replace the Artwork from time to time in its sole discretion.

      1.3    **Exclusive Ownership**  At all times during the Rental Period and thereafter, as between the Parties, the Artwork shall remain the exclusive property of CAP and its associates, and CAP shall remain the legal and rightful owner and title holder of the Artwork, without any right, claim or interest in favor of CHR therein or thereto. Any professional photos taken of the artwork must be supplied to CAP for use in high resolution format. At no time shall the Artwork, or any item thereof, constitute or be deemed a "fixture" (in any context or under any meaning given to such term), for any purpose whatsoever.

      1.4    **Protection of Artwork**  At all times during the Rental Period and for so long as the Artwork remains in CHR's possession or under CHR's control, CHR shall take all reasonable precautions necessary to assure the safety, protection and care of the Artwork, including protecting and securing the same against theft, damage or other degradation.

2.    **RENTAL PERIOD**   For purposes of this Agreement, the "Rental Period" means the period commencing immediately upon the date of install, presently anticipated to be on **February 3, 2023**, and continuing for a minimum commitment of three months' time, presently anticipated to be on **May 3, 2023**, and in any event subject to earlier termination by CAP as set forth in Section 5 below.

3.    **ARTWORK RENTAL PAYMENTS**   In consideration of CAP's agreement to rent the Artwork to CHR and notwithstanding any "Termination Event" pursuant to Section 5.4 below, CHR shall pay to CAP per the below payment schedule as follows:

➢    $14,000 total commitment, regardless of "Property" selling prior, broken down over the three-months term as follows:
- **$7,000 Due Prior to delivery and installation of artworks**
  *\* $3,500 covering the first month of art rental*
  *\* $3,500\* covering of project setup costs, curation and logistics of project and de-installation costs*
- **$3,500** due one month after installation date, covering the second month of art rental
- **$3,500** due monthly thereafter for duration of Rental Period.
  **\*\*Rental fees subject to applicable sales tax in the state of California.**

       3.1    **Inventory Rental Schedule** The first payment is due 48 hours in advance of delivery and installation. Thereafter, every 30 days from the install date each subsequent monthly payment is due.

       3.2    **Late Payment Fee**  Any rental payment not received by CAP within fourteen (14) days after notice of the delinquency shall be subject to a late charge of five percent (5%) of the amount due. If any rental payments are not received by CAP within thirty (30) days of its due date, such unpaid month shall be subject to an additional charge of ten percent (10%) of the Rental Period's total commitment due.

       3.3    **Rental Extension Fee** Upon completion of the minimum three-month commitment, the "Rental Period" will automatically extend on a month-to-month basis at a rate of $3,500 per month, unless CHR requests a discontinuation, which shall be issued to CAP in writing no less than two weeks (14 days) in advance of the expiration of the Rental Period.

4.    **DELIVERY: LOCATION: RISK OF LOSS: AND RELATED MATTERS**

       4.1    **Delivery of the Artwork**  Upon commencement of the "Rental Period", CAP shall cause the Artwork to be delivered to the Premises.  CAP shall bear all costs and charges incurred in connection with safely and securely crating the Artwork and causing the same to be delivered to the Premises.  CHR acknowledges that the Artwork shall be deemed to have been delivered to, and received by CHR in excellent condition, without substantial faults, unless CHR notifies CAP in writing to the contrary within twenty-four (24) hours after such delivery.

       4.2    **Location of the Artwork**  CAP shall solely determine and decide upon the specific locations in and about the Premises where the Artwork shall be situated during the Rental Period, which locations shall in any event allow for the prospective purchasers' convenient and unobstructed view of the Artwork while in the Premises.  At no time shall CHR cause, allow or permit any changes to such locations without CAP's prior written consent.

       4.3    **Adjustments to Installation** CHR shall have the one-time opportunity to request reasonable amendments to the Artwork selections installed at the Premises within seventy-two (72) hours of the install date, and CAP shall be responsible for the associated logistical fees. Thereafter, if CHR requests any subsequent changes, the directly associated logistical costs will be borne by CHR at an additional fee, to be quoted at time of request.

       4.4    **Insurance on Artwork** CAP shall provide an insurance policy covering Artwork at all times during the Rental Period, of a general fine art policy of insurance on the Artwork in such amount as is sufficient to cover any reasonably foreseeable risk of loss or damage to the Artwork (including risks associated with theft, loss, defacement, accidental occurrences,

recklessness, intentional acts, acts of conscious disregard, acts of God etc) but in no event less than the full replacement cost of the Artwork.

     4.5    **Risk of Loss or Damage**

        4.5.1   CHR shall use reasonable efforts at all times during the Rental Period for the safekeeping, safety and security of the Artwork kept at Premises.  CHR agrees that in the event of any loss or destruction of or damage to the Artwork during the Rental Period resulting from CHR's gross negligence or willful misconduct, including damage or soiling to the artwork surfaces and frames caused by guests in the Premises, workers, or the like, CHR shall be liable to CAP for payment of the full replacement cost / current market value

        4.5.2   For the purposes of protecting and preserving the Artwork, CAP requests to install Artwork and display materials following the completion of the staging of furniture, and in this event, CAP maintains liability for loss damage per Section 4.3 above. Whereas, should CAP be required to install Artwork prior to or concurrently with the installation of furniture, CHR shall be liable for any loss, destruction or damage to the Artwork during that time

     4.6    **Right to Access**  CAP and its designees shall have the ability to enter upon and access the Premises for the specific purpose of (i) delivering, positioning, and to the extent necessary, affixing the Artwork at the specific locations in and about the Premises upon commencement of the Rental Period at a mutually agreed upon time (ii) removal of the Artwork at the discretion of CAP

     4.7    **Material Change to Property Usage**  If the understood usage of the property changes materially (i.e. if an unoccupied property is to be rented out or otherwise inhabited, or a property is to be used as an event or party space) CAP must be notified immediately in order to draw up a new agreement relative to the change

    5.    **TERMINATION AND RELATED MATTERS**

     5.1    **Right to Terminate**  Notwithstanding anything to the contrary in this Agreement, upon the occurrence of a Termination Event (as defined below), CAP shall have the right to immediately terminate the Rental Period by providing CHR with written notice of termination

     5.2    **Possession and Removal of the Artwork**  Promptly upon the expiration or termination of the Rental Period at a time previously agreed upon by the parties, CAP shall be irrevocably entitled to access the Premises in order to take possession of the Artwork and remove the same from the Premises at a time previously agreed upon by the parties.

DocuSign Envelope ID: 70C4450C-C9B6-42D3-AB86-F7EE3E5A9423

5.3     __No Refund__  Notwithstanding any termination of the Rental Period, CAP shall not be required to refund all or any portion of the Rental Fee, all of which shall be non-refundable upon CAP's receipt thereof

5.4     __"Termination Event" Defined__  For purposes of this Agreement, a "Termination Event" means the occurrence of any of the following events:

5.4.1    CHR consummates a sale, transfer or other disposition of the Premises, or, in the alternative, CHR removes the Premises from being listed for sale;

5.4.2    The Premises becomes distressed, through a foreclosure or other similar action or proceeding or otherwise

5.4.3.   CHR breaches or defaults under any material term, provision, covenant, agreement, representation or warranty under this Agreement, including non-payment or late payment of monthly fees, and such breach or default is not cured within five (5) business days after CHR's receipt of written notice of such breach or default

5.5     __Party Leaves Listing__  In the event that CHR becomes no longer associated with the property listed for sale, all fees outlined in Section 3 will become immediately due, including the full three month commitment as well as any extension payments

6.      __NO WARRANTY__  CHR expressly acknowledges that, except as provided in this Agreement, CAP has not made, and is not now making, any promises, covenants, guarantees, assurances, representations or warranties of any kind or nature, express or implied, regarding the Artwork and CAP hereby expressly disclaims all of the same, including any warranty of a particular result or a particular benefit to be realized by CHR as a direct or indirect result of the arrangement contemplated by this Agreement, warranty of fitness for a particular purposes, non-infringement, marketability and title, and any warranties arising from course of dealing, usage or trade practice.

7.      __GENERAL PROVISIONS__

7.1     **Limits on CAP's Liability for Damage to Property** CHR understands, acknowledges and accepts that in the process of installing and moving out artwork, walls may be scuffed or scratched and the Property my suffer some incidental damage. Although CAP will in good faith attempt to minimize any such damage, CAP shall not be liable for any such incidental damage. Moreover, any holes in the walls that would reasonably be anticipated for what is needed to hang the artwork are not considered damage, and CAP is therefore not liable for the repair of any such holes

7.2    **Confidential Nature of Agreement** CHR acknowledges and agrees that this Agreement and all of its terms shall be and remain confidential. Except when CAP provides its prior express written authorization, CHR shall not disclose this agreement and/or its terms to anyone or any entity other than CHR's agents and/or employees, if applicable, and/or CHR's tax, financial and/or legal advisors

7.3    **Notices**  Any written notice required to be given to CAP shall be emailed to CAP at accounting@creativeartpartners.com. Any written notice required to be given to CHR, including statements and invoices, shall be emailed to CHR at the email address indicated below (on Signature Page). All parties are required to advise the other of any change in email addresses.

7.4    **Counterpart Signatures, Scanned Signatures, Electronic Signatures** This Agreement may be executed in counterparts, by photocopy/scan, or electronically. All counterpart, photocopied or electronic signatures shall have equal validity and enforceability as a fully-signed original agreement

7.5    **Entire Agreement**  This Agreement constitutes the entire agreement between the Parties with respect to CHR's rental of the Artwork and supersedes and cancels any prior agreements, representations, warranties, or communications, whether oral or written, between the Parties relating to the transactions contemplated by this Agreement or the subject matter herein.

7.6    **Governing Law**  California law, without regard to conflict or choice of law principles, shall govern the construction and interpretation of this Agreement.

7.7    **Assignment**  Parties may not assign this Agreement or any interest herein to any other party without the other party's written consent, which consent either party may withhold in its sole and absolute discretion.

7.8    **Binding Effect**  This Agreement, and all rights and obligations hereunder, shall be binding on and inure to the benefit of the Parties and their respective agents, representatives, and successors.

7.9    **Insurance Information** The following Addendum A must be filled out by CHR accurately in order to properly insure the artworks staged in the Premises. If the information filled out in Addendum A is not accurate and jeopardizes the insurance in the event of loss or damage, CHR shall be liable to CAP for payment of the full replacement cost / current market value.

DocuSign Envelope ID: 70C4A5C0-C9B6-42D3-AB86-F7EE3E6A9422

# **SIGNATURE PAGE**

IN WITNESS WHEREOF, each Party has caused this Agreement to be executed on its behalf
on the date first above written.

"CAP"
By: Rosmarie Riedl, CREATIVE ART
PARTNERS

Dated:___1/27/2023_____

SIGN:_____

"CHR"
By: Diego Rudomin, CHANTILLY ROAD,
LLC

Dated:___1/26/2023_____

SIGN:___Diego Rudomin_____

Email:___d.rudomin@gmail.com_____

The following Addenda are a part of this Agreement:

_____Addendum A - Insurance Questionnaire

_____Addendum B - Credit Card Authorization

_____Addendum C - Property Access/Contact Information

# ADDENDUM A

**Insurance Information** The following must be filled out by CHR accurately in order to properly insure the artworks staged in the Premises. If the information filled out below is not accurate and jeopardizes the insurance in the event of loss or damage, CHR shall be liable to CAP for payment of the full replacement cost / current market value.

1.    Are the Premises equipped with smoke and fire alarms? Y x  / N

2.    Is the Burglar Alarm connected to a Monitoring Station? Y  x / N

3.    Are Fire Alarms/Smoke Detectors connected to a Central Monitoring Station? Y    / N

4.    Any additional security (guards, gated community)? Y  x / N

        Armed response security.
_____

5.    Who has access to property?

        With permission only - agents and subcontractors.
_____

6.    Is the property occupied?

        No.
_____

EXHIBIT 1, PAGE 24

DocuSign Envelope ID: 70C44FC0-C9B6-42D3-AB86-F7EE3E6A9423

## **ADDENDUM B**

### CREDIT CARD AUTHORIZATION
**CAP requires a credit card on file for all new accounts.**
If you prefer CAP does not apply monthly payments to the card on file, indicate CHR's intention
to wire or send a check on the second page of this Addendum.*

Date:_____

Name on Credit Card:_____

Billing Address:_____

Phone:_____Other Phone:_____

Email address:_____

Credit Card #:_____

Expiration Date:_____Security Code:_____

Signature of Cardholder:_____

I authorize Creative Art Partners (CAP) to charge my credit card for any amount due resulting from this Artwork
Rental Agreement, including, but not limited to any outstanding balances on the Agreement or any damages done the
Artwork. I agree by signing below to personally guarantee to CAP any obligations that may become due.

Upon acceptance of this application CHR agrees to the payment terms stated by the creditor, CAP. A 5% finance
charge will apply on any open balances beyond terms. I understand that I am fully responsible for all balances on my
account, and I am liable for additional charges that may be incurred by CAP as a result of collection and/or legal
proceedings.

I understand that in the event 1.) my credit card expires while the Agreement or any amendments thereto are in effect
or 2) the monthly charges changes, I will be required to fill out another credit card authorization form.

I have read and understood the above conditions.

Print Full Name:_____

Date:_____

Signature of Cardholder:_____

EXHIBIT 1, PAGE 25

DocuSign Envelope ID: 30644FC9-C9B6-42D3-AB86-F7EE3E6A9423

\*CHR prefers to pay the associated fees of this Agreement via check or wire transfer, and
acknowledges receipt of payment instructions for that purpose below:_____

*(initial)*

**Incoming wir█████████Instructions:**
Bank Name: City National Bank
Bank Address: 5————— Blvd. Glendale, CA 91203
Bank Rout██████████
International Swift Code: CINAUS6L
Account Nam————————Art Partners, LLC
Account Number: ████████

**Mailing Address for Checks:**
Creative Art Partners
ATTN: Accounting
6542 Hayes Drive
Los Angeles, CA 90048

EXHIBIT 1, PAGE 26

# **ADDENDUM C**

### PROPERTY ACCESS/CONTACT INFORMATION

The information provided below is for the sole use of CREATIVE ART PARTNERS in execution
of the services contracted for in this Installation/Curation agreement; it will not be divulged to
any outside party.

**Lessee, and/or Person(s) Authorized to Grant Access to Property**:

Name:_____Diego Rudomin_____
(*please print*)

Phone 1:_____310 403 7898_____

Phone 2:_____

Email:_____d.rudomin@gmail.com_____

Name:_____Adrian Rudomin_____
(*please print*)

Phone 1:_____310 994 9467_____

Phone 2:_____

Email:_____rudomin@gmail.com_____

GATE CODE:_____

LOCK BOX:_____

Special Instructions_____

_____

_____

EXHIBIT 1, PAGE 27

# <u>CREATIVE ART PARTNERS</u>

## <u>UP FRONT SUMMARY OF KEY TERMS</u>

We know there are many important decisions to be made in the process of staging a home or commercial property, and we are confident that your choice to make Creative Art Partners a part of your project will be a decision well-made.

Strong client relationships are a core value at CAP, and in order to create the best lines of communication we like to make our agreements as clear and complete as possible. We know legal documents can be complicated and off-putting, and that's why we do our best to make sure everyone is on the same page with our agreement, so that we can operate in transparency and mutual understanding.

To that end, we have summarized some important components of the agreement and ask that you please initial beside each to acknowledge that the spirit of the contract is clear. However, for the avoidance of doubt, the below should not be construed to replace or supersede the language in the Curation Service and Rental Agreement.

**Client Initial:**

**Summary of material terms:**

1. _____

**First Payment:** $7,000 plus applicable tax covering the first month of art rental **+** the project up front fee covering project setup, installation and de-installation is due prior to delivery and installation of the artworks.

2. _____

**Second Payment:** $3,500 plus applicable tax covering the 2nd month of art rental of the artworks.

3. _____

**Scheduling Deinstalls:** CAP must receive 10 days' notice to schedule a deinstall. Any deinstall requiring under 10 days' notice will incur an additional fee of $1,000.

EXHIBIT 1, PAGE 28

4. 

**Design Change Requests:** While maintaining full discretion over curation, CAP will endeavor to satisfy design requests. However, client change requests beyond the scope of the project will be charged an additional fee, to be quoted at time of request to cover the logistics of curation, transport, packing, removal and install.

5. 

**Lease Amendment for Material Change:** If the understood usage of the property changes materially (i.e. if the an unoccupied property is to be rented out or otherwise inhabited, or a property is to be used as an event or party space) CAP must be notified immediately in order to draw up a new agreement relative to the change.

DocuSign Envelope ID: 67SB18G4-1781-49DE-BC19-2CB2F5CEDEE5

# <u>ART RENTAL ADDENDUM</u>

## 1116 Chantilly Rd, Los Angeles, CA 90077

This Artwork Rental Addendum (the "Addendum") is made and entered into as of December 18, 2023, by and between **CREATIVE ART PARTNERS**, **LLC** a California limited liability company, located for notice purposes at 6542 Hayes Drive, Los Angeles, CA **(CAP)** on the one hand, and **CHANTILLY ROAD, LLC (CHR)** located for notice purposes at 2337 Roscomare Rd #2-148, Los Angeles, CA 90077, as an amendment to the existing rental agreement dated December 6, 2022 (the "Original Agreement.") For purposes of this Agreement, CAP and CHR may be referred to individually as a "Party" and collectively as the "Parties."

WHEREAS, the Parties wish to modify the payment terms outlined in the Original Agreement to facilitate deferred payment of the principal rental fees.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, the Parties agree as follows:

1.      <u>PAYMENT TERMS AMENDMENT</u> The payment terms specified in the Original Agreement shall be amended with the following terms, with all other terms of agreement remaining intact:

    1.1      **Partial Payment Structure:** Effective as of January 9, 2024, a partial payment plan will go into effect, with monthly installments of $4,000 to be paid towards the accrued debt.

    1.2      **Continuation Fee:** CHR agrees to make an immediate payment of $7,500 against the balance due.

    1.3      **Deferred Payment:** The outstanding amount owed shall be deferred to refinance, or four monthly billing cycles (ending May 9, 2024), whichever comes first. Subsequent monthly fees will accrue at the Original Agreement's monthly rate and be added to the balance due, with the total balance due to be deferred to refinance, or four months, whichever comes first. In the event of early project termination, the sum owed will be immediately due.

IN WITNESS WHEREOF, each Party has caused this Addendum to be executed on its behalf
on the date first above written.

Dated: 12/22/2023 _____

SIGN: _Rosmarie Riedl_____
DocuSigned by:
656B94FA913F4CE...

By: Rosmarie Riedl, CREATIVE ART
PARTNERS


Dated: 12/21/2023 _____

SIGN: _Diego Rudomin_____
DocuSigned by:
4807B3E2E1C6444...

By: Diego Rudomin, CHANTILLY ROAD, LLC

EXHIBIT 1, PAGE 31

## ART RENTAL ADDENDUM

### 1116 Chantilly Rd, Los Angeles, CA 90077

This Artwork Rental Addendum (the "Addendum") is made and entered into as of August 21, 2023, by and between **CREATIVE ART PARTNERS**, **LLC** a California limited liability company, located for notice purposes at 6542 Hayes Drive, Los Angeles, CA **(CAP)** on the one hand, and **CHANTILLY ROAD, LLC (CHR)** located for notice purposes at 2337 Roscomare Rd #2-148, Los Angeles, CA 90077, as an amendment to the existing rental agreement dated December 6, 2022 (the "Original Agreement.") For purposes of this Agreement, CAP and PCF may be referred to individually as a "Party" and collectively as the "Parties."

WHEREAS, the Parties wish to modify the payment terms outlined in the Original Agreement to facilitate deferred payment of the principal rental fees due at escrow.

NOW, THEREFORE, in consideration of the mutual covenants and promises set forth herein, the Parties agree as follows:

1.      **PAYMENT TERMS AMENDMENT** The payment terms specified in the Original Agreement shall be amended with the following terms, with all other terms of agreement remaining intact:

   1.1      **Deferred Payment:** The outstanding amount owed shall be deferred to refinance, or three months (December 21, 2023,) whichever comes first. Subsequent monthly fees will accrue at the Original Agreement's monthly rate and be added to the balance due, with the total balance due to be deferred to refinance, or three months, whichever comes first (December 21, 2023.) In the event of early project termination, the sum owed will be immediately due.

   1.2      **Partial Payment Structure:** Effective as of August 21, 2023, a partial payment plan will go into effect, with monthly installments of $2,000 to be paid towards the accrued debt.

IN WITNESS WHEREOF, each Party has caused this Addendum to be executed on its behalf on the date first above written.

Dated: _8/25/2023_____          Dated: _8/24/2023_____

SIGN: [signature] 656B94FA913F4CE...          SIGN: [signature] Diego Rudomin 4807B3E2E1C6444...

By: Rosmarie Riedl, CREATIVE ART          By: Diego Rudomin, CHANTILLY ROAD, LLC
PARTNERS

DocuSign Envelope ID: 7E90ED71-7196-47A4-AA2D-F3EDE805E66C

## CREDIT CARD AUTHORIZATION

Date: 08/24/2023

Name on Credit Card: Diego Rudomin

Billing Address: 2337 Roscomare Rd. #10, Los Angeles, CA 90077

Phone: 310.403.7898       Other Phone:

Email address: ███████████

Credit Card #: ██████████

Expiration Date: ████       Security Code: ███ ██

I authorize Creative Art Partners (CAP) to charge my credit card for any amount due resulting from this Artwork
Rental Agreement, including, but not limited to any outstanding balances on the Agreement or any damages done the
Artwork. I agree by signing below to personally guarantee to CAP any obligations that may become due.

I understand that in the event 1.) my credit card expires while the Agreement or any amendments thereto are in effect
or 2) the monthly charges changes, I will be required to fill out another credit card authorization form.

**I have read and understood the above conditions including Guarantee of payment. Guarantor authorizes CAP
to pay the associated fees and recurring charges of this agreement via credit card unless otherwise
requested.**

Print Full Name: Diego Rudomin

Date: 08/24/2023

Signature of Guarantor: *Diego Rudomin*
DocuSigned by:
4807B3E2E1C6444...

**Creative Art Partners, LLC**
6542 Hayes Drive
Los Angeles, CA  90048 US
+1 3236902077
accounts@creativeartpartners.com



# Statement

**TO**

Diego Rudomin
Chantilly Road, LLC
2337 Roscomare Rd #2-148
Los Angeles, CA  90077

**STATEMENT NO.** 2759
**DATE** 12/09/2024
**TOTAL DUE** $130,630.00
**ENCLOSED**

| DATE | ACTIVITY | AMOUNT | OPEN AMOUNT |
|------|----------|--------|-------------|
| 07/09/2023 | Invoice #1116Chantilly07.09.23: Due 07/24/2023. | 7,665.00 | 325.00 |
| 08/09/2023 | Invoice #1116Chantilly08.09.23: Due 08/24/2023. | 7,665.00 | 7,665.00 |
| 09/09/2023 | Invoice #1116Chantilly09.09.23: Due 09/24/2023. | 7,665.00 | 7,665.00 |
| 10/09/2023 | Invoice #1116Chantilly10.09.23: Due 10/24/2023. | 7,665.00 | 7,665.00 |
| 11/09/2023 | Invoice #1116Chantilly11.09.23: Due 11/24/2023. | 7,665.00 | 7,665.00 |
| 12/09/2023 | Invoice #1116Chantilly12.09.23: Due 12/24/2023. | 7,665.00 | 7,665.00 |
| 01/09/2024 | Invoice #1116Chantilly01.09.24: Due 01/24/2024. | 7,665.00 | 7,665.00 |
| 02/09/2024 | Invoice #1116Chantilly02.09.24: Due 02/24/2024. | 7,665.00 | 7,665.00 |
| 03/09/2024 | Invoice #1116Chantilly03.09.24: Due 03/24/2024. | 7,665.00 | 7,665.00 |
| 04/09/2024 | Invoice #1116Chantilly04.09.24: Due 04/24/2024. | 7,665.00 | 7,665.00 |
| 05/09/2024 | Invoice #1116Chantilly05.09.24: Due 05/24/2024. | 7,665.00 | 7,665.00 |
| 06/09/2024 | Invoice #1116Chantilly06.09.24: Due 06/24/2024. | 7,665.00 | 7,665.00 |
| 07/09/2024 | Invoice #1116Chantilly07.09.24: Due 07/24/2024. | 7,665.00 | 7,665.00 |
| 08/09/2024 | Invoice #1116Chantilly08.09.24: Due 08/24/2024. | 7,665.00 | 7,665.00 |
| 09/09/2024 | Invoice #1116Chantilly09.09.24: Due 09/24/2024. | 7,665.00 | 7,665.00 |

| Current Due | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | 90+ Days Past Due | Amount Due |
|-------------|--------------------|--------------------|--------------------|-------------------|------------|
| 7,665.00 | 7,665.00 | 7,665.00 | 7,665.00 | 99,970.00 | **$130,630.00** |

EXHIBIT 1, PAGE 34

| DATE | ACTIVITY | AMOUNT | OPEN AMOUNT |
|------|----------|--------|-------------|
| 10/09/2024 | Invoice #1116Chantilly10.09.24: Due 10/24/2024. | 7,665.00 | 7,665.00 |
| 11/09/2024 | Invoice #1116Chantilly11.09.24: Due 11/24/2024. | 7,665.00 | 7,665.00 |
| 12/09/2024 | Invoice #1116Chantilly12.09.24: Due 12/24/2024. | 7,665.00 | 7,665.00 |

| Current Due | 1-30 Days Past Due | 31-60 Days Past Due | 61-90 Days Past Due | 90+ Days Past Due | Amount Due |
|-------------|--------------------|--------------------|--------------------|-------------------|------------|
| 7,665.00 | 7,665.00 | 7,665.00 | 7,665.00 | 99,970.00 | **$130,630.00** |

**EXHIBIT 2**

| Fill in this information to identify the case: |
|---|

Debtor 1    Chantilly Road LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court for the:    Central District of California
                                                                    (State)

Case number    8:24-bk-13197-TA

Official Form 410

# Proof of Claim

12/24

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

Macoy Capital Mortgage LLC
Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes.  From whom? _____

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

Macoy Capital Mortgage LLC
Name
10880 Wilshire Blvd, Suite 2230
Number    Street
Los Abeles          CA          90024
City          State          ZIP Code

Contact phone    (310) 943-6366

Contact email _____

Where should payments to the creditor be sent? (if different)

Macoy Capital Mortgage LLC
Name
10880 Wilshire Blvd., Suite 2230
Number    Street
Los Angeles          CA          90024
City          State          ZIP Code

Contact phone    310-943-6366

Contact email    mitch@macoycapital.com

**4. Does this claim amend one already filed?**

☑ No
☐ Yes.  Claim number on court claims registry (if known) _____

Filed on _____
              MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes.  Who made the earlier filing? _____

EXHIBIT 2, PAGE 36

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

**6. Do you have any number you use to identify the debtor?**

☑ No

☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: ____ ____ ____ ____

**7. How much is the claim?** $_____510,000.00. Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

Money Loaned

**9. Is all or part of the claim secured?**

☑ No

☐ Yes. The claim is secured by a lien on property.

**Nature of property:**

☐ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☐ Motor vehicle

☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:** $_____

**Amount of the claim that is secured:** $_____

**Amount of the claim that is unsecured:** $_____ (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:** $_____

**Annual Interest Rate** (when case was filed) 10.00 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition. $_____

**11. Is this claim subject to a right of setoff?**

☑ No

☐ Yes. Identify the property: _____

Official Form 410          **Proof of Claim**                    page 2

EXHIBIT 2, PAGE 37

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No | |
|---|---|---|
| | ☐ Yes. *Check one:* | Amount entitled to priority |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $_____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $_____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(__) that applies. | $_____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   02/07/2025
                   MM / DD / YYYY

_____
Signature

Print the name of the person who is completing and signing this claim:

| Name | Mitchell _____ Ohlbaum ____ |
|---|---|
| | First name         Middle name         Last name |
| Title | President |
| Company | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. |
| Address | 10880 Wilshire Blvd., Suite 2230 |
| | Number        Street |
| | Los Angeles            CA        90024 |
| | City                   State    ZIP Code |
| Contact phone | (310) 943-6366 |
| Email | mitch@macoycapital.com |

Official Form 410                    **Proof of Claim**                    page 3

# PROMISSORY NOTE

**$510,000.00**

**Los Angeles, California**
*November 25, 2024*

FOR VALUE RECEIVED, at the times and in the manner hereinafter stated, **Chantilly Road, LLC** and Adrian Rudomin ("**Borrowers**") promise to pay to the order of Macoy Capital Mortgage LLC ("**Lender**") in legal tender of the United States of America, the principal sum of Five Hundred and Ten thousand Dollars and No Cents ($510,000.00) together with interest thereon from the Effective Date (as defined below) at the Interest Rate (as defined below) until paid in full, all as more fully set forth herein.

1.  <u>Definitions</u>. The following terms as used in this Promissory Note (this "**Note**") shall have the following meanings:

    a.  The term "**Effective Date**" shall mean the date Lender deposits all or a portion of the loan amount with escrow holder or title company, which is estimated to be November 25, 2024.

    b.  The term "**Interest Rate**" shall mean the rate of Ten percent (10%) per annum. All interest under this Note shall be calculated on a 360-day year of twelve (12) 30-day months. Borrower acknowledges and agrees that the calculation of interest on the basis described in the immediately preceding sentence may result in the accrual and payment of interest in amounts greater than those which would be payable if interest were calculated on the basis of a three hundred sixty-five (365) day year.

    c.  The term "**Maturity Date**" shall mean February 25, 2025 or Ninety Days (90 Days) from the Effective Date. .

    d.  The term "**Principal Balance**" shall mean the outstanding principal balance of this Note as calculated from time to time. The initial principal balance is $75,000 and additional funding to a maximum of $510,000 is allowed from time to time but no later than 30 days prior to the Maturity Date.

    e.  The term "**Transfer**" shall mean any assignment, sale, pledge, gift, re-financing or other conveyance of any legal or beneficial interest, whether voluntary or involuntary, direct or indirect, whether by (i) outright sale, deed, lease-option contract or leasehold interest with a term greater than one (1) year, (ii) sale, assignment, or transfer of any beneficial interest in or to any land trust, (iii) any transfer of ownership or control of Borrower, or (iv) any other method of conveyance.

2.  <u>Payment of Principal and Interest</u>.

    a.  Unless accelerated under the terms of this Note, the Principal Balance and all accrued and unpaid interest on this Note shall be due and payable in full on the Maturity Date. If the Principal Balance due at the Maturity Date of this Note (balloon payment) is voluntarily or involuntarily late (and any payment made upon foreclosure or as a result of acceleration of the loan shall be deemed a late payment), then, in view of the difficulty of determining the exact amount of damages, Borrower will pay a service fee equal to Ten percent (10%) of the unpaid balance, which service fee shall be automatically due and payable to Lender (no notice, written or otherwise, need be given to Borrower). All payments under this Note shall be made by ACH payment of immediately available funds pursuant to the Pre-Authorized ACH Debit Authorization provided by Lender. Borrower (i) agrees to provide Lender (or Lender's designee) with authorization to electronically debit Borrower's account and Borrower is responsible for all transfer fees and charges (including any fees charged by Lender) in connection therewith, and (ii) shall complete the Pre-Authorized ACH Debit Authorization attached hereto as <u>Exhibit A</u> and incorporated herein by this reference. Notwithstanding the foregoing, upon notice to Borrower Lender may change the payment instructions, bank

account designation, the address and/or recipient for receipt of payment or require a different method of payment, and Borrower shall promptly comply with such change in method, address and/or recipient with respect to subsequent payments under this Note. Borrower is responsible for all processing fees and charges (including any fees charged by Lender) related to any payments due under this Note.

        b.      Provided that no Event of Default (as defined below) is occurring or has occurred at any time while this Note is outstanding (whether or not such Event of Default was subsequently cured), upon fifteen (15) days prior written notice to Lender Borrower may prepay all, but not less than all, of the original principal sum of this Note at any time.

     3.    <u>Borrower Representations, Warranties and Covenants</u>.  Borrower represents, warrants and covenants to Lender that:

        a.      **ALL PROCEEDS OF THE LOAN EVIDENCED BY THIS NOTE SHALL BE USED BY BORROWER SOLELY FOR COMMERCIAL OR BUSINESS PURPOSES. SUCH PROCEEDS SHALL NOT IN ANY WAY BE USED FOR PERSONAL, FAMILY, OR HOUSEHOLD PURPOSES OR IN ANY MANNER WHICH MAY RESULT IN THE LOAN TRANSACTION NOT BEING EXEMPT FROM THE TRUTH IN LENDING ACT, 15 U.S.C.A. §1602(H) ("TILA"), THE REAL ESTATE SETTLEMENT PROCEDURES ACT, 12 U.S.C.A. §2601-2617 ("RESPA") OR ANY SIMILAR OR APPLICABLE FEDERAL AND STATE CONSUMER LENDING LAWS.**

                              **Borrower's Initials:**   _____

        b.      Borrower is solvent after giving effect to all borrowings evidenced by this Note and no proceeding under any federal or state bankruptcy law is pending (or to Borrower's knowledge threatened) by or against Borrower or any beneficiary of Borrower as a debtor. All financial statements, financial information, reports, statements, plans, budgets, applications, agreements and other data and information heretofore furnished or hereafter to be furnished by or on behalf of Borrower to Lender are and will be true, correct and complete in all material respects as of their respective dates and do not and will not omit to state any fact or circumstance necessary to make the statements contained therein not misleading. No material adverse change has occurred since the dates of such financial statements and other reports, statements, data and information in the financial condition of Borrower.

                              **Borrower's Initials:**   _____

        c.      Borrower is authorized to execute, deliver and perform its obligations under this Note and any instrument or agreement executed in connection herewith.

                              **Borrower's Initials:**   _____

        d.      This Note is a legal, valid and binding agreement of Borrower, enforceable against Borrower in accordance with its terms.

                              **Borrower's Initials:**   _____

        e.      Borrower is not in default on any obligation for borrowed money, any purchase money obligation or any other material lease, commitment, contract, instrument or obligation.

                              **Borrower's Initials:**   _____

   f. There are no claims against Borrower which could adversely affect Borrower's ability to perform its obligations under this Note.

          **Borrower's Initials:** _____AA_____

   g. No Hazardous Substance has been disposed of or released or otherwise exists in, on, under or onto the Property, except as Borrower has disclosed to Lender in writing or otherwise disclosed in any written environmental report provided to Lender prior to the Effective Date. "**Hazardous Substance**" means any substance, material or waste that is or becomes designated or regulated as "toxic," "hazardous," "pollutant," or "contaminant" or a similar designation or regulation under any current or future federal, state or local law (whether under common law, statute, regulation or otherwise) or judicial or administrative interpretation of such, including without limitation petroleum or natural gas.

          **Borrower's Initials:** _____AA_____

   h. Borrower shall notify Lender in writing immediately upon Borrower becoming aware of the occurrence or existence of an Event of Default (as defined in Section 5 below).

          **Borrower's Initials:** _____AA_____

   4. Waiver by Borrower. BY INITIALING BELOW, BORROWER ACKNOWLEDGES AND UNDERSTANDS THAT, PURSUANT TO THE TERMS OF THIS NOTE, LENDER'S AGREEMENT TO MAKE THE LOAN AT THE INTEREST RATE AND FOR THE TERMS SET FORTH HEREIN AND IN THE OTHER LOAN DOCUMENTS CONSTITUTES ADEQUATE AND VALUABLE CONSIDERATION, GIVEN INDIVIDUAL WEIGHT BY BORROWER FOR THIS NOTE. FURTHER BORROWER HEREBY WAIVES ANY RIGHTS BORROWER MAY HAVE UNDER SECTION 2954.10 OF THE CALIFORNIA CIVIL CODE, TO THE EXTENT APPLICABLE TO THIS LOAN, AND THAT LENDER IS MAKING THE LOAN IN RELIANCE ON SUCH WAIVER:

          **Borrower's Initials:** _____AA_____

   5. Acceleration. Lender may declare the entire then-outstanding Principal Balance plus all accrued and unpaid interest and all other sums due hereunder to be immediately due and payable if any one or more of the following events shall occur (each, an "**Event of Default**"), which events shall not require notice of any kind to Borrower, written or otherwise, to be deemed an Event of Default:

   a. Borrower fails to make any payment required under the terms of this Note within five (5) calendar days after such payment is due,

   b. Borrower fails to perform or observe (within ten (10) days following written notice from Lender of such failure) any other term, covenant, condition, agreement or prohibition contained in this Note and not described by any other subsection of this Section 5; provided, however, that Borrower shall not be in default of any such obligation if: (i) such default is in Lender's reasonable opinion not material and curable, but cannot reasonably be cured within said ten (10) day period, and (ii) within said ten (10) day period Borrower promptly and in good faith undertakes to cure such default and thereafter diligently and continuously prosecutes such cure to completion which cure must be completed no later than thirty (30) days following the date of Lender's notice,

   c. Any violation, default or breach (i) by Borrower in the payment or performance of any obligation, covenant, or liability contained or referred to in the Deed of Trust, (ii) of any guaranty made in connection with this Note, or any other notes or evidence of indebtedness of Borrower to Lender, or (iii) of

other indebtedness for which the Property acts as security or collateral,

      d.    Any Transfer of the Property,

      e.    Borrower shall challenge, or institute any proceedings to challenge, the validity, binding effect or enforceability of this Note, the Deed of Trust or any other loan document or any endorsement of this Note or any other obligation to Lender,

      f.    The death, incapacity, dissolution or liquidation of Borrower or any guarantor, as applicable, with respect to this Note,

      g.    Any statement, representation or warranty which Borrower makes to Lender with respect to this Note, the Deed of Trust or the other loan documents is false or misleading in any material respect either when made or at any time thereafter upon which Borrower shall promptly disclose circumstances which make the statement false or misleading,

      h.    The commencement of foreclosure or forfeiture proceedings, whether by judicial proceeding, self-help, repossession or any other method, by any creditor of Borrower or any guarantor or by any governmental agency against the Property. However, this Event of Default shall not apply if there is a good faith dispute by Borrower as to the validity or reasonableness of the claim which is the basis of the creditor or forfeiture proceeding and Borrower gives Lender written notice of the proceeding and deposits with Lender monies or a surety bond in an amount determined by Lender, in its sole discretion, as being an adequate reserve or bond for the dispute,

      i.    Upon a material, adverse change to (i) the Property, or (ii) in the financial condition of Borrower, which Lender determines, in its commercially reasonable discretion, impairs its collateral for the loan or impedes Borrower's ability to repay the loan evidenced by this Note. Borrower shall have the burden of proof that Lender's discretion was not commercially reasonable,

      j.    (i) Borrower makes any general arrangement or assignment for the benefit of creditors, (ii) Borrower becomes a "debtor" as defined in 11 U.S.C. Section 101 or any successor statute thereto (unless, in the case of a petition filed against Borrower, the same is dismissed within sixty (60) days), (iii) a trustee or receiver is appointed to take possession of Borrower's assets, where possession is not restored to Borrower within thirty (30) days, regardless of whether or not such appointment is applied for or consented to by Borrower, or (iv) Borrower's assets are subject to attachment, sequestration, execution or other judicial seizure, provided, however, that if any provision of this Section 5(j) is contrary to any applicable law, then such provision shall be of no force or effect, or

      k.    Borrower uses or attempts to use any of the proceeds of the loan evidenced by this Note for personal, family or household purposes, as determined by Lender (in its reasonable discretion).

      6.    **Default Rate.** Upon the occurrence of an Event of Default, interest under this Note shall begin to accrue daily on the Principal Balance, as well as all accrued, but unpaid interest, at a rate which is equal to the lesser of (a) eighteen percent (18%) per annum, and (b) the highest rate allowed by applicable law; the interest rate shall not return to the stated rate until Borrower has cured the default, including the payment of any service fee and any other charges called for in this Note. Notwithstanding the foregoing, in the event the Event of Default is pursuant to Section 5.a., the default interest rate set forth in this section shall begin to accrue daily on the Principal Balance, as well as all accrued, but unpaid interest, as of the date such payment was due.

7.    Indemnity.

a.    Generally. To the fullest extent allowed by law, Borrower agrees to (i) indemnify
and hold Lender and its agents, trustees, beneficiaries, representatives, affiliates, directors, shareholders,
officers, employees, managers, members, successors, heirs, assigns, legatees, beneficiaries and estates
("**Indemnified Parties**") harmless from and against all liabilities, claims, actions, foreseeable and
unforeseeable consequential damages, judgments, suits, penalties, costs and expenses (including sums paid in
settlement of claims and all reasonable consultant, expert and legal fees and expenses of Lender's counsel) or
losses (collectively, "**Claims**") asserted against or incurred by an Indemnified Party to the extent such
Claims arise from or are due to: (1) Borrower's acts or omissions, (2) Borrower's failure or refusal to comply
with or abide by any applicable law, (3) Borrower's breach of any of the terms or conditions of the Note, the
Deed of Trust or any other loan document, or (4) the Property, and (ii) defend promptly and diligently, at
Borrower's sole expense and by counsel to be approved by such Indemnified Party in the exercise of its
reasonable judgment, any Claim, action or proceeding brought against an Indemnified Party, or Borrower
and an Indemnified Party jointly or severally, arising out of or connected with the matters for which
Borrower provides indemnification under clause (i) above. If Borrower fails, after demand of such
Indemnified Party, to defend such investigation, action or proceeding, such Indemnified Party may elect to
conduct its own defense at the expense of Borrower. Borrower's duty to defend shall include Claims that
arise from the negligence of any Indemnified Party, but shall exclude Claims caused by the gross negligence
or willful misconduct of an Indemnified Party.

b.    Hazardous Substances.

i.    Upon demand by an Indemnified Party, Borrower will defend any
investigation, action or proceeding alleging the presence of any Hazardous Substance in any such location,
which affects the Property or which is brought or commenced against an Indemnified Party, whether alone or
together with Borrower or any other person, all at Borrower's own cost and by counsel to be approved by
such Indemnified Party in the exercise of its reasonable judgment. If Borrower fails, after demand of such
Indemnified Party, to defend such investigation, action or proceeding, such Indemnified Party may elect to
conduct its own defense at the expense of Borrower.  Borrower shall reimburse Lender for such costs
immediately upon demand.

ii.    Borrower agrees to indemnify and hold Indemnified Parties harmless from
and against all Claims directly or indirectly arising out of or resulting from any of the following:

(1)    Any Hazardous Substance being present at any time in or around
any part of the Property, or in the soil, groundwater or soil vapor on or under the Property, including those
incurred in connection with any investigation of site conditions or any clean-up, remedial, removal or
restoration work, or any resulting damages or injuries to the person or property of any third parties or to any
natural resources.

(2)    Any use, generation, manufacture, production, storage, release,
threatened release, discharge, disposal or presence of a Hazardous Substance.

iii.    Lender shall have the right to give up any security and be deemed an
unsecured creditor at any time.

iv.    This indemnity will apply whether the Hazardous Substance is on, under or
about the Property, and whether or not the Property has been foreclosed by Lender or transferred to a third
party.

c.    Survival. The provisions of this Section 7 shall survive the termination of this Note.

EXHIBIT 2, PAGE 43

8. <u>Payment</u>. All payments and prepayments on account of the indebtedness evidenced by this Note shall be applied as follows: (a) first, to fees, expenses, costs and other similar amounts then due and payable to Lender, including, without limitation any prepayment premium, exit fee or late charges due hereunder, (b) second, to accrued and unpaid interest on the principal balance of this Note, (c) third, to the payment of principal due in the month in which the payment or prepayment is made, if applicable, (d) fourth, to any escrows, impounds or other amounts which may then be due and payable under the loan documents, (e) fifth, to any other amounts then due Lender hereunder or under any of the loan documents, and (f) last, to the unpaid principal balance of this Note in the inverse order of maturity.

9. <u>Waivers</u>. Borrower and all others who now or may at any time become liable for all or any part of the obligations evidenced hereby, expressly agree hereby to be jointly and severally bound, and jointly and severally: (a) waive and renounce any and all homestead, redemption and exemption rights and the benefit of all valuation and appraisement privileges against the indebtedness evidenced by this Note or by any extension or renewal hereof, (b) waive presentment and demand for payment, notices of nonpayment and of dishonor, protest of dishonor, and notice of protest, (c) except as expressly provided in the loan documents, waive any and all notices in connection with the delivery and acceptance hereof and all other notices in connection with the performance, default, or enforcement of the payment hereof or hereunder, (d) waive any and all lack of diligence and delays in the enforcement of the payment hereof, (e) agree that the liability of each Borrower, guarantor, endorser or obligor shall be unconditional and without regard to the liability of any other person or entity for the payment hereof, and shall not in any manner be affected by any indulgence or forbearance granted or consented to by Lender to any of them with respect hereto, (f) consent to any and all extensions of time, renewals, waivers, or modifications that may be granted by Lender with respect to the payment or other provisions hereof, and to the release of any security at any time given for the payment hereof, or any part thereof, with or without substitution, and to the release of any person or entity liable for the payment hereof, and (g) consent to the addition of any and all other makers, endorsers, guarantors, and other obligors for the payment hereof, and to the acceptance of any and all other security for the payment hereof, and agree that the addition of any such makers, endorsers, guarantors or other obligors, or security shall not affect the liability of Borrower, guarantor and all others now liable for all or any part of the obligations evidenced hereby. This provision is a material inducement for Lender making the Loan to Borrower.

10. <u>Notices</u>. Unless otherwise specifically provided herein, all notices shall be in writing addressed to the respective party as set forth below, and may be personally served, faxed, emailed or sent by overnight courier service or United States mail:

If to Borrower:

    Chantilly Road, LLC
    578 Washington Blvd., #148
    Marina Del Rey, CA 90292
    Attn: Adrian Rudomin

If to Lender:

    Macoy Capital Mortgage LLC
    10880 Wilshire Blvd., Suite 2230
    Los Angeles, Ca 90024
    Attn: Mitch Ohlbaum

Any notice given pursuant to this Section shall be deemed to have been given: (a) if delivered in person, when delivered, (b) if delivered by overnight courier, two (2) days after delivery to such

courier properly addressed, or (c) if by United States mail, and provided that a copy of the notice is also sent by facsimile or email, five (5) business days after depositing in the United States mail, with postage prepaid and properly addressed. Any party hereto may change the physical or e-mail address or fax number at which it is to receive notices hereunder by notice to the other party in writing in the foregoing manner.

11.     Enforcement Costs.  If: (a) this Note, is placed in the hands of one or more attorneys for collection or is collected through any legal proceeding, (b) one or more attorneys is retained to represent Lender in any bankruptcy, reorganization, receivership or other proceedings affecting creditors' rights and involving a claim under this Note, or (c) one or more attorneys is retained to represent Lender in connection with this Note, then Borrower shall pay to Lender upon demand all fees, costs and expenses incurred by Lender in connection therewith, including, without limitation, attorneys' fees, court costs and filing fees, in addition to all other amounts due hereunder.

12.     Interpretation.  Neither this Note nor any uncertainty or ambiguity herein shall be construed or resolved against Borrower or Lender, whether under any rule of construction or otherwise.  On the contrary, this Note has been reviewed by both of the parties and their respective counsel (if Borrower obtained counsel) and shall be construed and interpreted according to the ordinary meaning of the words used so as to fairly accomplish the purposes and intentions of the parties hereto. Each party hereby waives the benefit of any statute or rule of law or judicial decision, including without limitation California Civil Code §1654, which would otherwise require that the provisions of this Note be construed or interpreted most strongly against the party responsible for the drafting thereof. BORROWER REPRESENTS THAT IT HAS HAD THE OPPORTUNITY TO SEEK THE ADVICE OF INDEPENDENT LEGAL COUNSEL AND HAS RECEIVED SUCH COUNSEL OR HAS VOLUNTARILY AND KNOWINGLY ELECTED NOT TO ENGAGE SUCH COUNSEL.

13.     Exercise of Rights.  The exercise or partial exercise of any power granted to Lender under this Note shall not preclude the further exercise of such power or the exercise of any other power granted Lender. No delay or omission on the part of Lender in exercising any right under this Note shall operate as a waiver of such right or of any other right.  The release of any party liable under this Note shall not operate to release any other party liable hereunder.  If Lender should waive any breach of any provisions of this Note, Lender shall not thereby be deemed to have waived any preceding or succeeding breach of the same or any other provision of this Note.

14.     General Conditions.

a.     This Note shall be governed by and construed in accordance with the laws of the State of California.  Borrower hereby irrevocably consents to jurisdiction of the courts located in Los Angeles, California.

b.     The term "Lender" shall mean the Lender of this Note from time to time whether or not named as Lender herein.

c.     Section and subsection headings in this Note are included herein for convenience of reference only and shall not constitute a part of this Note or be given any substantive effect.

d.     Nothing contained herein shall be construed so as to require the commission of any act contrary to law, and wherever there is any conflict between any provisions contained herein and any present or future statute, law, ordinance or regulation, the latter shall prevail; but the provision of this Note which is affected shall be curtailed and limited only to the extent necessary to bring it within the requirements of the law.

        e.     This Note may not be modified, amended, extended, changed, released or terminated, nor any rights hereunder waived, except in a writing signed by Borrower and Lender.

        f.     The terms, covenants and conditions of this Note are binding upon and inure to the benefit of the heirs, successors and assigns of the parties.

        g.     Time is of the essence of each obligation of Borrower hereunder.

        h.     If interest otherwise payable to Lender under this Note would exceed the maximum amount permitted under applicable law, the interest payable shall be reduced to the maximum amount permitted under applicable law.

        i.     The relationship of Lender and Borrower created hereunder is that of creditor and debtor and such relationship shall neither be, nor be construed to be, a joint venture, equity venture, partnership or any relationship other than that of creditor and debtor.

        j.     Borrower shall, on Lender's request, execute such further instruments as may in Lender's opinion be necessary or advisable to perfect Lender's rights and to further the purposes of this Note.

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR WILL HAVE TO FIND A LENDER WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

**WITH THE INTENT TO BE LEGALLY BOUND, THE UNDERSIGNED HEREBY COVENANTS AND ACKNOWLEDGES THAT THE UNDERSIGNED HAS READ EACH OF THE TERMS SET FORTH HEREIN AND THAT THE UNDERSIGNED HAS THE AUTHORITY TO EXECUTE THIS NOTE ON BEHALF OF BORROWER. THE UNDERSIGNED EXPRESSLY CONSENTS AND AGREES THAT BORROWER SHALL BE BOUND BY ALL TERMS AND CONDITIONS CONTAINED HEREIN.**

*[Signature page follows]*

**IN WITNESS WHEREOF**, Borrower has executed this Promissory Note as of the date first written above.

**BORROWERS:**

By: _____
Name: ADRIAN DUDOMIC
Its: Self

By: _____
Name: CHANTILLY ROAD LLC
Its: Adrian Dudomic as Manager
For The Hooper LLC, The
Manager of Chantilly Road LLC

**EXHIBIT 3**

**Fill in this information to identify the case:**

Debtor 1   Chantilly Road, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Central District of California**

Case number:  **24–13197**

**FILED**

U.S. Bankruptcy Court
**Central District of California**

2/28/2025

Kathleen J. Campbell, Clerk

## Official Form 410
## Proof of Claim

12/24

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
| --- | --- |

| | |
| --- | --- |
| **1. Who is the current creditor?** | MARTIN SIMONE <br><br> Name of the current creditor (the person or entity to be paid for this claim) <br><br> Other names the creditor used with the debtor |
| **2. Has this claim been acquired from someone else?** | ☑ No <br> ☐ Yes. From whom? |

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| Where should notices to the creditor be sent? | Where should payments to the creditor be sent? (if different) |
| --- | --- |
| Name <br> MARTIN SIMONE <br><br> 5627 DEPULVEDA BL. SUITE 206 <br> VAN NUYS, CA 91411 <br><br> Contact phone ____818 788–1914____ <br> Contact email <br>  martin@frankandsimonelaw.com <br><br> Uniform claim identifier (if you use one): | Name <br><br><br><br><br> Contact phone _____ <br> Contact email _____ |

| | |
| --- | --- |
| **4. Does this claim amend one already filed?** | ☑ No <br> ☐ Yes. Claim number on court claims registry (if known) _____   Filed on _____ <br> <div align="right">MM / DD / YYYY</div> |
| **5. Do you know if anyone else has filed a proof of claim for this claim?** | ☑ No <br> ☐ Yes. Who made the earlier filing? _____ |

EXHIBIT 3, PAGE 48

**Part 2:    Give Information About the Claim as of the Date the Case Was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |

| | |
|---|---|
| 7. **How much is the claim?** | $     125000.00     **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |

| | |
|---|---|
| 8. **What is the basis of the claim?** | Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>MONEY LOANED |

| | |
|---|---|
| 9. **Is all or part of the claim secured?** | ☑ No<br>☐ Yes. The claim is secured by a lien on property.<br>**Nature of property:**<br>☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim.*<br>☐ Motor vehicle<br>☐ Other. Describe: _____<br><br>**Basis for perfection:** _____<br><br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:**    $ _____<br>**Amount of the claim that is secured:**    $ _____<br>**Amount of the claim that is unsecured:**    $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:**    $ _____<br><br>**Annual Interest Rate** (when case was filed)    _____ %<br>☐ Fixed<br>☐ Variable |

| | |
|---|---|
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ |

| | |
|---|---|
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |

Official Form 410          Proof of Claim          page 2

EXHIBIT 3, PAGE 49

| 12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No<br>☐ Yes. *Check all that apply:* | Amount entitled to priority |
|---|---|---|
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☑ I am the creditor.

☐ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date     2/28/2025

MM / DD / YYYY

/s/  MARTIN SIMONE

Signature

Print the name of the person who is completing and signing this claim:

Name     MARTIN SIMONE

First name     Middle name     Last name

Title

Company

Identify the corporate servicer as the company if the authorized agent is a servicer

Address     5627 SEPULVEDA BL. SUITE 206

Number  Street

VAN NUYS, CA 91411

City  State  ZIP Code

Contact phone     818 788–1914     Email     martin@frankandsimonelaw.com

EXHIBIT 3, PAGE 50

## SECURED PROMISSORY NOTE

**$50,000.00**

LOS ANGELES, CALIFORNIA

October 11, 2024

1.    **FUNDAMENTAL PROVISIONS**.

The following terms will be used as defined terms in this Note:

| | |
|---|---|
| **Payee and Holder**: | MARTIN SIMONE, an individual |
| **Maker**: | ADRIAN RUDOMIN, an individual<br>578 WASHINGTON BL 148 MARINA DEL REY CA 90292<br><br>CHANTILLY ROAD, LLC, A California Limited Liability Company<br>578 WASHINGTON BL 148 MARINA DEL REY CA 90292<br><br>LEVIATHAN, LLC, a California Limited Liability Company<br>578 WASHINGTON BL 148 MARINA DEL REY CA 90292<br>(Collectively "MAKER") |
| **Original Principal Amount**: | $50,000.00 |
| **Interest Accrual Date**: | October 11, 2024 |
| **Interest Rate**: | In the event of default the Note shall bear interest at the lesser of the actual legal rate for the time period for which the interest rate is calculable or ten percent (10%) per annum. |
| **Payment Terms & Due Date**: | Payable in one lump sum due on January 31, 2025 (the "Lump Sum Payment"). |

Secured Promissory Note                    - Page 1 of 5 -

2.   **PROMISE TO PAY.**

For the value received, Maker promises to pay to the order of Holder, or at such other place as the Holder hereof may from time to time designate in writing, the monthly payment due together with accrued interest.

Payment shall be made to MARTIN SIMONE.

3.   **INTEREST PAYMENTS.**

(a)   Maker understands and agrees that Maker's failure or oral or written refusal to pay the Lump Sum Payment due shall constitute an event of material and substantial default (hereinafter "Event of Default") by Maker hereunder. From and after the earlier of Maker's oral or written refusal to pay the Principal Amount or Maker's failure to pay the Lump Sum Payment, the unpaid balance of the Principal Amount shall bear interest at the lesser of the actual legal rate for the time period for which the interest rate is calculable or ten percent (10%) per annum until paid in full. Throughout the term of this Note, if interest is payable by Maker, it shall be calculated on a 365-day year with respect to the unpaid balance of the Principal Amount and, in all cases, shall be computed for the actual number of days in the period for which interest is charged, which period shall consist of 365 days on an annual basis. Interest required to be paid by Maker pursuant to this subparagraph 3(a) shall be due and payable monthly from the month in which the Event of Default occurs.

(b)   All payments due hereunder shall be made:

(i)   without any deduction of any present and future taxes, levies, imposts, deductions, charges or withholdings, which amounts shall be paid by the Maker, and

(ii)   without any other set off.  Maker will pay the amounts necessary such that the gross amount of the principal and interest received by the Holder hereof is not less than that required by this Note.

4.   **PREPAYMENT**.

Maker shall not have the right to prepay the Principal Amount or the interest thereof.

---

Secured Promissory Note                          - Page 2 of 5 -

5.   **LAWFUL MONEY.**

Principal and interest are payable in lawful money of the United States of America.

6.   **APPLICATION OF PAYMENTS/LATE CHARGE.**

(a)   Absent the occurrence of an Event of Default hereunder, any payments received by the Holder hereof, pursuant to the terms hereof, shall be applied first to the payment of the Principal Amount balance, if any, and then to the payment of any accrued interest. Any payments received by the Holder hereof after the occurrence of an Event of Default hereunder, shall be applied to the amounts specified in this Paragraph 6(a) in such order as the Holder hereof may, in its sole discretion, elect.

(b)   If any payment of interest and/or principal is not received by the Holder hereof when such payment is due, then in addition to the remedies conferred upon the Holder hereof pursuant to Paragraph 10 hereof:

(i)   a late charge of one hundred fifty dollars ($150.00) which will be added to the delinquent amount to compensate Holder hereof for the expense of handling the delinquency for any payment past due in excess of five (5) days, regardless of any notice and cure periods, and

(ii)   the amount due and unpaid (including, without limitation, the late charge and any unpaid interest) shall bear interest at the Default Interest Rate, computed from the date on which the amount was due and payable until paid.

7.   **SECURITY.**

This Note is secured by all assets of CHANTILLY ROAD, LLC and LEVIATHAN, LLC, who are also parties to a separately executed SECURITY AGREEMENT.

8.   **PERSONAL GUARANTY.**

ADRIAN RUDOMIN agrees to be personally responsible for the obligations under this Secured Promissory Note and is also separately executing a SECURITY AGREEMENT.

9.   **ACCELERATION BY REASON OF TRANSFER.**

Any transfer of an ownership interest in the Security by Maker or of further encumbrance of the Security is expressly prohibited except with written consent of holder.

Secured Promissory Note                    - Page 3 of 5 -

EXHIBIT 3, PAGE 53

10.    **EVENT OF DEFAULT.**

In addition to the acts or omissions of Maker constituting Events of Default under subparagraph 3 (a) hereinabove, failure to make a payment of principal or interest within Ten (10) days of the due date shall also constitute an Event of Default.

11.    **REMEDIES.**

At the option of the Holder without demand or notice to Maker, upon the occurrence of an Event of Default, the Holder may accelerate Maker's payment obligations hereunder thereby causing the entire balance of principal together with all accrued interest thereon, and all other amounts payable by Maker under Note to become immediately due and payable. Upon the occurrence of an Event of Default (and so long as such Event of Default shall continue), the entire balance of principal hereof, together with all accrued interest thereon, and any judgment for such principal, interest, and other amounts shall bear interest at the Default Interest Rate equal to the lesser of the actual legal rate for the time period for which the interest rate is calculable or ten percent (10%) per annum from date of the last interest payment.

12.    **WAIVER.**

Maker of this Note hereby waives diligence, demand for payment, presentment for payment, protest, notice of nonpayment, notice of protest, notice of intent to accelerate, notice of acceleration, notice of dishonor, and all other notices or demands of any and expressly agrees that, without in any way affecting the liability of Maker, the Holder hereof may extend any maturity date or the time for payment of any installment due hereunder, accept security, release any person liable, and release any security or guaranty. Maker waives, to the full extent permitted by law, the right to plead any and all statutes of limitations as a defense.

13.    **CHANGE, DISCHARGE, TERMINATION, OR WAIVER.**

No provision of this Note may be changed, discharged, terminated, or waived except in writing signed by the party against whom enforcement of the change, discharge, termination, or waiver is sought. No failure on the part of the Holder hereof to exercise and no delay by the Holder hereof in exercising any right or remedy under this Note or under the law shall operate as a waiver thereof.

---

Secured Promissory Note                    - Page 4 of 5 -

14.    **ATTORNEY'S FEES**.

If this Note is not paid when due or if any Event of Default occurs, Maker promises to pay all costs of enforcement and collection and preparation therefor, including but limited to reasonable attorney's fees, whether or not any action or proceeding is brought to enforce the provisions hereof.

15.    **SEVERABILITY**.

If any provision of this Note is unenforceable, the enforceability of the other provisions shall not be affected and they shall remain in full force and effect.

16.    **INTEGRATION**.

This Secured Promissory Note contains the complete understanding and agreement of the Holder hereof and Maker and supersedes all prior representations, warranties, agreements, arrangements, understandings, and negotiations.

17.    **BINDING EFFECT.**

This Secured Promissory Note will be binding upon, and inure to the benefit of, the Holder hereof, Maker, and their respective successors and assigns.

18.    **TIME OF THE ESSENCE.**

Time is of the essence with regard to each provision of this Promissory Note to which time is a factor.

**MAKERS**

10/11/24
Date

LEVIATHAN, LLC
By: _____
ADRIAN RUDOMIN. President & Manager

10/11/24
Date

CHANTILLY ROAD, LLC
By: _____
ADRIAN RUDOMIN. President & Manager

10/11/24
Date

_____
ADRIAN RUDOMIN, an individual

Secured Promissory Note            - Page 5 of 5 -

## SECURITY AGREEMENT

This security agreement ("this Agreement") is made as of October 11, 2024 by and between ADRIAN RUDOMIN, an individual, CHANTILLY ROAD, LLC, A California Limited Liability Company, and LEVIATHAN, LLC, a California Limited Liability Company (Collectively, "Debtor" or "Debtors") on the one hand and Martin Simone (hereinafter "Secured Party").

## RECITALS

A.    Debtors CHANTILLY ROAD, LLC and LEVIATHAN, LLC are limited liability companies duly formed and in good standing under the laws of the State of California.

B.    Secured Party Martin Simone is an individual and resident of the State of California.

C.    On October 11, 2024, Debtor executed a Secured Promissory Note ("the Secured Promissory Note"). Pursuant to the Secured Promissory Note, Debtor has agreed to secure the obligations of Debtor under the Secured Promissory Note.

NOW, THEREFORE, it is hereby agreed that for and in partial consideration of Secured Party's execution of the Secured Promissory Note and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Debtor does hereby agree to pledge all assets of CHANTILLY ROAD, LLC and LEVIATHAN, LLC as collateral for Debtor's obligation pursuant to the Secured Promissory Note and grant to the Secured Party, its successors and assigns, a security interest in and to the Collateral as provided herein pursuant to the following terms and conditions:

1.    In order to secure Debtor's performance to Secured Party as per the Secured Promissory Note, Debtor hereby grants to Secured Party a security interest in any and all the assets of Debtor, including its land for business and non-business, fixtures, equipment and furniture, computer programs and software, accounts receivable, horses, customer list and files, materials, supplies, leases, vehicles and trailers, good will and all other assets of Debtor. whether real, personal, mixed, tangible or intangible (hereinafter referred to as "Collateral"). The parties shall cooperate with each other to perfect the security interests granted herein. Such cooperation shall include but not be limited to execution of any and all documents required to be signed by either or all parties, as well as recording of a financing statement, i.e. UCC-1. Failure to cooperate shall constitute a material breach/default of not only the terms of this Agreement, but also all related agreements previously signed concurrently herewith, including but not limited to the Secured Promissory Note.

2.    The security interests hereby granted shall secure the payment and

1

performance of all obligations of Debtor to Secured Party however incurred, now or hereafter existing, specifically those obligations relating to and arising from the Secured Promissory Note. The term "Obligations" shall include, without limitation, the following:

      (a)    Debtor's obligation to pay all amounts advanced, owed, expended or incurred by Secured Party resulting from Debtor's failure to perform any term or condition of the Secured Promissory Note or resulting from Debtor's breach of any warranty or representation made by Debtor to Secured Party under this Agreement or otherwise.

      (b)    Debtor's obligation to pay all amounts advanced, expended or incurred by Secured Party under the term of this Security Agreement or for the maintenance or preservation of the Collateral, together with interest thereon.

      (c)    Any and all obligations and/or payments due under the Secured Promissory Note, including any interest.

      3.    Except as provided herein, Debtor warrants and covenants that, Debtor has title to the Collateral free from any liens, security interests, encumbrances or claims. Debtor agrees to defend, at its cost and expense, any action which may affect the Secured Party's interest in or to the title to the Collateral. Debtor agrees to execute, if necessary, a Notice of Lien for recording, UCC-1 Financing Statement and Continuation Statements, and/or all such other documents as the Secured Party may reasonably require in order to perfect, continue perfection, and otherwise protect the Secured Party's security interest in the Collateral.

      4.    Except in the ordinary course of business, Debtor will not, without prior written consent of the Secured Party, sell, assign, transfer, pledge, hypothecate, encumber, redeem or dispose of the Collateral or any interest therein until this Security Agreement has been fully satisfied or the Collateral has been released, whichever first occurs.

      5.    Debtor hereby grants to the Secured Party a security interest in and to all proceeds, increases, substitutions, replacements, additions and accessions to the Collateral.

      6.    The security interest hereby granted secures all obligations of Debtor to the Secured Party, direct or indirect, absolute or contingent, due or to become due, whether existing or hereinafter arising related to this Agreement and the Secured Promissory Note.

      7.    Debtor will, if in the Secured Party's reasonable judgment and after consulting with Debtor determines that the Collateral has materially decreased in value, provide enough additional collateral to satisfy the Secured Party or reduce the total indebtedness by an amount sufficient to equal the decrease in value of the Collateral.

EXHIBIT 3, PAGE 57

8.      At the Secured Party's option, the Secured Party may discharge taxes, liens, interest, or perform or cause to be performed for and on behalf of Debtor any actions and conditions, obligations or covenants which Debtor has failed or refused to perform and may pay for the preservation of the Collateral and all sums so expended, including (but not limited to) attorneys' fees, court costs, agents' fees or commissions, and or any other costs or expenses.   Any such advancements shall be added to the obligations of Debtor and shall bear interest from the date of payment at the legal rate, and shall be secured by this Security Agreement.

9.      Debtor will promptly notify the Secured Party of any change of Debtor's chief place of business or the place where records concerning the Collateral are kept.

10.      Debtor agrees that Debtor will use reasonable care in the custody and preservation of the Collateral.  Debtor shall also keep the Collateral free from all liens, claims, encumbrances, taxes and assessments unless otherwise permitted herein.

11.      Debtor agrees that in performing any act under this Security Agreement that time shall be of the essence and that the Secured Party's acceptance of partial or delinquent payments or failure of the Secured Party to exercise any right or remedy shall not be a waiver of any obligation of Debtor or right of the Secured Party or constitute a waiver of any other similar default subsequently occurring.

12.      Debtor is duly authorized and empowered to enter into and carry out the provisions of this Agreement and any other documents relating to this Agreement and will not thereby be in conflict with or violate any of the terms or provisions of any statute, regulation, ordinance, corporate charter or by-law, agreement or other instrument which is binding upon Debtor.

13.      Except as stated herein, there are no actions, suits or claims pending or to Debtor's knowledge threatened against Debtor or any part or all of the Collateral which may adversely affect Secured Party's interest in the Collateral, Debtor or Debtor's ability to perform any of their obligations under the terms of this or any other agreement between Debtor and Secured Party.

14.      Debtor, at its own cost will appear in and defend any and all lawsuits and proceedings of any type which in Secured Party's reasonable opinion do or may affect the Collateral.

15.      Debtor will give Secured Party prompt notice of all claims, actions and proceedings instituted or threatened against Debtor, Debtor's business, Debtor's use and occupancy of the business Land, or affecting all or any part of the Collateral.

EXHIBIT 3, PAGE 58

16.    Debtor shall at all times provide and maintain , at its cost, insurance policies insuring the Collateral against loss, damage or fire and other risks normally covered by extended insurance coverage, theft or burglary and such other risks customarily insured against by companies engaged in businesses similar to that of Debtor. Each policy shall be in an amount not less than the full insurable or replacement value of the Collateral, and shall be upon such terms which shall provide, in part, that no act or omission by Debtor shall affect Secured Party's right to recover under such policy.

17.    Debtor assumes all risk and liability arising from the use and operation of the Collateral, either by negligence or otherwise, and hereby indemnifies and holds Secured Party harmless from all claims, costs, damage, loss and expenses, including attorney's fees, arising out of or related to the Collateral, any loss or damage of any kind to person or property caused by the Collateral or its use and operation, or Debtor's performance under this Agreement.

18.    Debtor agrees to fully maintain and upkeep all of the Collateral as required in the ordinary course of business and preserve such Collateral using every commercially reasonable method.

19.    In the event that Debtor desires to sell, transfer or encumber all or a substantial any part of the Collateral, Secured Party shall consent to same upon payment by Debtor to Secured Party in an amount equal to the then remaining balance due from Debtor to Secured Party or such other sum as the Parties may agree, including but not limited to, the amounts due pursuant to the Secured Promissory Note. This paragraph does not apply to Collateral sold or transferred in the ordinary course of business, or where the secured Collateral is replaced by Collateral of equal value. "Substantial" as used herein means more than one half of the Collateral as determined by using reasonable value.

20. This section is intentionally omitted.

21. This section is intentionally omitted.

22.    Debtor shall be in default under this Security Agreement upon the occurrence of any of the following events of conditions:

(a)    Default in the payment of the amount due to the Secured Party from the Secured Promissory Note or other agreements referenced herein or other obligations, covenants or liabilities contained or referred to herein which is not cured within sixty (60) days;

4

EXHIBIT 3, PAGE 59

(b)     Any warranty, representation or statement made or furnished to the Secured Party by or on behalf of Debtor proves to have been false in any material respect when made or furnished;

(c)     The sale, pledge, encumbrance, redemption, hypothecation, assignment, or disposal or the attempt to sell, pledge, encumber, redeem, assign or dispose of all or a substantial part of the Collateral, except in the ordinary course of business, and, as permitted herein, or the making of any levy, seizure or attachment thereof or thereon;

(d)     Substantial change in any fact warranted or represented in this Agreement and the Secured Promissory Note.

(e)     Dissolution, termination of existence, insolvency, business failure, appointment of a receiver, assignment for the benefit of creditors or the commencement of a proceeding under any bankruptcy or insolvency law by or against Debtor, or with respect to the Collateral;

(f)     Filing of any Financing Statement with regard to the Collateral, other than relating to the security interest granted hereby and except as permitted herein;

(g)     Any sale, transfer, assignment, mortgage, pledge, hypothecation or encumbrance (whether voluntary or involuntary) of the whole or any portion of Debtor's right, title or interest in and to the Collateral without the prior written consent of the secured party unless otherwise permitted herein;

(h)     All or a substantial part of the Collateral is adversely affected, lost, damaged, stolen, destroyed or missing.

23.     Upon the occurrence of any such event of default as set forth hereinabove, the Secured Party may declare all obligations secured hereby immediately due and payable and may proceed to enforce payment of same or any part thereof and exercise any and all of the rights and remedies pursuant to the Secured Promissory Note and any other additional remedies and procedures provided by the California Commercial Code as well as any and all other rights and remedies at law or equity possessed by the Secured Party.

24.     The rights and privileges of the Secured Party shall inure to its successors and assigns. All representations, warranties and agreements of Debtor shall bind Debtor's successors and assigns.

25.     This Security Agreement shall be construed in accordance with California Law.

26.     This Agreement, as well as the above-mentioned Secured Promissory Note

5

and related documents, including but not limited to, the Second Deed of Trust and UCC-1 that Secured Party is authorized to record, shall constitute the entire Agreement between the Parties pertaining to the subject matter contained in it. No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by all of the parties.

27.    In the event any action is brought by any party hereto to enforce the provisions of this Agreement, the Parties agree that the prevailing party shall be entitled to his reasonable attorney's fees and costs incurred.

28.    All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given on the date of service if served personally on the party to whom notice is to be given, or on the second day after mailing if mailed, by first class mail, registered or certified, postage prepaid, and properly addressed:

DEBTOR:                           SECURED PARTY:
Adrian Rudomin & the Debtor LLCs  Martin Simone
578 WASHINGTON BL 148             5627 Sepulveda Blvd Ste 206
MARINA DEL REY CA 90292           Van Nuys, CA 91411

29.    If any provision of this Agreement shall be held to be unlawful, void or unenforceable by any court of competent jurisdiction for any reason, such provision or provisions shall be deemed severable from and shall in no way affect the validity or enforceability of the remaining provisions or this Agreement.

30.    Each and everyone of the parties hereto acknowledge that: (i) he, she and it have been represented by independent counsel in connection with this Agreement; (ii) they have executed this Agreement with the advice of such counsel; and (iii) this Agreement is the result of negotiations between the parties hereto and the advice and assistance of their respective counsel. The Parties hereto understand that this Agreement may have tax effects and that they were advised to see a tax specialist re: tax effects herein.

31.    This Agreement is a product of arms length negotiation and shall not be interpreted more strictly against the drafting party, and the non drafting party expressly waives any right to have the contract interpreted more strictly against the drafting party.

32.    The individuals who are executing this and related Agreements for and on behalf of Debtor are the sole officers, directors and/or shareholders of Debtor, and therefore have the full authority to undertake the obligations set forth in this Agreement, in furtherance of Debtor's business.

6

EXHIBIT 3, PAGE 61

33.    The undersigned(s) hereby represent(s) that they have authority to execute this
Security Agreement as parties or on behalf of the parties hereto.

IN WITNESS WHEREOF, the Parties to this Agreement have duly executed same on
the day and year first above written.

**DEBTOR:**

_10/11/24_
**Date**

**LEVIATHAN, LLC**
**By:** _____
**ADRIAN RUDOMIN, President & Manager**

_10/11/24_
**Date**

**CHANTILLY ROAD, LLC**
**By:** _____
**ADRIAN RUDOMIN, President & Manager**

_10/11/24_
**Date**

_____
**ADRIAN RUDOMIN, an individual**

**THE SECURED PARTY:**

_10/11/2024_
**Date**

_____
**MARTIN SIMONE, an individual**

7

## INFORMED CONSENT / CONFLICT OF INTEREST WAIVER

By signing this agreement,

- ADRIAN RUDOMIN, an individual
- CHANTILLY ROAD, LLC, A California Limited Liability Company
- LEVIATHAN, LLC, a California Limited Liability Company

(collectively hereinafter "Clients" or "Parties") agree to the following terms:

The Parties are entering into a SECURED PROMISSORY NOTE agreement and a
SECURITY agreement (collectively, the "Agreements") with Martin Simone
("Attorney").  Attorney is not representing Clients in connection with the Agreements, but
remains a party to the same; however, Attorney is representing, or in the past has
represented the Clients in connection with other matters.

The California State Bar's Rule 1.7, Conflict of Interest: Current Clients (Rule Approved
by the Supreme Court, Effective November 1, 2018), provides that an attorney must
obtain the informed consent of a client prior to entering into a business transaction with
the client (https://www.calbar.ca.gov/Portals/0/documents/rules/Rule_1.7-
Exec_Summary-Redline.pdf).

Clients agree that they have reviewed the applicable provisions of the California State
Bar's Rules on Professional Conduct, and Clients are providing Attorney with informed
consent to allow Attorney to enter into the Agreements with them.

By signing below, the Parties acknowledge that they have had an opportunity to seek
independent counsel in this matter to ensure the transaction is fully compliant with all
related CA Rules of Professional Conduct, including new rules that were recently made
effective: http://www.calbar.ca.gov/About-Us/News-Events/News-Releases/new-rules-of-
professional-conduct-effective-november-1

**CLIENTS**

_10/11/24_
**Date**

_10/9/24_
**Date**

_10/11/24_
**Date**

**LEVIATHAN, LLC**

By: _____
ADRIAN RUDOMIN. President & Manager

**CHANTILLY ROAD, LLC**

By: _____
ADRIAN RUDOMIN. President & Manager

_____
ADRIAN RUDOMIN, an individual

Page 1 of 1

## SECURED PROMISSORY NOTE

**$50,000.00**                                                        LOS ANGELES, CALIFORNIA

November 27, 2024

1.    **FUNDAMENTAL PROVISIONS**.

The following terms will be used as defined terms in this Note:

| | |
|---|---|
| **Payee and Holder**: | MARTIN SIMONE, an individual |
| **Maker**: | ADRIAN RUDOMIN, an individual<br>578 WASHINGTON BL 148 MARINA DEL REY CA 90292 |
| | CHANTILLY ROAD, LLC, A California Limited Liability Company<br>578 WASHINGTON BL 148 MARINA DEL REY CA 90292 |
| | LEVIATHAN, LLC, a California Limited Liability Company<br>578 WASHINGTON BL 148 MARINA DEL REY CA 90292<br>(Collectively "MAKER") |
| **Original Principal Amount**: | $50,000.00 |
| **Interest Accrual Date**: | November 27, 2024 |
| **Interest Rate**: | In the event of default the Note shall bear interest at the lesser of the actual legal rate for the time period for which the interest rate is calculable or ten percent (10%) per annum. |
| **Payment Terms & Due Date**: | Payable in one lump sum due on January 31, 2025 (the "Lump Sum Payment"). |

EXHIBIT 3, PAGE 64

## 2.    PROMISE TO PAY.

For the value received, Maker promises to pay to the order of Holder, or at such other place as the Holder hereof may from time to time designate in writing, the monthly payment due together with accrued interest.

Payment shall be made to MARTIN SIMONE.

## 3.    INTEREST PAYMENTS.

(a)    Maker understands and agrees that Maker's failure or oral or written refusal to pay the Lump Sum Payment due shall constitute an event of material and substantial default (hereinafter "Event of Default") by Maker hereunder. From and after the earlier of Maker's oral or written refusal to pay the Principal Amount or Maker's failure to pay the Lump Sum Payment, the unpaid balance of the Principal Amount shall bear interest at the lesser of the actual legal rate for the time period for which the interest rate is calculable or ten percent (10%) per annum until paid in full. Throughout the term of this Note, if interest is payable by Maker, it shall be calculated on a 365-day year with respect to the unpaid balance of the Principal Amount and, in all cases, shall be computed for the actual number of days in the period for which interest is charged, which period shall consist of 365 days on an annual basis. Interest required to be paid by Maker pursuant to this subparagraph 3(a) shall be due and payable monthly from the month in which the Event of Default occurs.

(b)    All payments due hereunder shall be made:

(i)    without any deduction of any present and future taxes, levies, imposts, deductions, charges or withholdings, which amounts shall be paid by the Maker, and

(ii)    without any other set off.  Maker will pay the amounts necessary such that the gross amount of the principal and interest received by the Holder hereof is not less than that required by this Note.

## 4.    PREPAYMENT.

Maker shall not have the right to prepay the Principal Amount or the interest thereof.

Secured Promissory Note                    - Page 2 of 5 -

5. **LAWFUL MONEY.**

Principal and interest are payable in lawful money of the United States of America.

6. **APPLICATION OF PAYMENTS/LATE CHARGE.**

(a)    Absent the occurrence of an Event of Default hereunder, any payments received by the Holder hereof, pursuant to the terms hereof, shall be applied first to the payment of the Principal Amount balance, if any, and then to the payment of any accrued interest. Any payments received by the Holder hereof after the occurrence of an Event of Default hereunder, shall be applied to the amounts specified in this Paragraph 6(a) in such order as the Holder hereof may, in its sole discretion, elect.

(b)    If any payment of interest and/or principal is not received by the Holder hereof when such payment is due, then in addition to the remedies conferred upon the Holder hereof pursuant to Paragraph 10 hereof:

(i)    a late charge of one hundred fifty dollars ($150.00) which will be added to the delinquent amount to compensate Holder hereof for the expense of handling the delinquency for any payment past due in excess of five (5) days, regardless of any notice and cure periods, and

(ii)    the amount due and unpaid (including, without limitation, the late charge and any unpaid interest) shall bear interest at the Default Interest Rate, computed from the date on which the amount was due and payable until paid.

7. **SECURITY.**

This Note is secured by all assets of CHANTILLY ROAD, LLC and LEVIATHAN, LLC, who are also parties to a separately executed SECURITY AGREEMENT.

8. **PERSONAL GUARANTY.**

ADRIAN RUDOMIN agrees to be personally responsible for the obligations under this Secured Promissory Note and is also separately executing a SECURITY AGREEMENT.

9. **ACCELERATION BY REASON OF TRANSFER.**

Any transfer of an ownership interest in the Security by Maker or of further encumbrance of the Security is expressly prohibited except with written consent of holder.

---

Secured Promissory Note                    - Page 3 of 5 -

**10.    EVENT OF DEFAULT.**

In addition to the acts or omissions of Maker constituting Events of Default under subparagraph 3 (a) hereinabove, failure to make a payment of principal or interest within Ten (10) days of the due date shall also constitute an Event of Default.

**11.    REMEDIES.**

At the option of the Holder without demand or notice to Maker, upon the occurrence of an Event of Default, the Holder may accelerate Maker's payment obligations hereunder thereby causing the entire balance of principal together with all accrued interest thereon, and all other amounts payable by Maker under Note to become immediately due and payable. Upon the occurrence of an Event of Default (and so long as such Event of Default shall continue), the entire balance of principal hereof, together with all accrued interest thereon, and any judgment for such principal, interest, and other amounts shall bear interest at the Default Interest Rate equal to the lesser of the actual legal rate for the time period for which the interest rate is calculable or ten percent (10%) per annum from date of the last interest payment.

**12.    WAIVER.**

Maker of this Note hereby waives diligence, demand for payment, presentment for payment, protest, notice of nonpayment, notice of protest, notice of intent to accelerate, notice of acceleration, notice of dishonor, and all other notices or demands of any and expressly agrees that, without in any way affecting the liability of Maker, the Holder hereof may extend any maturity date or the time for payment of any installment due hereunder, accept security, release any person liable, and release any security or guaranty. Maker waives, to the full extent permitted by law, the right to plead any and all statutes of limitations as a defense.

**13.    CHANGE, DISCHARGE, TERMINATION, OR WAIVER.**

No provision of this Note may be changed, discharged, terminated, or waived except in writing signed by the party against whom enforcement of the change, discharge, termination, or waiver is sought. No failure on the part of the Holder hereof to exercise and no delay by the Holder hereof in exercising any right or remedy under this Note or under the law shall operate as a waiver thereof.

EXHIBIT 3, PAGE 67

14. **ATTORNEY'S FEES**.

If this Note is not paid when due or if any Event of Default occurs, Maker promises to pay all costs of enforcement and collection and preparation therefor, including but limited to reasonable attorney's fees, whether or not any action or proceeding is brought to enforce the provisions hereof.

15. **SEVERABILITY**.

If any provision of this Note is unenforceable, the enforceability of the other provisions shall not be affected and they shall remain in full force and effect.

16. **INTEGRATION**.

This Secured Promissory Note contains the complete understanding and agreement of the Holder hereof and Maker and supersedes all prior representations, warranties, agreements, arrangements, understandings, and negotiations.

17. **BINDING EFFECT.**

This Secured Promissory Note will be binding upon, and inure to the benefit of, the Holder hereof, Maker, and their respective successors and assigns.

18. **TIME OF THE ESSENCE**.

Time is of the essence with regard to each provision of this Promissory Note to which time is a factor.

**MAKERS**

**11/29/2021**
Date

**LEVIATHAN, LLC**
By: _____
ADRIAN RUDOMIN. President & Manager

**11/29/2024**
Date

**CHANTILLY ROAD LLC**
By: _____
ADRIAN RUDOMIN. President & Manager

**11/29/2024**
Date

_____
ADRIAN RUDOMIN, an individual

Secured Promissory Note                    - Page 5 of 5 -

EXHIBIT 3, PAGE 68

# INFORMED CONSENT / CONFLICT OF INTEREST WAIVER

By signing this agreement,

- ADRIAN RUDOMIN, an individual
- CHANTILLY ROAD, LLC, A California Limited Liability Company
- LEVIATHAN, LLC, a California Limited Liability Company

(collectively hereinafter "Clients" or "Parties") agree to the following terms:

The Parties are entering into a SECURED PROMISSORY NOTE agreement and a SECURITY agreement (collectively, the "Agreements") with Martin Simone ("Attorney"). Attorney is not representing Clients in connection with the Agreements, but remains a party to the same; however, Attorney is representing, or in the past has represented the Clients in connection with other matters.

The California State Bar's Rule 1.7, Conflict of Interest: Current Clients (Rule Approved by the Supreme Court, Effective November 1, 2018), provides that an attorney must obtain the informed consent of a client prior to entering into a business transaction with the client (https://www.calbar.ca.gov/Portals/0/documents/rules/Rule_1.7-Exec_Summary-Redline.pdf).

Clients agree that they have reviewed the applicable provisions of the California State Bar's Rules on Professional Conduct, and Clients are providing Attorney with informed consent to allow Attorney to enter into the Agreements with them.

By signing below, the Parties acknowledge that they have had an opportunity to seek independent counsel in this matter to ensure the transaction is fully compliant with all related CA Rules of Professional Conduct, including new rules that were recently made effective: http://www.calbar.ca.gov/About-Us/News-Events/News-Releases/new-rules-of-professional-conduct-effective-november-1

**CLIENTS**

_11/29/2024_
Date

_11/29/2024_
Date

_11/29/2024_
Date

**LEVIATHAN, LLC**

By: _____
**ADRIAN RUDOMIN. President & Manager**

**CHANTILLY ROAD, LLC**

By: _____
**ADRIAN RUDOMIN. President & Manager**

_____
**ADRIAN RUDOMIN, an individual**

Page 1 of 1

# SECURITY AGREEMENT

This security agreement ("this Agreement") is made as of November 27, 2024 by and between ADRIAN RUDOMIN, an individual, CHANTILLY ROAD, LLC, A California Limited Liability Company, and LEVIATHAN, LLC, a California Limited Liability Company (Collectively, "Debtor" or "Debtors") on the one hand and Martin Simone (hereinafter "Secured Party").

## RECITALS

A.    Debtors CHANTILLY ROAD, LLC and LEVIATHAN, LLC are limited liability companies duly formed and in good standing under the laws of the State of California.

B.    Secured Party Martin Simone is an individual and resident of the State of California.

C.    On November 27, 2024, Debtor executed a Secured Promissory Note ("the Secured Promissory Note"). Pursuant to the Secured Promissory Note, Debtor has agreed to secure the obligations of Debtor under the Secured Promissory Note.

NOW, THEREFORE, it is hereby agreed that for and in partial consideration of Secured Party's execution of the Secured Promissory Note and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Debtor does hereby agree to pledge all assets of CHANTILLY ROAD, LLC and LEVIATHAN, LLC as collateral for Debtor's obligation pursuant to the Secured Promissory Note and grant to the Secured Party, its successors and assigns, a security interest in and to the Collateral as provided herein pursuant to the following terms and conditions:

1.    In order to secure Debtor's performance to Secured Party as per the Secured Promissory Note, Debtor hereby grants to Secured Party a security interest in any and all the assets of Debtor, including its land for business and non-business, fixtures, equipment and furniture, computer programs and software, accounts receivable, horses, customer list and files, materials, supplies, leases, vehicles and trailers, good will and all other assets of Debtor. whether real, personal, mixed, tangible or intangible (hereinafter referred to as "Collateral"). The parties shall cooperate with each other to perfect the security interests granted herein. Such cooperation shall include but not be limited to execution of any and all documents required to be signed by either or all parties, as well as recording of a financing statement, i.e. UCC-1. Failure to cooperate shall constitute a material breach/default of not only the terms of this Agreement, but also all related agreements previously signed concurrently herewith, including but not limited to the Secured Promissory Note.

2.    The security interests hereby granted shall secure the payment and

1

performance of all obligations of Debtor to Secured Party however incurred, now or hereafter existing, specifically those obligations relating to and arising from the Secured Promissory Note. The term "Obligations" shall include, without limitation, the following:

(a)     Debtor's obligation to pay all amounts advanced, owed, expended or incurred by Secured Party resulting from Debtor's failure to perform any term or condition of the Secured Promissory Note or resulting from Debtor's breach of any warranty or representation made by Debtor to Secured Party under this Agreement or otherwise.

(b)     Debtor's obligation to pay all amounts advanced, expended or incurred by Secured Party under the term of this Security Agreement or for the maintenance or preservation of the Collateral, together with interest thereon.

(c)     Any and all obligations and/or payments due under the Secured Promissory Note, including any interest.

3.      Except as provided herein, Debtor warrants and covenants that, Debtor has title to the Collateral free from any liens, security interests, encumbrances or claims. Debtor agrees to defend, at its cost and expense, any action which may affect the Secured Party's interest in or to the title to the Collateral. Debtor agrees to execute, if necessary, a Notice of Lien for recording, UCC-1 Financing Statement and Continuation Statements, and/or all such other documents as the Secured Party may reasonably require in order to perfect, continue perfection, and otherwise protect the Secured Party's security interest in the Collateral.

4.      Except in the ordinary course of business, Debtor will not, without prior written consent of the Secured Party, sell, assign, transfer, pledge, hypothecate, encumber, redeem or dispose of the Collateral or any interest therein until this Security Agreement has been fully satisfied or the Collateral has been released, whichever first occurs.

5.      Debtor hereby grants to the Secured Party a security interest in and to all proceeds, increases, substitutions, replacements, additions and accessions to the Collateral.

6.      The security interest hereby granted secures all obligations of Debtor to the Secured Party, direct or indirect, absolute or contingent, due or to become due, whether existing or hereinafter arising related to this Agreement and the Secured Promissory Note.

7.      Debtor will, if in the Secured Party's reasonable judgment and after consulting with Debtor determines that the Collateral has materially decreased in value, provide enough additional collateral to satisfy the Secured Party or reduce the total indebtedness by an amount sufficient to equal the decrease in value of the Collateral.

2

EXHIBIT 3, PAGE 71

8.      At the Secured Party's option, the Secured Party may discharge taxes, liens, interest, or perform or cause to be performed for and on behalf of Debtor any actions and conditions, obligations or covenants which Debtor has failed or refused to perform and may pay for the preservation of the Collateral and all sums so expended, including (but not limited to) attorneys' fees, court costs, agents' fees or commissions, and or any other costs or expenses.  Any such advancements shall be added to the obligations of Debtor and shall bear interest from the date of payment at the legal rate, and shall be secured by this Security Agreement.

9.      Debtor will promptly notify the Secured Party of any change of Debtor's chief place of business or the place where records concerning the Collateral are kept.

10.     Debtor agrees that Debtor will use reasonable care in the custody and preservation of the Collateral.  Debtor shall also keep the Collateral free from all liens, claims, encumbrances, taxes and assessments unless otherwise permitted herein.

11.     Debtor agrees that in performing any act under this Security Agreement that time shall be of the essence and that the Secured Party's acceptance of partial or delinquent payments or failure of the Secured Party to exercise any right or remedy shall not be a waiver of any obligation of Debtor or right of the Secured Party or constitute a waiver of any other similar default subsequently occurring.

12.     Debtor is duly authorized and empowered to enter into and carry out the provisions of this Agreement and any other documents relating to this Agreement and will not thereby be in conflict with or violate any of the terms or provisions of any statute, regulation, ordinance, corporate charter or by-law, agreement or other instrument which is binding upon Debtor.

13.     Except as stated herein, there are no actions, suits or claims pending or to Debtor's knowledge threatened against Debtor or any part or all of the Collateral which may adversely affect Secured Party's interest in the Collateral, Debtor or Debtor's ability to perform any of their obligations under the terms of this or any other agreement between Debtor and Secured Party.

14.     Debtor, at its own cost will appear in and defend any and all lawsuits and proceedings of any type which in Secured Party's reasonable opinion do or may affect the Collateral.

15.     Debtor will give Secured Party prompt notice of all claims, actions and proceedings instituted or threatened against Debtor, Debtor's business, Debtor's use and occupancy of the business Land, or affecting all or any part of the Collateral.

3

8.      At the Secured Party's option, the Secured Party may discharge taxes, liens, interest, or perform or cause to be performed for and on behalf of Debtor any actions and conditions, obligations or covenants which Debtor has failed or refused to perform and may pay for the preservation of the Collateral and all sums so expended, including (but not limited to) attorneys' fees, court costs, agents' fees or commissions, and or any other costs or expenses. Any such advancements shall be added to the obligations of Debtor and shall bear interest from the date of payment at the legal rate, and shall be secured by this Security Agreement.

9.      Debtor will promptly notify the Secured Party of any change of Debtor's chief place of business or the place where records concerning the Collateral are kept.

10.     Debtor agrees that Debtor will use reasonable care in the custody and preservation of the Collateral. Debtor shall also keep the Collateral free from all liens, claims, encumbrances, taxes and assessments unless otherwise permitted herein.

11.     Debtor agrees that in performing any act under this Security Agreement that time shall be of the essence and that the Secured Party's acceptance of partial or delinquent payments or failure of the Secured Party to exercise any right or remedy shall not be a waiver of any obligation of Debtor or right of the Secured Party or constitute a waiver of any other similar default subsequently occurring.

12.     Debtor is duly authorized and empowered to enter into and carry out the provisions of this Agreement and any other documents relating to this Agreement and will not thereby be in conflict with or violate any of the terms or provisions of any statute, regulation, ordinance, corporate charter or by-law, agreement or other instrument which is binding upon Debtor.

13.     Except as stated herein, there are no actions, suits or claims pending or to Debtor's knowledge threatened against Debtor or any part or all of the Collateral which may adversely affect Secured Party's interest in the Collateral, Debtor or Debtor's ability to perform any of their obligations under the terms of this or any other agreement between Debtor and Secured Party.

14.     Debtor, at its own cost will appear in and defend any and all lawsuits and proceedings of any type which in Secured Party's reasonable opinion do or may affect the Collateral.

15.     Debtor will give Secured Party prompt notice of all claims, actions and proceedings instituted or threatened against Debtor, Debtor's business, Debtor's use and occupancy of the business Land, or affecting all or any part of the Collateral.

3

16.    Debtor shall at all times provide and maintain , at its cost, insurance policies insuring the Collateral against loss, damage or fire and other risks normally covered by extended insurance coverage, theft or burglary and such other risks customarily insured against by companies engaged in businesses similar to that of Debtor. Each policy shall be in an amount not less than the full insurable or replacement value of the Collateral, and shall be upon such terms which shall provide, in part, that no act or omission by Debtor shall affect Secured Party's right to recover under such policy.

17.    Debtor assumes all risk and liability arising from the use and operation of the Collateral, either by negligence or otherwise, and hereby indemnifies and holds Secured Party harmless from all claims, costs, damage, loss and expenses, including attorney's fees, arising out of or related to the Collateral, any loss or damage of any kind to person or property caused by the Collateral or its use and operation, or Debtor's performance under this Agreement.

18.    Debtor agrees to fully maintain and upkeep all of the Collateral as required in the ordinary course of business and preserve such Collateral using every commercially reasonable method.

19.    In the event that Debtor desires to sell, transfer or encumber all or a substantial any part of the Collateral, Secured Party shall consent to same upon payment by Debtor to Secured Party in an amount equal to the then remaining balance due from Debtor to Secured Party or such other sum as the Parties may agree, including but not limited to, the amounts due pursuant to the Secured Promissory Note. This paragraph does not apply to Collateral sold or transferred in the ordinary course of business, or where the secured Collateral is replaced by Collateral of equal value. "Substantial" as used herein means more than one half of the Collateral as determined by using reasonable value.

20. This section is intentionally omitted.

21. This section is intentionally omitted.

22.    Debtor shall be in default under this Security Agreement upon the occurrence of any of the following events of conditions:

(a)    Default in the payment of the amount due to the Secured Party from the Secured Promissory Note or other agreements referenced herein or other obligations, covenants or liabilities contained or referred to herein which is not cured within sixty (60) days;

4

(b)      Any warranty, representation or statement made or furnished to the Secured Party by or on behalf of Debtor proves to have been false in any material respect when made or furnished;

(c)      The sale, pledge, encumbrance, redemption, hypothecation, assignment, or disposal or the attempt to sell, pledge, encumber, redeem, assign or dispose of all or a substantial part of the Collateral, except in the ordinary course of business, and, as permitted herein, or the making of any levy, seizure or attachment thereof or thereon;

(d)      Substantial change in any fact warranted or represented in this Agreement and the Secured Promissory Note.

(e)      Dissolution, termination of existence, insolvency, business failure, appointment of a receiver, assignment for the benefit of creditors or the commencement of a proceeding under any bankruptcy or insolvency law by or against Debtor, or with respect to the Collateral;

(f)      Filing of any Financing Statement with regard to the Collateral, other than relating to the security interest granted hereby and except as permitted herein;

(g)      Any sale, transfer, assignment, mortgage, pledge, hypothecation or encumbrance (whether voluntary or involuntary) of the whole or any portion of Debtor's right, title or interest in and to the Collateral without the prior written consent of the secured party unless otherwise permitted herein;

(h)      All or a substantial part of the Collateral is adversely affected, lost, damaged, stolen, destroyed or missing.

23.      Upon the occurrence of any such event of default as set forth hereinabove, the Secured Party may declare all obligations secured hereby immediately due and payable and may proceed to enforce payment of same or any part thereof and exercise any and all of the rights and remedies pursuant to the Secured Promissory Note and any other additional remedies and procedures provided by the California Commercial Code as well as any and all other rights and remedies at law or equity possessed by the Secured Party.

24.      The rights and privileges of the Secured Party shall inure to its successors and assigns. All representations, warranties and agreements of Debtor shall bind Debtor's successors and assigns.

25.      This Security Agreement shall be construed in accordance with California Law.

26.      This Agreement, as well as the above-mentioned Secured Promissory Note

5

and related documents, including but not limited to, the Second Deed of Trust and UCC-1 that Secured Party is authorized to record, shall constitute the entire Agreement between the Parties pertaining to the subject matter contained in it. No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by all of the parties.

27.    In the event any action is brought by any party hereto to enforce the provisions of this Agreement, the Parties agree that the prevailing party shall be entitled to his reasonable attorney's fees and costs incurred.

28.    All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given on the date of service if served personally on the party to whom notice is to be given, or on the second day after mailing if mailed, by first class mail, registered or certified, postage prepaid, and properly addressed:

DEBTOR:                              SECURED PARTY:
Adrian Rudomin & the Debtor LLCs     Martin Simone
578 WASHINGTON BL 148                5627 Sepulveda Blvd Ste 206
MARINA DEL REY CA 90292              Van Nuys, CA 91411

29.    If any provision of this Agreement shall be held to be unlawful, void or unenforceable by any court of competent jurisdiction for any reason, such provision or provisions shall be deemed severable from and shall in no way affect the validity or enforceability of the remaining provisions or this Agreement.

30.    Each and everyone of the parties hereto acknowledge that: (i) he, she and it have been represented by independent counsel in connection with this Agreement; (ii) they have executed this Agreement with the advice of such counsel; and (iii) this Agreement is the result of negotiations between the parties hereto and the advice and assistance of their respective counsel. The Parties hereto understand that this Agreement may have tax effects and that they were advised to see a tax specialist re: tax effects herein.

31.    This Agreement is a product of arms length negotiation and shall not be interpreted more strictly against the drafting party, and the non drafting party expressly waives any right to have the contract interpreted more strictly against the drafting party.

32.    The individuals who are executing this and related Agreements for and on behalf of Debtor are the sole officers, directors and/or shareholders of Debtor, and therefore have the full authority to undertake the obligations set forth in this Agreement, in furtherance of Debtor's business.

6

EXHIBIT 3, PAGE 76

33.     The undersigned(s) hereby represent(s) that they have authority to execute this Security Agreement as parties or on behalf of the parties hereto.

IN WITNESS WHEREOF, the Parties to this Agreement have duly executed same on the day and year first above written.

**DEBTOR:**

_11/29/2024_
**Date**

LEVIATHAN, LLC
By: _____
**ADRIAN RUDOMIN. President & Manager**

_11/29/2024_
**Date**

CHANTILLY ROAD, LLC
By: _____
**ADRIAN RUDOMIN. President & Manager**

_11/29/2024_
**Date**

**ADRIAN RUDOMIN, an individual**

**THE SECURED PARTY:**

11/29/24
**Date**

**MARTIN SIMONE, an individual**

7

## INFORMED CONSENT / CONFLICT OF INTEREST WAIVER

By signing this agreement,

- ADRIAN RUDOMIN, an individual
- CHANTILLY ROAD, LLC, A California Limited Liability Company
- LEVIATHAN, LLC, a California Limited Liability Company

(collectively hereinafter "Clients" or "Parties") agree to the following terms:

The Parties are entering into a SECURED PROMISSORY NOTE agreement and a
SECURITY agreement (collectively, the "Agreements") with Martin Simone ("Attorney").
Attorney is not representing Clients in connection with the Agreements, but remains a party to
the same; however, Attorney is representing, or in the past has represented the Clients in
connection with other matters.

The California State Bar's Rule 1.7, Conflict of Interest: Current Clients (Rule Approved by
the Supreme Court, Effective November 1, 2018), provides that an attorney must obtain the
informed consent of a client prior to entering into a business transaction with the client
(https://www.calbar.ca.gov/Portals/0/documents/rules/Rule_1.7-Exec_Summary-Redline.pdf).

Clients agree that they have reviewed the applicable provisions of the California State Bar's
Rules on Professional Conduct, and Clients are providing Attorney with informed consent to
allow Attorney to enter into the Agreements with them.

By signing below, the Parties acknowledge that they have had an opportunity to seek
independent counsel in this matter to ensure the transaction is fully compliant with all related
CA Rules of Professional Conduct, including new rules that were recently made effective:
http://www.calbar.ca.gov/About-Us/News-Events/News-Releases/new-rules-of-professional-
conduct-effective-november-1

**CLIENTS**

12-1-29
**Date**

**LEVIATHAN, LLC**

By: _____
ADRIAN RUDOMIN. President & Manager

**CHANTILLY ROAD, LLC**

12-1-24
**Date**

By: _____
ADRIAN RUDOMIN, President & Manager

12-1-24
**Date**

_____
ADRIAN RUDOMIN, an individual

Page **1** of **1**

## SECURED PROMISSORY NOTE

**$25,000.00**                                LOS ANGELES, CALIFORNIA

December 1, 2024

1.    **FUNDAMENTAL PROVISIONS.**

The following terms will be used as defined terms in this Note:

| | |
|---|---|
| **Payee and Holder**: | MARTIN SIMONE, an individual |
| **Maker**: | ADRIAN RUDOMIN, an individual<br>578 WASHINGTON BL 148 MARINA DEL REY CA 90292 |
| | CHANTILLY ROAD, LLC, A California Limited Liability Company<br>578 WASHINGTON BL 148 MARINA DEL REY CA 90292 |
| | LEVIATHAN, LLC, a California Limited Liability Company<br>578 WASHINGTON BL 148 MARINA DEL REY CA 90292<br>(Collectively "MAKER") |
| **Original Principal Amount**: | $25,000.00 |
| **Interest Accrual Date**: | December 1, 2024 |
| **Interest Rate**: | In the event of default the Note shall bear interest at the lesser of the actual legal rate for the time period for which the interest rate is calculable or ten percent (10%) per annum. |
| **Payment Terms & Due Date**: | Payable in one lump sum due on January 1, 2025 (the "Lump Sum Payment"). |

EXHIBIT 3, PAGE 79

2.    **PROMISE TO PAY.**

For the value received, Maker promises to pay to the order of Holder, or at such other place as the Holder hereof may from time to time designate in writing, the monthly payment due together with accrued interest.

Payment shall be made to MARTIN SIMONE.

3.    **INTEREST PAYMENTS.**

(a)    Maker understands and agrees that Maker's failure or oral or written refusal to pay the Lump Sum Payment due shall constitute an event of material and substantial default (hereinafter "Event of Default") by Maker hereunder. From and after the earlier of Maker's oral or written refusal to pay the Principal Amount or Maker's failure to pay the Lump Sum Payment, the unpaid balance of the Principal Amount shall bear interest at the lesser of the actual legal rate for the time period for which the interest rate is calculable or ten percent (10%) per annum until paid in full. Throughout the term of this Note, if interest is payable by Maker, it shall be calculated on a 365-day year with respect to the unpaid balance of the Principal Amount and, in all cases, shall be computed for the actual number of days in the period for which interest is charged, which period shall consist of 365 days on an annual basis. Interest required to be paid by Maker pursuant to this subparagraph 3(a) shall be due and payable monthly from the month in which the Event of Default occurs.

(b)    All payments due hereunder shall be made:

(i)    without any deduction of any present and future taxes, levies, imposts, deductions, charges or withholdings, which amounts shall be paid by the Maker, and

(ii)    without any other set off. Maker will pay the amounts necessary such that the gross amount of the principal and interest received by the Holder hereof is not less than that required by this Note.

4.    **PREPAYMENT.**

Maker shall not have the right to prepay the Principal Amount or the interest thereof.

EXHIBIT 3, PAGE 80

5.    **LAWFUL MONEY.**

Principal and interest are payable in lawful money of the United States of America.

6.    **APPLICATION OF PAYMENTS/LATE CHARGE.**

(a)    Absent the occurrence of an Event of Default hereunder, any payments received by the Holder hereof, pursuant to the terms hereof, shall be applied first to the payment of the Principal Amount balance, if any, and then to the payment of any accrued interest.    Any payments received by the Holder hereof after the occurrence of an Event of Default hereunder, shall be applied to the amounts specified in this Paragraph 6(a) in such order as the Holder hereof may, in its sole discretion, elect.

(b)    If any payment of interest and/or principal is not received by the Holder hereof when such payment is due, then in addition to the remedies conferred upon the Holder hereof pursuant to Paragraph 10 hereof:

(i)    a late charge of one hundred fifty dollars ($150.00) which will be added to the delinquent amount to compensate Holder hereof for the expense of handling the delinquency for any payment past due in excess of five (5) days, regardless of any notice and cure periods, and

(ii)    the amount due and unpaid (including, without limitation, the late charge and any unpaid interest) shall bear interest at the Default Interest Rate, computed from the date on which the amount was due and payable until paid.

7.    **SECURITY.**

This Note is secured by all assets of CHANTILLY ROAD, LLC and LEVIATHAN, LLC, who are also parties to a separately executed SECURITY AGREEMENT.

8.    **PERSONAL GUARANTY.**

ADRIAN RUDOMIN agrees to be personally responsible for the obligations under this Secured Promissory Note and is also separately executing a SECURITY AGREEMENT.

9.    **ACCELERATION BY REASON OF TRANSFER.**

Any transfer of an ownership interest in the Security by Maker or of further encumbrance of the Security is expressly prohibited except with written consent of holder.

## 10. EVENT OF DEFAULT.

In addition to the acts or omissions of Maker constituting Events of Default under subparagraph 3 (a) hereinabove, failure to make a payment of principal or interest within Ten (10) days of the due date shall also constitute an Event of Default.

## 11. REMEDIES.

At the option of the Holder without demand or notice to Maker, upon the occurrence of an Event of Default, the Holder may accelerate Maker's payment obligations hereunder thereby causing the entire balance of principal together with all accrued interest thereon, and all other amounts payable by Maker under Note to become immediately due and payable. Upon the occurrence of an Event of Default (and so long as such Event of Default shall continue), the entire balance of principal hereof, together with all accrued interest thereon, and any judgment for such principal, interest, and other amounts shall bear interest at the Default Interest Rate equal to the lesser of the actual legal rate for the time period for which the interest rate is calculable or ten percent (10%) per annum from date of the last interest payment.

## 12. WAIVER.

Maker of this Note hereby waives diligence, demand for payment, presentment for payment, protest, notice of nonpayment, notice of protest, notice of intent to accelerate, notice of acceleration, notice of dishonor, and all other notices or demands of any and expressly agrees that, without in any way affecting the liability of Maker, the Holder hereof may extend any maturity date or the time for payment of any installment due hereunder, accept security, release any person liable, and release any security or guaranty. Maker waives, to the full extent permitted by law, the right to plead any and all statutes of limitations as a defense.

## 13. CHANGE, DISCHARGE, TERMINATION, OR WAIVER.

No provision of this Note may be changed, discharged, terminated, or waived except in writing signed by the party against whom enforcement of the change, discharge, termination, or waiver is sought. No failure on the part of the Holder hereof to exercise

Secured Promissory Note                    - Page 4 of 5 -

EXHIBIT 3, PAGE 82

and no delay by the Holder hereof in exercising any right or remedy under this Note or under the law shall operate as a waiver thereof.

14. **ATTORNEY'S FEES**.

If this Note is not paid when due or if any Event of Default occurs, Maker promises to pay all costs of enforcement and collection and preparation therefor, including but limited to reasonable attorney's fees, whether or not any action or proceeding is brought to enforce the provisions hereof.

15. **SEVERABILITY**.

If any provision of this Note is unenforceable, the enforceability of the other provisions shall not be affected and they shall remain in full force and effect.

16. **INTEGRATION**.

This Secured Promissory Note contains the complete understanding and agreement of the Holder hereof and Maker and supersedes all prior representations, warranties, agreements, arrangements, understandings, and negotiations.

17. **BINDING EFFECT**.

This Secured Promissory Note will be binding upon, and inure to the benefit of, the Holder hereof, Maker, and their respective successors and assigns.

18. **TIME OF THE ESSENCE**.

Time is of the essence with regard to each provision of this Promissory Note to which time is a factor.

MAKERS

12/1-24
Date

LEVIATHAN, LLC
By: _____
ADRIAN RUDOMIN. President & Manager

12/1-24
Date

CHANTILLY ROAD, LLC
By: _____
ADRIAN RUDOMIN. President & Manager

Secured Promissory Note                    - Page 5 of 5 -

EXHIBIT 3, PAGE 83

$12-1-24$

**Date**

ADRIAN RUDOMIN, an individual

Secured Promissory Note                    - Page 6 of 5 -

EXHIBIT 3, PAGE 84

## SECURITY AGREEMENT

This security agreement ("this Agreement") is made as of December 1, 2024 by and between ADRIAN RUDOMIN, an individual, CHANTILLY ROAD, LLC, A California Limited Liability Company, and LEVIATHAN, LLC, a California Limited Liability Company (Collectively, "Debtor" or "Debtors") on the one hand and Martin Simone (hereinafter "Secured Party").

## <u>RECITALS</u>

A.    Debtors CHANTILLY ROAD, LLC and LEVIATHAN, LLC are limited liability companies duly formed and in good standing under the laws of the State of California.

B.    Secured Party Martin Simone is an individual and resident of the State of California.

C.    On December 1, 2024, Debtor executed a Secured Promissory Note ("the Secured Promissory Note"). Pursuant to the Secured Promissory Note, Debtor has agreed to secure the obligations of Debtor under the Secured Promissory Note.

NOW, THEREFORE, it is hereby agreed that for and in partial consideration of Secured Party's execution of the Secured Promissory Note and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, Debtor does hereby agree to pledge all assets of CHANTILLY ROAD, LLC and LEVIATHAN, LLC as collateral for Debtor's obligation pursuant to the Secured Promissory Note and grant to the Secured Party, its successors and assigns, a security interest in and to the Collateral as provided herein pursuant to the following terms and conditions:

1.    In order to secure Debtor's performance to Secured Party as per the Secured Promissory Note, Debtor hereby grants to Secured Party a security interest in any and all the assets of Debtor, including its land for business and non-business, fixtures, equipment and furniture, computer programs and software, accounts receivable, horses, customer list and files, materials, supplies, leases, vehicles and trailers, good will and all other assets of Debtor. whether real, personal, mixed, tangible or intangible (hereinafter referred to as "Collateral"). The parties shall cooperate with each other to perfect the security interests granted herein. Such cooperation shall include but not be limited to execution of any and all documents required to be signed by either or all parties, as well as recording of a financing statement, i.e. UCC-1. Failure to cooperate shall constitute a material breach/default of not only the terms of this Agreement, but also all related agreements previously signed concurrently herewith, including but not limited to the Secured Promissory Note.

2.    The security interests hereby granted shall secure the payment and

1

performance of all obligations of Debtor to Secured Party however incurred, now or hereafter existing, specifically those obligations relating to and arising from the Secured Promissory Note. The term "Obligations" shall include, without limitation, the following:

(a)     Debtor's obligation to pay all amounts advanced, owed, expended or incurred by Secured Party resulting from Debtor's failure to perform any term or condition of the Secured Promissory Note or resulting from Debtor's breach of any warranty or representation made by Debtor to Secured Party under this Agreement or otherwise.

(b)     Debtor's obligation to pay all amounts advanced, expended or incurred by Secured Party under the term of this Security Agreement or for the maintenance or preservation of the Collateral, together with interest thereon.

(c)     Any and all obligations and/or payments due under the Secured Promissory Note, including any interest.

3.     Except as provided herein, Debtor warrants and covenants that, Debtor has title to the Collateral free from any liens, security interests, encumbrances or claims. Debtor agrees to defend, at its cost and expense, any action which may affect the Secured Party's interest in or to the title to the Collateral. Debtor agrees to execute, if necessary, a Notice of Lien for recording, UCC-1 Financing Statement and Continuation Statements, and/or all such other documents as the Secured Party may reasonably require in order to perfect, continue perfection, and otherwise protect the Secured Party's security interest in the Collateral.

4.     Except in the ordinary course of business, Debtor will not, without prior written consent of the Secured Party, sell, assign, transfer, pledge, hypothecate, encumber, redeem or dispose of the Collateral or any interest therein until this Security Agreement has been fully satisfied or the Collateral has been released, whichever first occurs.

5.     Debtor hereby grants to the Secured Party a security interest in and to all proceeds, increases, substitutions, replacements, additions and accessions to the Collateral.

6.     The security interest hereby granted secures all obligations of Debtor to the Secured Party, direct or indirect, absolute or contingent, due or to become due, whether existing or hereinafter arising related to this Agreement and the Secured Promissory Note.

7.     Debtor will, if in the Secured Party's reasonable judgment and after consulting with Debtor determines that the Collateral has materially decreased in value, provide enough additional collateral to satisfy the Secured Party or reduce the total indebtedness by an amount sufficient to equal the decrease in value of the Collateral.

2

8.  At the Secured Party's option, the Secured Party may discharge taxes, liens, interest, or perform or cause to be performed for and on behalf of Debtor any actions and conditions, obligations or covenants which Debtor has failed or refused to perform and may pay for the preservation of the Collateral and all sums so expended, including (but not limited to) attorneys' fees, court costs, agents' fees or commissions, and or any other costs or expenses. Any such advancements shall be added to the obligations of Debtor and shall bear interest from the date of payment at the legal rate, and shall be secured by this Security Agreement.

9.  Debtor will promptly notify the Secured Party of any change of Debtor's chief place of business or the place where records concerning the Collateral are kept.

10.  Debtor agrees that Debtor will use reasonable care in the custody and preservation of the Collateral. Debtor shall also keep the Collateral free from all liens, claims, encumbrances, taxes and assessments unless otherwise permitted herein.

11.  Debtor agrees that in performing any act under this Security Agreement that time shall be of the essence and that the Secured Party's acceptance of partial or delinquent payments or failure of the Secured Party to exercise any right or remedy shall not be a waiver of any obligation of Debtor or right of the Secured Party or constitute a waiver of any other similar default subsequently occurring.

12.  Debtor is duly authorized and empowered to enter into and carry out the provisions of this Agreement and any other documents relating to this Agreement and will not thereby be in conflict with or violate any of the terms or provisions of any statute, regulation, ordinance, corporate charter or by-law, agreement or other instrument which is binding upon Debtor.

13.  Except as stated herein, there are no actions, suits or claims pending or to Debtor's knowledge threatened against Debtor or any part or all of the Collateral which may adversely affect Secured Party's interest in the Collateral, Debtor or Debtor's ability to perform any of their obligations under the terms of this or any other agreement between Debtor and Secured Party.

14.  Debtor, at its own cost will appear in and defend any and all lawsuits and proceedings of any type which in Secured Party's reasonable opinion do or may affect the Collateral.

15.  Debtor will give Secured Party prompt notice of all claims, actions and proceedings instituted or threatened against Debtor, Debtor's business, Debtor's use and occupancy of the business Land, or affecting all or any part of the Collateral.

3

16.    Debtor shall at all times provide and maintain, at its cost, insurance policies insuring the Collateral against loss, damage or fire and other risks normally covered by extended insurance coverage, theft or burglary and such other risks customarily insured against by companies engaged in businesses similar to that of Debtor. Each policy shall be in an amount not less than the full insurable or replacement value of the Collateral, and shall be upon such terms which shall provide, in part, that no act or omission by Debtor shall affect Secured Party's right to recover under such policy.

17.    Debtor assumes all risk and liability arising from the use and operation of the Collateral, either by negligence or otherwise, and hereby indemnifies and holds Secured Party harmless from all claims, costs, damage, loss and expenses, including attorney's fees, arising out of or related to the Collateral, any loss or damage of any kind to person or property caused by the Collateral or its use and operation, or Debtor's performance under this Agreement.

18.    Debtor agrees to fully maintain and upkeep all of the Collateral as required in the ordinary course of business and preserve such Collateral using every commercially reasonable method.

19.    In the event that Debtor desires to sell, transfer or encumber all or a substantial any part of the Collateral, Secured Party shall consent to same upon payment by Debtor to Secured Party in an amount equal to the then remaining balance due from Debtor to Secured Party or such other sum as the Parties may agree, including but not limited to, the amounts due pursuant to the Secured Promissory Note. This paragraph does not apply to Collateral sold or transferred in the ordinary course of business, or where the secured Collateral is replaced by Collateral of equal value. "Substantial" as used herein means more than one half of the Collateral as determined by using reasonable value.

20. This section is intentionally omitted.

21. This section is intentionally omitted.

22.    Debtor shall be in default under this Security Agreement upon the occurrence of any of the following events of conditions:

(a)    Default in the payment of the amount due to the Secured Party from the Secured Promissory Note or other agreements referenced herein or other obligations, covenants or liabilities contained or referred to herein which is not cured within sixty (60) days;

4

(b)    Any warranty, representation or statement made or furnished to the Secured Party by or on behalf of Debtor proves to have been false in any material respect when made or furnished;

(c)    The sale, pledge, encumbrance, redemption, hypothecation, assignment, or disposal or the attempt to sell, pledge, encumber, redeem, assign or dispose of all or a substantial part of the Collateral, except in the ordinary course of business, and, as permitted herein, or the making of any levy, seizure or attachment thereof or thereon;

(d)    Substantial change in any fact warranted or represented in this Agreement and the Secured Promissory Note.

(e)    Dissolution, termination of existence, insolvency, business failure, appointment of a receiver, assignment for the benefit of creditors or the commencement of a proceeding under any bankruptcy or insolvency law by or against Debtor, or with respect to the Collateral;

(f)    Filing of any Financing Statement with regard to the Collateral, other than relating to the security interest granted hereby and except as permitted herein;

(g)    Any sale, transfer, assignment, mortgage, pledge, hypothecation or encumbrance (whether voluntary or involuntary) of the whole or any portion of Debtor's right, title or interest in and to the Collateral without the prior written consent of the secured party unless otherwise permitted herein;

(h)    All or a substantial part of the Collateral is adversely affected, lost, damaged, stolen, destroyed or missing.

23.    Upon the occurrence of any such event of default as set forth hereinabove, the Secured Party may declare all obligations secured hereby immediately due and payable and may proceed to enforce payment of same or any part thereof and exercise any and all of the rights and remedies pursuant to the Secured Promissory Note and any other additional remedies and procedures provided by the California Commercial Code as well as any and all other rights and remedies at law or equity possessed by the Secured Party.

24.    The rights and privileges of the Secured Party shall inure to its successors and assigns. All representations, warranties and agreements of Debtor shall bind Debtor's successors and assigns.

25.    This Security Agreement shall be construed in accordance with California Law.

26.    This Agreement, as well as the above-mentioned Secured Promissory Note

5

and related documents, including but not limited to, the Second Deed of Trust and UCC-1 that Secured Party is authorized to record, shall constitute the entire Agreement between the Parties pertaining to the subject matter contained in it. No supplement, modification or amendment of this Agreement shall be binding unless executed in writing by all of the parties.

27.    In the event any action is brought by any party hereto to enforce the provisions of this Agreement, the Parties agree that the prevailing party shall be entitled to his reasonable attorney's fees and costs incurred.

28.    All notices, requests, demands and other communications under this Agreement shall be in writing and shall be deemed to have been duly given on the date of service if served personally on the party to whom notice is to be given, or on the second day after mailing if mailed, by first class mail, registered or certified, postage prepaid, and properly addressed:

DEBTOR:                              SECURED PARTY:
Adrian Rudomin & the Debtor LLCs     Martin Simone
578 WASHINGTON BL 148               5627 Sepulveda Blvd Ste 206
MARINA DEL REY CA 90292             Van Nuys, CA 91411

29.    If any provision of this Agreement shall be held to be unlawful, void or unenforceable by any court of competent jurisdiction for any reason, such provision or provisions shall be deemed severable from and shall in no way affect the validity or enforceability of the remaining provisions or this Agreement.

30.    Each and everyone of the parties hereto acknowledge that: (i) he, she and it have been represented by independent counsel in connection with this Agreement; (ii) they have executed this Agreement with the advice of such counsel; and (iii) this Agreement is the result of negotiations between the parties hereto and the advice and assistance of their respective counsel. The Parties hereto understand that this Agreement may have tax effects and that they were advised to see a tax specialist re: tax effects herein.

31.    This Agreement is a product of arms length negotiation and shall not be interpreted more strictly against the drafting party, and the non drafting party expressly waives any right to have the contract interpreted more strictly against the drafting party.

32.    The individuals who are executing this and related Agreements for and on behalf of Debtor are the sole officers, directors and/or shareholders of Debtor, and therefore have the full authority to undertake the obligations set forth in this Agreement, in furtherance of Debtor's business.

6

33.    The undersigned(s) hereby represent(s) that they have authority to execute this Security Agreement as parties or on behalf of the parties hereto.

IN WITNESS WHEREOF, the Parties to this Agreement have duly executed same on the day and year first above written.

**DEBTOR:**

12/1/24
**Date**

**LEVIATHAN, LLC**
By: _____
**ADRIAN RUDOMIN. President & Manager**

12/1/24
**Date**

**CHANTILLY ROAD, LLC**
By: _____
**ADRIAN RUDOMIN, President & Manager**

12/1/24
**Date**

_____
**ADRIAN RUDOMIN, an individual**

**THE SECURED PARTY:**

12-1-24
**Date**

_____
**MARTIN SIMONE, an individual**

7

EXHIBIT 3, PAGE 91

**EXHIBIT 4**

**Fill in this information to identify the case:**

Debtor 1   Chantilly Road, LLC

Debtor 2
(Spouse, if filing)

United States Bankruptcy Court   **Central District of California**

Case number:  **24–13197**

**FILED**

**U.S. Bankruptcy Court**
**Central District of California**

2/28/2025

Kathleen J. Campbell, Clerk

## Official Form 410
## Proof of Claim

12/24

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) **that you received.**

| Part 1: | Identify the Claim |
|---|---|

**1. Who is the current creditor?**

SIMONE AND ROOS LLC

Name of the current creditor (the person or entity to be paid for this claim)

Other names the creditor used with the debtor

**2. Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom?

**3. Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

Where should notices to the creditor be sent?

SIMONE AND ROOS LLC

Name

5627 SEPULVEDA BL. SUITE 206
SHERMAN OAKS, CA 91411

Contact phone _____ 818788–1914 _____

Contact email
   martin@frankandsimonelaw.com

Uniform claim identifier (if you use one):

Where should payments to the creditor be sent? (if different)

Name

Contact phone _____

Contact email _____

**4. Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known) _____

Filed on _____
MM / DD / YYYY

**5. Do you know if anyone else has filed a proof of claim for this claim?**

☑ No
☐ Yes. Who made the earlier filing? _____

EXHIBIT 4, PAGE 92

| Part 2: | Give Information About the Claim as of the Date the Case Was Filed |
|---|---|

| 6. **Do you have any number you use to identify the debtor?** | ☑ No<br>☐ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: _____ |
|---|---|

| 7. **How much is the claim?** | $  136498.50 | **Does this amount include interest or other charges?**<br>☑ No<br>☐ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
|---|---|---|

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card. Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as healthcare information.

SERVICES PERFORMED

**9. Is all or part of the claim secured?**

☑ No<br>
☐ Yes. The claim is secured by a lien on property.

**Nature of property:**
☐ Real estate.    If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410–A) with this *Proof of Claim*.
☐ Motor vehicle
☐ Other. Describe: _____

**Basis for perfection:** _____

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**    $ _____

**Amount of the claim that is secured:**    $ _____

**Amount of the claim that is unsecured:**    $ _____    (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**    $ _____

**Annual Interest Rate** (when case was filed)    _____ %

☐ Fixed
☐ Variable

| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $ _____ |
|---|---|

| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: _____ |
|---|---|

EXHIBIT 4, PAGE 93

| 12. | Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)? | ☑ No | | |
| | | ☐ Yes. *Check all that apply*: | | Amount entitled to priority |

| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | $ _____ |
| | ☐ Up to $3,350* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | $ _____ |
| | ☐ Wages, salaries, or commissions (up to $15,150*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $ _____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | $ _____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | $ _____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(_) that applies | $ _____ |
| | * Amounts are subject to adjustment on 4/01/25 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3:  Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(3) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

Check the appropriate box:

☐  I am the creditor.

☑  I am the creditor's attorney or authorized agent.

☐  I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐  I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date    2/28/2025
                    _____
                    MM / DD / YYYY

/s/  MARTIN SIMONE
_____
Signature

Print the name of the person who is completing and signing this claim:

Name             MARTIN SIMONE
                 _____
                 First name    Middle name    Last name

Title            MEMBER MANAGER
                 _____

Company          SIMONE AND ROOS LLC
                 _____
                 Identify the corporate servicer as the company if the authorized agent is a servicer

Address          5627 SEPULVEDA BL. SUITE 206
                 _____
                 Number   Street
                 SHERMAN OAKS, CA 91411
                 _____
                 City   State   ZIP Code

Contact phone    818 788–1914        Email    martin@frankandsimonelaw.com

Official Form 410                        Proof of Claim                        page 3

EXHIBIT 4, PAGE 94

ATTORNEY/CLIENT FEE AGREEMENT
Page 1 of 5

LAW OFFICES OF

# SIMONE & ROOS

### A LIMITED LIABILITY COMPANY

5627 SEPULVEDA BOULEVARD, SUITE 206

SHERMAN OAKS, CALIFORNIA 91411

MARTIN SIMONE

LEONARD ROOS, OF COUNSEL
LISA SIMONE, OF COUNSEL

TELEPHONE
(818)788-1914
(213)384-4900

FACSIMILE
(818)208-9110

## ATTORNEY/CLIENT FEE AGREEMENT

**This is the written fee agreement ("Agreement") that California law requires attorneys to have with their clients.   SIMONE & ROOS, LLP ("Attorney") will provide legal services to CHANTILLY ROAD, LLC (individually and collectively "Client") on the terms set forth below.**

**1.      CONDITIONS.**      This Agreement will not take effect, and Attorney will have no obligation to provide legal services, until Client returns a signed copy of this Agreement and pays the initial deposit called for under Paragraph 5.

**2.      SCOPE OF SERVICES.**    Client, CHANTILLY ROAD, LLC agrees to hire Attorney to represent it in the acquisition and development of real property commonly known as 1116 Chantilly Road, Los Angeles, CA 90077 and as ("Chantilly Property") more specifically set out as Exhibit A attached hereto.

**3.      INSURANCE DISCLOSURE.**    Attorney carries errors and omissions (malpractice) coverage as defined in California Business and Professions Code Section 6148.

**4.      CLIENT'S DUTIES.**    Client agrees to be truthful with Attorney, to cooperate, to keep Attorney informed of any information or developments which may come to Client's attention, to abide by this agreement, to pay Attorney's bills on time and to keep Attorney advised of Client's address, telephone number and whereabouts. Client will assist Attorney in providing necessary information and documents and will appear, when necessary, at legal proceedings.

**5.      DEPOSIT.**    Client agrees to pay Attorney an initial deposit of $ 5,000.00.    The initial deposit, as well as any future deposit, will not be held in a trust account and Attorney may use them as Attorney deems necessary.

**6.      LEGAL FEES AND BILLING PRACTICES.  Flat Fee for Legal Services**: Client retains Attorney to represent it in all legal aspects of development of the Chantilly Property. For such representation, CLIENT agrees to pay Attorney a flat fee of Ninety-Five Thousand Dollars ($95,000.00). It does not include any costs or expenses as described below.  After the initial deposit is received, attorney agrees to defer the balance as provided herein until the Chantilly property has been sold, transferred, foreclosed or otherwise alienated.   However, Client agrees to make additional payments of ten percent (10%) of any cash received from refinancing of the Chantilly Property, unless

1

EXHIBIT 4, PAGE 95

ATTORNEY/CLIENT FEE AGREEMENT
Page 2 of 5

otherwise agreed in writing by CLIENT and ATTORNEY. Nothing in this Agreement will bar attorney from seeking the reasonable value of its services performed as the date of any termination of this Agreement prior to the completion or alienation of the Chantilly property.

## LEGAL FEES FOR LITIGATION

Client understands and agrees that this legal agreement does not include legal representation for litigation arising out of or related to the Chantilly Property. Attorney agrees to perform legal services for CLIENT on the terms and conditions and at the rates set forth in this Agreement for any litigation involving the Chantilly Property.

Client agrees that the reasonable value of Attorney's services is as set out below legal personnel. Current hourly rates for legal personnel are as follows:

| Partner/Senior Associate | $595.00/hour |
| Associate | $450.00/hour |
| Legal Assistant | $200.00/hour |
| Law Clerk | $150.00/hour |

The rates on this schedule are subject to change on 30 day written notice to Client.

The time charged would include the time Attorney spends on telephone calls and texts relating to Client's matter, including calls with Client, witnesses, opposing counsel or court personnel. The legal personnel assigned to Client's matter may confer among themselves about the matter, as required and appropriate. When they do confer, each person will charge for the time expended, as long as the work done is reasonably necessary and not duplicative. Likewise, if more than one of the legal personnel attends a meeting, court hearing or other proceeding, each will charge for the time spent. Attorney will charge for waiting time in court and elsewhere and for travel time, both local and out of town. There is a minimum charge of two and one half (2.5) hours for any personal court appearance and one (1.0) hour for telephonic court appearances, meetings and conferences. Time is otherwise charged in minimum units of one tenth (.1) of an hour.

## 7. COSTS AND OTHER CHARGES.

**(a)   *In General*.**   Attorney will incur various costs and expenses in performing legal services under this Agreement. Client agrees to pay for all costs, disbursements and expenses in addition to the hourly fees. The costs and expenses commonly include, service of process charges, filing fees, court and deposition reporters' fees, jury fees, notary fees, deposition costs, long distance telephone charges, messenger and other delivery fees, postage, photocopying and other reproduction costs, travel costs including parking, mileage, transportation, meals and hotel costs, investigation expenses, consultants'

2

EXHIBIT 4, PAGE 96

ATTORNEY/CLIENT FEE AGREEMENT
Page 3 of 5

fees, expert witness, professional, mediator, arbitrator and/or special master fees and other similar items. Except for the items listed at the beginning of the next page, all costs and expenses will be charged at Attorney's cost.

| | |
|---|---|
| In office photocopying | $ 0.25 /page |
| In office scanning | $0.15/page |
| Facsimile charges | $ Actual cost |
| Mileage | $ 0.56 /mile |
| Other | $ NONE |

Client understands that, as set forth in Paragraph 8, below, a deposit for costs may be required before Attorney makes the expenditure. To aid in the preparation or presentation of Client's case, it may become necessary, in the opinion of Attorney, to associate other counsel, to hire expert witnesses, consultants or investigators. Client grants to Attorney the right to select associate counsel, any expert witnesses, consultants or investigators to be hired and Client will be informed of persons chosen and their charges.

Client authorizes Attorney to incur all reasonable costs and to hire any associate counsel, investigators, consultants or expert witnesses reasonably necessary in Attorney's judgment unless Attorney initials one or both of the clauses below.

| | | |
|---|---|---|
| Attorney shall obtain Client's consent before incurring any costs in excess of | $ | ✍ |
| Attorney shall obtain Client's consent before retaining outside investigators, consultants or expert witnesses | $ | ✍ |

**(b)  *Out of Town Travel.*** Client agrees to pay for transportation, meals, lodging and all other costs of any necessary out-of-town travel by Attorney's personnel. Client will also be charged the hourly rates for the time legal personnel spend traveling.

**(c)  *Experts, Consultants and Investigators.*** To aid in the preparation or presentation of Client's case, it may become necessary to hire expert witnesses, consultants or investigators. Client agrees to pay such fees and charges. Attorney will select any expert witnesses, consultants or investigators to be hired, and Client will be informed of persons chosen and their charges.

Additionally, Client understands that if the matter proceeds to court action or arbitration, Client may be required to pay fees and/or costs to other parties in the action. Any such award will be entirely the responsibility of Client.

3

EXHIBIT 4, PAGE 97

ATTORNEY/CLIENT FEE AGREEMENT
Page 4 of 5

**8.    LIEN.**   Client hereby grants Attorney a lien on any and all claims or causes of action that are the subject of the representation under this Agreement. The lien will be for any sums owing to Attorney at the conclusion of services performed. The lien will attach to any recovery Client may obtain, whether by arbitration award, judgment, settlement or otherwise.

**9.    DISCHARGE AND WITHDRAWAL.**    Client may discharge Attorney at any time. Attorney may withdraw with Client's consent or for good cause. Good cause includes Client's breach of this Agreement; refusal to cooperate or to follow Attorney's advice on a material matter or any fact or circumstance that would render Attorney's continuing representation unlawful or unethical. When Attorney's services conclude, all unpaid charges will immediately become due and payable. After services conclude, Attorney will, upon Client's request, deliver Client's file, and property in Attorney's possession, whether or not Client has paid for all services.

**10.    DISCLAIMER OF GUARANTEE AND ESTIMATES.**    Nothing in this agreement and nothing in Attorney's statements to Client will be construed as a promise or guarantee about the outcome of the matter. Attorney makes no such promises or guarantees. Attorney's comments about the outcome of the matter are expressions of opinion only. Any estimate of fees given by Attorney shall not be a guarantee. Actual fees may vary from estimates given.

**11.    ARBITRATION OF DISPUTES** Any dispute arising under this Agreement shall be subject to binding arbitration in Los Angeles County, California, in accordance with California law and the Mandatory Fee Arbitration Act (Business and Professions Code §6200 et seq.).

**12.    GOVERNING LAW** This Agreement shall be governed by and construed in accordance with the laws of the State of California.

**13.    ENTIRE AGREEMENT.**    This Agreement contains the entire Agreement of the parties. No other agreement, statement, or promise made on or before the effective date of this Agreement will be binding on the parties.

**14.    SEVERABILITY IN EVENT OF PARTIAL INVALIDITY.**    If any provision of this Agreement is held in whole or in part to be unenforceable for any reason, the remainder of that provision and of the entire Agreement will be severable and remain in effect.

**15.    MODIFICATION BY SUBSEQUENT AGREEMENT.**    This Agreement may be modified by subsequent Agreement of the parties only by an instrument in writing signed by both of them or an oral agreement only to the extent that the parties carry it out.

**16.    EFFECTIVE DATE.**    This Agreement will govern all legal services performed by Attorney on behalf of Client commencing with the date Attorney first performed services. The date at the beginning of this Agreement is for reference only. Even if this agreement does not take effect, Client will be obligated to pay Attorney the reasonable value of any services Attorney may have performed for Client.

EXHIBIT 4, PAGE 98

ATTORNEY/CLIENT FEE AGREEMENT
Page 5 of 5

*THE PARTIES HAVE READ AND UNDERSTOOD THE FOREGOING TERMS AND AGREE TO THEM AS OF THE DATE ATTORNEY FIRST PROVIDED SERVICES. IF MORE THAN ONE CLIENT SIGNS BELOW, EACH AGREES TO BE LIABLE, JOINTLY AND SEVERALLY, FOR ALL OBLIGATIONS UNDER THIS AGREEMENT. CLIENT SHALL RECEIVE A FULLY EXECUTED DUPLICATE OF THIS AGREEMENT.*

Dated: 03/03/2018                     **SIMONE & ROOS, LLP**


By: _____
                     **MARTIN SIMONE**


                     **CHANTILLY ROAD, LLC**


Dated: _____          by:_____
                     **ADRIAN RUDOMIN**


                     **LEVIATHAN, LLC**


Dated: _____          by:_____
                     **ADRIAN RUDOMIN**


I, **CHANTILLY ROAD, LLC**, confirm that I have received a copy of this Attorney/Client Fee Agreement as executed.

                     **CHANTILLY ROAD, LLC**


Dated: _____          _____
                     **ADRIAN RUDOMIN**


I, **LEVIATHAN, LLC**, confirm that I have received a copy of this Attorney/Client Fee Agreement as executed.

                     **LEVIATHAN, LLC**


Dated: _____          _____
                     **ADRIAN RUDOMIN**

EXHIBIT 4, PAGE 99

EXHIBIT A

Review of Listing Agreements

Review of Purchase Agreement for Chantilly Property

Review of Chantilly purchase loan documents with lender

Review of Chantilly financing agreement and loan documents

Review of Chantilly refinance loan documents

Review of Equity participation agreements with Allstate Lending

Review of various vendors contracts

Review of planning, permit and city inspection items

Review of any issues involving neighbors and neighborhood

Review of Sub-Contractors Agreements

Review investors and participation Agreements

*Review includes drafting, re-drafting and revisions of any documents or agreements

Law Offices Of
## SIMONE & ROOS
A LIMITED LIABILITY PARTNERSHIP
5627 Sepulveda Boulevard, Suite 206
Sherman Oaks, California 91411
1 (818) 788-1914

**INVOICE**
February 27, 2025

MR. ADRIAN RUDOMIN
578 Washington Boulevard #148
Marina Del Rey, CA 90049

| A/C# 16-07003SRI | |
|---|---|
| Invoice No. | 20231104202502 |
| Reference: | 4818.00MMS |
| LAI v. RUDOMIN & CHANTILLY LLC | |

| DATE | Init-ials | DESCRIPTION | TIME | CHARGE | RECEIVED | BALANCE |
|---|---|---|---|---|---|---|
| *November, 2023 Transactions:* | | | | | | |
| 11/04/23 | MMS | Review lender template and redraft Chantilly loan ipinion letter | 2.10 | 945.00 | | 945.00 |
| 11/05/23 | | Review and drafte ;oan conflict waiver and release of all claims agreement | 0.70 | 315.00 | | 1,260.00 |
| 11/07/23 | | Document Preparation - revise to release 1542 waiver provision | | | | 1,260.00 |
| 11/12/23 | | Review fence complaint and demurrer. Create docusign electronically. | 0.40 | 180.00 | | 1,440.00 |
| 11/14/23 | | Document Preparation - 2nd revision to loan option letter | 0.50 | 225.00 | | 1,665.00 |
| 11/16/23 | | Review Chantilly loan docs re risks | 1.80 | 810.00 | | 2,475.00 |
| 11/22/23 | | Meet and confer re demurrer and motion to strike in fence lawsuit | 0.50 | 225.00 | | 2,700.00 |
| 11/22/23 | | Document Preparation - draft demurrer and motion. Review meet nad confer letter | 2.80 | 1,260.00 | | 3,960.00 |
| 11/24/23 | | Legal Research - case law for sepculative damages and negligence duty / causation | 0.60 | 270.00 | | 4,230.00 |
| 11/25/23 | | Document Preparation - update meet and confer, demurrer and motion to strike | 0.50 | 225.00 | | 4,455.00 |
| 11/27/23 | | Document Preparation - revise meet and confer, demurrer and motion to strike | 0.30 | 135.00 | | 4,590.00 |
| 11/29/23 | | Review and update case file | 0.50 | 225.00 | | 4,815.00 |
| | | **November Totals** | **10.70** | **$4,815.00** | | |
| *December, 2023 Transactions:* | | | | | | |
| 12/19/23 | | Draft Pleading - finalize, file and serve Demurrer and M2S, reserve date | 0.90 | 405.00 | | 5,220.00 |
| 12/20/23 | | Draft Pleading - prepare CMC statement, serve and file CMC statement | 0.70 | 315.00 | | 5,535.00 |
| 12/31/23 | | Filing Fee and costs for Rudomin and Chantilly LLC for appearance $518 each) and demurrer and M2S ($120) | | 1,156.00 | | 6,691.00 |

Invoice of : LAI v. RUDOMIN & CHANTILLY LLC
For Period Ending: 02/27/25      Page  1

EXHIBIT 4, PAGE 101

| DATE | Init-ials | DESCRIPTION | TIME | CHARGE | RECEIVED | BALANCE |
|---|---|---|---|---|---|---|
| *January, 2024 Transactions:* | | | | | | |
| | | **December Totals** | **1.60** | **$1,876.00** | | |
| 01/01/24 | | Review settlement and email to Madnick. Review Madnick redlines on staging agreement. Email client feedback. | 1.50 | 675.00 | | 7,366.00 |
| 01/05/24 | | Schedule LA Court Connect and appear re Lai CMC. Update, download. email Minute Order. | 1.00 | 450.00 | | 7,816.00 |
| 01/17/24 | | Review changes to Vesta Staging Agreement | 0.50 | 225.00 | | 8,041.00 |
| 01/21/24 | | Document Preparation - draft response templates re Lai discovery propounded | 3.90 | 1,755.00 | | 9,796.00 |
| 01/24/24 | | Document Preparation - follow up re Vesta settlement and impending issues | 0.20 | 90.00 | | 9,886.00 |
| 01/25/24 | | Conference call with client re settlement. | 0.80 | 360.00 | | 10,246.00 |
| 01/25/24 | | Conference call with Diego | 0.70 | 315.00 | | 10,561.00 |
| 01/30/24 | | Call with Mark Madnick | 0.20 | 90.00 | | 10,651.00 |
| | | **January Totals** | **8.80** | **$3,960.00** | | |
| *February, 2024 Transactions:* | | | | | | |
| 02/01/24 | | Request extension on Lai v. Rudomin discovery responses from Adrian and Chantilly | 0.10 | 45.00 | | 10,696.00 |
| 02/07/24 | | Conference call with Adrian and Diego | 0.50 | 197.50 | | 10,893.50 |
| 02/16/24 | | Document Preparation - revise and send three amended depo notices to Madnick. | 0.20 | 79.00 | | 10,972.50 |
| 02/19/24 | | Call with John Deer re extension | 0.20 | 79.00 | | 11,051.50 |
| 02/21/24 | | Call with client | 0.30 | 118.50 | | 11,170.00 |
| 02/22/24 | | Legal Research - Vesta Contract Consideration Analysis as to luxury lease and other fees | 0.40 | 158.00 | | 11,328.00 |
| 02/23/24 | | Deposition - Vesta | 4.00 | 1,580.00 | | 12,908.00 |
| | | **February Totals** | **5.70** | **$2,257.00** | | |
| *March, 2024 Transactions:* | | | | | | |
| 03/04/24 | | Call with client | 0.30 | 118.50 | | 13,026.50 |
| 03/09/24 | | Review docs from client re Vesta and draft docs for MSJ opposition | 6.70 | 2,646.50 | | 15,673.00 |
| 03/10/24 | | Review and update MSJ opposition per client feedback and doc review | 5.80 | 2,291.00 | | 17,964.00 |
| 03/12/24 | | Review and update MSJ opposition and draft additional docs per client | 3.80 | 1,501.00 | | 19,465.00 |
| 03/13/24 | | Review and update MSJ re Vesta. Draft and add docs, file, serve. | 3.90 | 1,540.50 | | 21,005.50 |
| 03/23/24 | | Review review Vesta reply and objections to MSJ opposition | 0.90 | 355.50 | | 21,361.00 |

Invoice of : LAI v. RUDOMIN & CHANTILLY LLC
For Period Ending: 02/27/25      Page 2

**EXHIBIT 4, PAGE 102**

| DATE | Init-ials | DESCRIPTION | TIME | CHARGE | RECEIVED | BALANCE |
|---|---|---|---|---|---|---|
| *March, 2024 Transactions:* | | | | | | |
| 03/26/24 | | Review summary judgement | | | | 21,361.00 |
| | | **March Totals** | **21.40** | **$8,453.00** | | |
| *April, 2024 Transactions:* | | | | | | |
| 04/12/24 | | Emails to and from clients to coordinate discovery responses | 0.50 | 225.00 | | 21,586.00 |
| 04/16/24 | | Discovery - Responses - review responses from clients | 1.00 | 450.00 | | 22,036.00 |
| 04/16/24 | | Discovery - Responses - review clients' discovery responses; revise same and serve | 1.30 | 585.00 | | 22,621.00 |
| 04/17/24 | | Received from Adrian Rudomin via wire transfer | | | 1,500.00 | 21,121.00 |
| 04/18/24 | | Review Defendants' discovery responses and respond to emails | 0.80 | 360.00 | | 21,481.00 |
| 04/29/24 | | Review Lai's meet and confer letter re discovery responses, email to client re same | 0.80 | 360.00 | | 21,841.00 |
| | | **April Totals** | **4.40** | **$1,980.00** | **$1,500.00** | |
| *May, 2024 Transactions:* | | | | | | |
| 05/06/24 | | Call from O/C re responses to discovery from clients | 0.20 | 90.00 | | 21,931.00 |
| 05/07/24 | | Discovery - Responses - conference w/clients | 0.40 | 180.00 | | 22,111.00 |
| 05/13/24 | | Discovery - Responses - review supplemental discovery responses | 0.70 | 315.00 | | 22,426.00 |
| 05/26/24 | | Draft Pleading - Response to Opposition to Demurrer, review opposition | 0.50 | 225.00 | | 22,651.00 |
| | | **May Totals** | **1.80** | **$810.00** | | |
| *June, 2024 Transactions:* | | | | | | |
| 06/05/24 | | Discovery - Responses - review further responses to discovery for Rudomin and Chantilly LLC | 0.80 | 360.00 | | 23,011.00 |
| 06/07/24 | | Discovery - Responses to Plaintiff's discovery 6 supplements | 3.70 | 1,665.00 | | 24,676.00 |
| | | **June Totals** | **4.50** | **$2,025.00** | | |
| *July, 2024 Transactions:* | | | | | | |
| 07/25/24 | | Court Appearance re CMC and demurrer | 1.00 | 450.00 | | 25,126.00 |
| 07/26/24 | | Meeting w/OC Re: CMC, demurrer and failure to appear | 0.80 | 360.00 | | 25,486.00 |
| | | **July Totals** | **1.80** | **$810.00** | | |
| *October, 2024 Transactions:* | | | | | | |
| 10/24/24 | | Court Appearance re demurrer and CMC | 1.00 | 450.00 | | 25,936.00 |
| 10/28/24 | | Court Appearance on CMC and Demurrer | 1.00 | 450.00 | | 26,386.00 |
| | | **October Totals** | **2.00** | **$900.00** | | |

Invoice of : LAI v. RUDOMIN & CHANTILLY LLC
For Period Ending: 02/27/25      Page  3

**EXHIBIT 4, PAGE 103**

Case 8:24-bk-13197-TA    Claim 17-1    Filed 02/28/25    Desc Attachment 1    Page 10 of
12

| DATE | Init-ials | DESCRIPTION | TIME | CHARGE | RECEIVED | BALANCE |
|---|---|---|---|---|---|---|
| *November, 2024 Transactions:* | | | | | | |
| 11/06/24 | | Draft Pleading - prepare Answer and file, revisions | 2.00 | 900.00 | | 27,286.00 |
| | | **November Totals** | 2.00 | **$900.00** | | |
| *December, 2024 Transactions:* | | | | | | |
| 12/06/24 | | Calls to and from O/C re deposition schedules; emails re same | 0.50 | 225.00 | | 27,511.00 |
| 12/20/24 | | Email from O/C re insurance policy; call re same; call to client re same | 0.30 | 135.00 | | 27,646.00 |
| 12/20/24 | | Email to O/C re bankruptcy and prepare Notice of same for the court | 0.50 | 225.00 | | 27,871.00 |
| | | **December Totals** | 1.30 | **$585.00** | | |

| | | | |
|---|---|---|---|
| Receipts, Discounts Settlements | $1,500.00 | BILLING TYPE: HOURLY | |
| HOURS BILLED | 66.00 | LIENS | $0.00 |
| FEES CHARGED | $28,215.00 | COSTS | $1,156.00 |
| Average Hourly Rate Inclusive of Discounts | 427.50 PER/HR | **PLEASE PAY** | **$27,871.00** |

LAW OFFICES OF

# SIMONE & ROOS, LLP
A LIMITED LIABILITY PARTNERSHIP

MARTIN M. SIMONE
LEONARD M. ROOS, OF
COUNSEL
LISA SIMONE OF COUNSEL

5627 Sepulveda Blvd • Suite 206
Sherman Oaks • California • 91411

TELEPHONE

818.788-1914
213.384.4900

FAX
818.208-9110

November 29, 2024

### INVOICE

Chantilly Road, LLC
Leviathan, LLC
c/o Adrian Rudomin
578 Washington Blvd.
Marina del Rey, CA 90292

$595 per hour

### Halloween Event

| Date | Description | Hours | Amount |
|---|---|---|---|
| 11/11/2024 | Discussions and Review of Cancellation of Broker's open house documents with Adrian Tuesday the 12th of November 2024 | 2 hr | $1,190.00 |
| 11/10/2024 | Pre-inspection photos review | 1.5 hr | $892.50 |
| 11/04/2024 | Additional insureds help discussion 1 e-mail | 0.8 hr | N/C |
| 11/04/2024 | Reviewed Damage claim; Policy IBL-P35EVWLH4 & Policy HDL-VY2DJA; 2 emails | 1.0 hr | $595.00 |
| 11/01/2024 | Reviewed Preliminary list issues for the Kismi Halloween Event at 1116 Chantilly Road and 2 emails | 2.0 hr | $1190.00 |
| 10/17-2024 to 10/27/24 | 50 E-mails re: Chantilly Halloween event; Review of contract and discussions with changes to contract for event | 5 hrs | $2975.00 |
| 10/27/2024 | Reviewed and discussed rental clients company documents; And 2 e-mails | 3.0 hrs | $1785.00 |

**Total due upon receipt**        **$8,627.50**

LAW OFFICES OF

# SIMONE & ROOS, LLP

A LIMITED LIABILITY PARTNERSHIP

Martin M. Simone
Leonard M. Roos, of
Counsel
Lisa Simone of Counsel

5627 Sepulveda Blvd • Suite 206
Sherman Oaks • California • 91411

Telephone

818.788-1914
213.384.4900

Fax
818.208-9110

January 10, 2025

INVOICE

Chantilly Road, LLC
Leviathan, LLC
c/o Adrian Rudomin
578 Washington Blvd.
Marina del Rey, CA 90292

### Forbearance and Foreclosure
### of Chantilly Property

Flat fee invoice for:  Legal Services from 08/21/2024 to 12/21/2024 for loan forbearance and foreclosure
on Chantilly Property.

**Total due**        **$10,000.00**

ATTORNEY/CLIENT FEE AGREEMENT
Page 5 of 5

THE PARTIES HAVE READ AND UNDERSTOOD THE FOREGOING TERMS AND AGREE TO THEM AS OF THE DATE ATTORNEY FIRST PROVIDED SERVICES. IF MORE THAN ONE CLIENT SIGNS BELOW, EACH AGREES TO BE LIABLE, JOINTLY AND SEVERALLY, FOR ALL OBLIGATIONS UNDER THIS AGREEMENT. CLIENT SHALL RECEIVE A FULLY EXECUTED DUPLICATE OF THIS AGREEMENT.

Dated: 03/03/2018                    SIMONE & ROOS, LLP

                                     By: _____
                                         MARTIN SIMONE


                                     CHANTILLY ROAD, LLC

Dated: 3/3/2018                      by: _____
                                         ADRIAN RUDOMIN


                                     LEVIATHAN, LLC

Dated: 3/3/2018                      by: _____
                                         ADRIAN RUDOMIN


I, **CHANTILLY ROAD, LLC**, confirm that I have received a copy of this Attorney/Client Fee Agreement as executed.

                                     CHANTILLY ROAD, LLC

Dated: 3/3/2018                      _____
                                         ADRIAN RUDOMIN


I, **LEVIATHAN, LLC**, confirm that I have received a copy of this Attorney/Client Fee Agreement as executed.

                                     LEVIATHAN, LLC

Dated: 3/3/2018                      _____
                                         ADRIAN RUDOMIN


5

**EXHIBIT 5**

**Fill in this information to identify the case:**

United States Bankruptcy Court for the:
**CENTRAL DIST. OF CALIFORNIA**

Case number (if known): _____    Chapter __11__

☐ Check if this is an
amended filing

## Official Form 201

## Voluntary Petition for Non-Individuals Filing for Bankruptcy                          06/24

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, Instructions for Bankruptcy Forms for Non-Individuals, is available.

| | | |
|---|---|---|
| 1. | Debtor's name | Chantilly Road, LLC |
| 2. | All other names debtor used in the last 8 years<br><br>Include any assumed names, trade names and *doing business as* names | |

3. Debtor's federal Employer Identification Number (EIN)    8 2 – 4 7 4 5 1 1 4

4. Debtor's address

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| c/o Penny M. Fox, CPA | |
| Number    Street | Number    Street |
| 15615 Alton Parkway, Suite 450 | P.O. Box |
| | |
| Irvine              CA    92618 | |
| City              State    ZIP Code | City              State    ZIP Code |
| Orange | **Location of principal assets, if different from principal place of business** |
| County | |
| | Number    Street |
| | |
| | City              State    ZIP Code |

5. Debtor's website (URL)    _____

6. Type of debtor
☑ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))
☐ Partnership (excluding LLP)
☐ Other. Specify: _____

EXHIBIT 5, PAGE 108

Debtor  __Chantilly Road, LLC__ _____     Case number (if known) _____

**7. Describe debtor's business**

A. Check one:

- ☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))
- ☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))
- ☐ Railroad (as defined in 11 U.S.C. § 101(44))
- ☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))
- ☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))
- ☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))
- ☑ None of the above

B. Check all that apply:

- ☐ Tax-exempt entity (as described in 26 U.S.C. § 501)
- ☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)
- ☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes

___ ___ ___ ___

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

Check one:

- ☐ Chapter 7
- ☐ Chapter 9
- ☑ Chapter 11.  Check all that apply:
    - ☐ Debtor's aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725 (amount subject to adjustment on 4/01/25 and every 3 years after that).
    - ☑ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D). If the debtor is a small business debtor, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if all of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).
    - ☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and it chooses to proceed under Subchapter V of Chapter 11.
    - ☐ A plan is being filed with this petition.
    - ☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).
    - ☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy Under Chapter 11 (Official Form 201A) with this form.
    - ☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.
- ☐ Chapter 12

EXHIBIT 5, PAGE 109

Debtor **Chantilly Road, LLC**                                         Case number (if known) _____

| | | | |
|---|---|---|---|
| 9. | Were prior bankruptcy cases filed by or against the debtor within the last 8 years? | ☑ No | |
| | | ☐ Yes. District _____ When _____ Case number _____ <br> MM / DD / YYYY | |
| | If more than 2 cases, attach a separate list. | District _____ When _____ Case number _____ <br> MM / DD / YYYY | |
| | | District _____ When _____ Case number _____ <br> MM / DD / YYYY | |

| | | | |
|---|---|---|---|
| 10. | Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor? | ☑ No | |
| | | ☐ Yes. Debtor _____ Relationship _____ | |
| | List all cases. If more than 1, attach a separate list. | District _____ When _____ <br> MM / DD / YYYY | |
| | | Case number, if known _____ | |
| | | Debtor _____ Relationship _____ | |
| | | District _____ When _____ <br> MM / DD / YYYY | |
| | | Case number, if known _____ | |

11. **Why is the case filed in this district?**

Check all that apply:

☑ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

EXHIBIT 5, PAGE 110

Debtor  **Chantilly Road, LLC** _____     Case number (if known) _____

| | | |
|---|---|---|
| 12. | Does the debtor own or have possession of any real property or personal property that needs immediate attention? | ☑ No |

☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?**     *(Check all that apply.)*

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.
What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?**     _____
                               Number     Street

                               _____

                               _____
                               City                      State     ZIP Code

**Is the property insured?**

☐ No
☐ Yes.   Insurance agency     _____

         Contact name         _____

         Phone                _____

---

### Statistical and adminstrative information

| | | |
|---|---|---|
| 13. | Debtor's estimation of available funds | Check one: |

☑ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☑ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

**15. Estimated assets**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☑ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☑ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

EXHIBIT 5, PAGE 111

Case 8:24-bk-13197-TA    Doc 1    Filed 12/15/24    Entered 12/15/24 17:49:10    Desc
Main Document      Page 5 of 47

Debtor  **Chantilly Road, LLC**                                                    Case number (if known) _____

| | **Request for Relief, Declaration, and Signatures** |

**WARNING --** Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

- ■ The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

- ■ I have been authorized to file this petition on behalf of the debtor.

- ■ I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **12/15/2024**
MM / DD / YYYY

X _____
Signature of authorized representative of debtor

**Adrian Rudomin**
Printed name

**Managing Member**
Title

**18. Signature of attorney**

X _____    Date  **12/15/2024**
Signature of attorney for debtor                                MM / DD / YYYY

**Michael R. Totaro**
Printed name

**Totaro & Shanahan, LLP**
Firm name

**P.O. Box 789**
Number        Street

_____

**Pacific Palisades**                          **CA**      **90272**
City                                            State      ZIP Code

**(310) 804-2157**                              **Ocbkatty@aol.com**
Contact phone                                   Email address

**102229**                                      **CA**
Bar number                                      State

EXHIBIT 5, PAGE 112

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**LOS ANGELES DIVISION**

IN RE:                                                    CHAPTER   11

**Chantilly Road, LLC**


DEBTOR(S)                                                 CASE NO


## LIST OF EQUITY SECURITY HOLDERS

| Registered Name of Holder of Security<br>Last Known Address or Place of Business | Class of Security | Number Registered | Kind of Interest Registered |
|---|---|---|---|
| | | | |

### DECLARATION UNDER PENALTY OF PERJURY
### ON BEHALF OF A CORPORATION OR PARTNERSHIP

I, the _____**Managing Member**_____ of the _____**Corporation**_____
named as the debtor in this case, declare under penalty of perjury that I have read the foregoing list and that it is true and correct to the best of my information and belief.


Date:  **12/15/2024**                    Signature: _____

                                        *Adrian Rudomin*
                                        Managing Member

B 201 - Notice of Available Chapters (Rev. 06/14)                                     USBC, Central District of California

Name:       **Michael R. Totaro 102229**
            Totaro & Shanahan, LLP
            P.O. Box 789
            Pacific Palisades, CA 90272

Address:    310 804 2157

            Ocbkatty@aol.com

Telephone: _____        Fax:    _____

☑  Attorney for Debtor
☐  Debtor in Pro Per

---

## UNITED STATES BANKRUPTCY COURT

| List all names, including trade names, used by Debtor(s) within last 8 years: | Case No.: |
|---|---|
| Chantilly Road, LLC | **NOTICE OF AVAILABLE CHAPTERS**<br><br>(Notice to Individual Consumer Debtor Under § 342(b) of the Bankruptcy Code |

In accordance with § 342(b) of the Bankruptcy Code, this notice to individuals with primarily consumer debts: (1) Describes briefly the services available from credit counseling services; (2) Describes briefly the purposes, benefits and costs of the four types of bankruptcy proceedings you may commence; and (3) Informs you about bankruptcy crimes and notifies you that the Attorney General may examine all information you supply in connection with a bankruptcy case.

You are cautioned that bankruptcy law is complicated and not easily described. Thus, you may wish to seek the advice of an attorney to learn of your rights and responsibilities should you decide to file a petition. Court employees cannot give you legal advice.

Notices from the bankruptcy court are sent to the mailing address you list on your bankruptcy petition. In order to ensure that you receive information about events concerning your case, Bankruptcy Rule 4002 requires that you notify the court of any changes in your address. If you are filing a **joint case** (a single bankruptcy case for two individuals married to each other), and each spouse lists the same mailing address on the bankruptcy petition, you and your spouse will generally receive a single copy of each notice mailed from the bankruptcy court in a jointly-addressed envelope, unless you file a statement with the court requesting that each spouse receive a separate copy of all notices.

1.  **Services Available from Credit Counseling Agencies**

    **With limited exceptions, § 109(h) of the Bankruptcy Code requires that all individual debtors who file forbankruptcy relief on or after October 17, 2005, receive a briefing that outlines the available opportunities for credit counseling and provides assistance in performing a budget analysis**. The briefing must be given within 180 days **before** the bankruptcy filing. The briefing may be provided individually or in a group (including briefings conducted by telephone or on the Internet) and must be provided by a nonprofit budget and credit counseling agency approved by the United States trustee or bankruptcy administrator. The clerk of the bankruptcy court has a list that you may consult of the approved budget and credit counseling agencies. Each debtor in a joint case must complete the briefing.

    **In addition, after filing a bankruptcy case, an individual debtor generally must complete a financial management instructional course before he or she can receive a discharge.** The clerk also has a list of approved financial management instructional courses. Each debtor in a joint case must complete the course.

B 201 - Notice of Available Chapters (Rev. 06/14)                                    USBC, Central District of California

2.    **The Four Chapters of the Bankruptcy Code Available to Individual Consumer Debtors**

**Chapter 7: Liquidation ($245 filing fee, $75 administrative fee, $15 trustee surcharge: Total fee $335)**

1.  Chapter 7 is designed for debtors in financial difficulty who do not have the ability to pay their existing debts. Debtors whose debts are primarily consumer debts are subject to a "means test" designed to determine whether the case should be permitted to proceed under chapter 7. If your income is greater than the median income for your state of residence and family size, in some cases, creditors have the right to file a motion requesting that the court dismiss

2.  Under chapter 7, you may claim certain of your property as exempt under governing law. A trustee may have the right to take possession of and sell the remaining property that is not exempt and use the sale proceeds to pay your creditors.

3.  The purpose of filing a chapter 7 case is to obtain a discharge of your existing debts. If, however, you are found to have committed certain kinds of improper conduct described in the Bankruptcy Code, the court may deny your discharge and, if it does, the purpose for which you filed the bankruptcy petition will be defeated.

4.  Even if you receive a general discharge, some particular debts are not discharged under the law. Therefore, you may still be responsible for most taxes and student loans; debts incurred to pay nondischargeable taxes; domestic support and property settlement obligations; most fines, penalties, forfeitures, and criminal restitution obligations; certain debts which are not properly listed in your bankruptcy papers; and debts for death or personal injury caused by operating a motor vehicle, vessel, or aircraft while intoxicated from alcohol or drugs. Also, if a creditor can prove that a debt arose from fraud, breach of fiduciary duty, or theft, or from a willful and malicious injury, the bankruptcy court may determine that the debt is not discharged.

**Chapter 13: Repayment of All or Part of the Debts of an Individual with Regular Income ($235 filing fee, $75 administrative fee: Total fee $310)**

1.  Chapter 13 is designed for individuals with regular income who would like to pay all or part of their debts ininstallments over a period of time. You are only eligible for chapter 13 if your debts do not exceed certain dollaramounts set forth in the Bankruptcy Code.

2.  Under chapter 13, you must file with the court a plan to repay your creditors all or part of the money that you owe them, using your future earnings. The period allowed by the court to repay your debts may be three years or five years, depending upon your income and other factors. The court must approve your plan before it can take effect.

3.  After completing the payments under your plan, your debts are generally discharged except for domestic support obligations; most student loans; certain taxes; most criminal fines and restitution obligations; certain debts which are not properly listed in your bankruptcy papers; certain debts for acts that caused death or personal injury; and certain long term secured obligations.

**Chapter 11: Reorganization ($1167 filing fee, $550 administrative fee: Total fee $1717)**
Chapter 11 is designed for the reorganization of a business but is also available to consumer debtors. Its provisions are quite complicated, and any decision by an individual to file a chapter 11 petition should be reviewed with an attorney.

**Chapter 12: Family Farmer or Fisherman ($200 filing fee, $75 administrative fee: Total fee $275)**
Chapter 12 is designed to permit family farmers and fishermen to repay their debts over a period of time from future earnings and is similar to chapter 13. The eligibility requirements are restrictive, limiting its use to those whose income arises primarily from a family-owned farm or commercial fishing operation.

3.  **Bankruptcy Crimes and Availability of Bankruptcy Papers to Law Enforcement Officials**

A person who knowingly and fraudulently conceals assets or makes a false oath or statement under penalty of perjury, either orally or in writing, in connection with a bankruptcy case is subject to a fine, imprisonment, or both. All information supplied by a debtor in connection with a bankruptcy case is subject to examination by the Attorney General acting through the Office of the United States Trustee, the Office of the United States Attorney, and other components and employees of the Department of Justice.

**WARNING:** Section 521(a)(1) of the Bankruptcy Code requires that you promptly file detailed information regarding your creditors, assets, liabilities, income, expenses and general financial condition. Your bankruptcy case may be dismissed if this information is not filed with the court within the time deadlines set by the Bankruptcy Code, the Bankruptcy Rules, and the local rules of the court.

B 201 - Notice of Available Chapters (Rev. 06/14)

## Certificate of [Non-Attorney] Bankruptcy Petition Preparer

I, the [non-attorney] bankruptcy petition preparer signing the debtor's petition, hereby certify that I delivered to the debtor this notice required by § 342(b) of the Bankruptcy Code.

_____
Printed name and title, if any, of Bankruptcy Petition Preparer

Social Security number (If the bankruptcy petition
Address: preparer is not an individual, state the
Social Security number of the officer, principal,
responsible person, or partner of the bankruptcy
petition preparer.) (Required by 11 U.S.C. § 110.)

_____

X _____
Signature of Bankruptcy Petition Preparer or officer,
principal, responsible person, or partner whose Social
Security number is provided above.

## Certificate of the Debtor

I (We), the debtor(s), affirm that I (we) have received and read this notice.

Adrian Rudomin
_____
Printed Name(s) of Debtor(s)

_____ 12-15-24
Signature of Debtor      Date

Case No. (if known) _____

X _____
Signature of Joint Debtor (if any)   Date

EXHIBIT 5, PAGE 116

**United States Bankruptcy Court**
**Central District of California**

In Re:    Chantilly Road, LLC                                    Case No:_____

                                                                Chapter:

### STATEMENT REGARDING AUTHORITY TO SIGN AND FILE PETITION

    I, _Adrian Rudomin_____ , declare under penalty of perjury that I am the
[President or Managing Member] of _the owner of the LLC_____ a [California
Corporation or Limited Liability Company] and that on _12/15/2024_____ the following
resolution was duly adopted by the [Board or Members] of this [Corporation or LLC]:

    "Whereas, it is in the best interest of this [Corporation or LLC] to file a voluntary
petition in the United States Bankruptcy Court pursuant to Chapter 11 of Title 11 of the
United States Code:

    Be it Therefore Resolved, that Adrian Rudomin_____, [President or Managing
Member] of this [Corporation or LLC], is authorized and directed to execute and deliver all
documents necessary to perfect the filing of a Chapter 11 voluntary bankruptcy case on
behalf of the [Corporation or LLC]: and

    Be it Further Resolved, that _Adrian Rudomin_____, [President or Managing
Member] of this [Corporation or LLC], is authorized and directed to appear in all
bankruptcy proceedings on behalf of the [Corporation or LLC], and to otherwise do and
perform all acts and deeds and to execute and deliver all necessary documents on behalf of
the [Corporation or LLC] in connection with such bankruptcy case; and

    Be it Further Resolved that _Adrian Rudomin_____, [President or Managing
Member] of this [Corporation or LLC], is authorized and directed to employ the law firm of
Totaro & Shanahan, LLP and its attorneys, to represent the [Corporation or LLC] in such
bankruptcy case."

Executed on: _12/15/2024_____            Signed: _____
                                                Adrian Rudomin
                                                [President or Managing Member]

## STATEMENT OF RELATED CASES
### INFORMATION REQUIRED BY LBR 1015-2
### UNITED STATES BANKRUPTCY COURT, CENTRAL DISTRICT OF CALIFORNIA

1.  A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, his/her spouse, his or her current or former domestic partner, an affiliate of the debtor, any copartnership or joint venture of which debtor is or formerly was a general or limited partner, or member, or any corporation of which the debtor is a director, officer, or person in control, as follows: (Set forth the complete number and title of each such of prior proceeding, date filed, nature thereof, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof.  If none, so indicate.  Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)

    None

2.  (If petitioner is a partnership or joint venture) A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor or an affiliate of the debtor, or a general partner in the debtor, a relative of the general partner, general partner of, or person in control of the debtor, partnership in which the debtor is a general partner, general partner of the debtor, or person in control of the debtor as follows:  (Set forth the complete number and title of each such prior proceeding, date filed, nature of the proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending and, if not, the disposition thereof. If none, so indicate. Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)

    None

3.  (If petitioner is a corporation)  A petition under the Bankruptcy Act of 1898 or the Bankruptcy Reform Act of 1978 has previously been filed by or against the debtor, or any of its affiliates or subsidiaries, a director of the debtor, an officer of the debtor, a person in control of the debtor, a partnership in which the debtor is general partner, a general partner of the debtor, a relative of the general partner, director, officer, or person in control of the debtor, or any persons, firms or corporations owning 20% or more of its voting stock as follows: (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate.  Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)

    None

4.  (If petitioner is an individual) A petition under the Bankruptcy Reform Act of 1978, including amendments thereof, has been filed by or against the debtor within the last 180 days:  (Set forth the complete number and title of each such prior proceeding, date filed, nature of proceeding, the Bankruptcy Judge and court to whom assigned, whether still pending, and if not, the disposition thereof. If none, so indicate.  Also, list any real property included in Schedule A/B that was filed with any such prior proceeding(s).)

    None

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed at _Irvine_____, California

Date: _12/15/2024_____

Signature of Debtor 1

Signature of Debtor 2

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

EXHIBIT 5, PAGE 118

**Fill in this information to identify the case:**

Debtor name  **Chantilly Road, LLC**

United States Bankruptcy Court for the: **CENTRAL DIST. OF CALIFORNIA**

Case number
(if known)

☐ Check if this is an
amended filing

Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders
                                                                        12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claims resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim<br>If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Showroom Interiors. LLC dba Vesta Home 8905 Rex Rd Pico Rivera, CA 90660 | | Lawsuit | Disputed | | | $220,000.00 |
| 2 | Bank of America P.O. Box 982238 El Paso, TX 79998 | | Credit Card | Disputed | | | $14,570.78 |
| 3 | DWP 2417 Daly St. Los Angeles, CA 90031 | | Utility | Disputed | | | $9,125.47 |
| 4 | DWP 2417 Daly St. Los Angeles, CA 90031 | | Utility | Disputed | | | $8,394.11 |
| 5 | Gomez R Plumbing, Inc. 14320 Ventura Blvd. # 704 Sherman Oaks, CA 91423 | | Plumbing | Disputed | | | $2,500.00 |

EXHIBIT 5, PAGE 119

Debtor     **Chantilly Road, LLC**_____     Case number (if known) _____
Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 6 | ACS Security 3803 West Chester Pike #100 New Town Square, PA 19073 | | Security | Disputed | | | $1,315.40 |
| 7 | Martinez Pools & Spas 2334 S. Cloverdale Ave. Los Angeles, CA 90016 | | Maintenance | Disputed | | | $500.00 |
| 8 | Southern California Gas Co P.O. Box C Monterey Park, CA | | Utility | Disputed | | | $184.93 |
| 9 | Zuniga Pool & Spa 9330 Telfair Ave. Sun Valley, CA 91352 | | Pool Service | Disputed | | | $0.00 |
| 10 | M & M Air Conditioning and Heating, Inc. 13995 Wallabi Ave. Sylmar, CA 891342 | | Air Conditioning | Disputed | | | $0.00 |
| 11 | HM Cali, Inc. 153 Lafayette St. 5th Fl New York, NY 10013 | | Staging | Disputed | | | $0.00 |
| 12 | German Cruz 1522 W. 112 St Los Angeles, CA 90047 | | Landscaping | Disputed | | | $0.00 |
| 13 | Creative Art Partners, LLC 6542 Hayes Dr. Los Angeles, CA 90048 | | Art Staging | Disputed | | | $0.00 |

Official Form 204     Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims     page 2

EXHIBIT 5, PAGE 120

Debtor    **Chantilly Road, LLC**_____    Case number (if known) _____
          Name

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim  If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 14 Christopher Lai Johathan M. Deer Quantum Law Group 8383 Whilshire Blvd. # 935 Beverly Hills, CA 90211 | | Lawsuit | Disputed | | | $0.00 |
| 15 Charter Communications Spectrum, P.O. Box 223085 Pittsburg, PA 15251 | | Internet | Disputed | | | $0.00 |
| 16 Castro's HVAC 1990 Meadow View Court Thousand Oaks, CA 91362 | | Air Conditioning | Disputed | | | $0.00 |

EXHIBIT 5, PAGE 121

**Fill in this information to identify the case:**

Debtor Name  **Chantilly Road, LLC**

United States Bankruptcy Court for the:  **CENTRAL DIST. OF CALIFORNIA**

Case number (if known): _____

☐ Check if this is an amended filing

Official Form 206Sum

## Summary of Assets and Liabilities for Non-Individuals

12/15

| Part 1: | Summary of Assets |
|---|---|

1.  **Schedule A/B: Assets--Real and Personal Property** (Official Form 206A/B)

    1a.  Real property:
    Copy line 88 from Schedule A/B......................................................................... | **$28,060,000.00**

    1b.  Total personal property:
    Copy line 91A from Schedule A/B...................................................................... | **$450,000.00**

    1c.  Total of all property
    Copy line 92 from Schedule A/B......................................................................... | **$28,510,000.00**

| Part 2: | Summary of Liabilities |
|---|---|

2.  **Schedule D: Creditors Who Have Claims Secured by Property** (Official Form 206D)
    Copy the total dollar amount listed in Column A, Amount of claim, from line 3 of Schedule D........................ | **$21,317,141.78**

3.  **Schedule E/F: Creditors Who Have Unsecured Claims** (Official Form 206E/F)

    3a.  Total claim amounts of priority unsecured claims:
    Copy the total claims from Part 1 from line 5a of Schedule E/F.......................................................... | **$0.00**

    3b.  Total amount of claims of nonpriority amount of unsecured claims:
    Copy the total of the amount of claims from Part 2 from line 5b of Schedule E/F............................. | **+    $256,590.69**

4.  **Total liabilities**
    Lines 2 + 3a + 3b.......................................................................................................... | **$21,573,732.47**

EXHIBIT 5, PAGE 122

| Fill in this information to identify the case |
|---|

Debtor name    **Chantilly Road, LLC**

United States Bankruptcy Court for the: **CENTRAL DIST. OF CALIFORNIA**

Case number
(if known)

☐ Check if this is an
amended filing

Official Form 206A/B

## Schedule A/B: Assets -- Real and Personal Property

12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
|---|---|

1.  Does the debtor have any cash or cash equivalents?

☑ No. Go to Part 2.
☐ Yes. Fill in the information below.

All cash or cash equivalents owned or controlled by the debtor

Current value of
debtor's interest

2.  Cash on hand

3.  Checking, savings, money market, or financial brokerage accounts *(Identify all)*

Name of institution (bank or brokerage firm)          Type of account          Last 4 digits of
account number

4.  Other cash equivalents    *(Identify all)*

Name of institution (bank or brokerage firm)

5.  Total of Part 1
    Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80.

$0.00

| Part 2: | Deposits and prepayments |
|---|---|

6.  Does the debtor have any deposits or prepayments?

☑ No. Go to Part 3.
☐ Yes. Fill in the information below.

EXHIBIT 5, PAGE 123

| Debtor | **Chantilly Road, LLC** | Case number (if known) _____ |
|---|---|---|
| | Name | |

|  | | Current value of debtor's interest |
|---|---|---|
| 7. | **Deposits, including security deposits and utility deposits** | |
| | Description, including name of holder of deposit | |
| 8. | **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent** | |
| | Description, including name of holder of prepayment | |
| 9. | **Total of Part 2.**<br>Add lines 7 through 8. Copy the total to line 81. | $0.00 |

## Part 3: Accounts receivable

10. Does the debtor have any accounts receivable?

☑ No. Go to Part 4.
☐ Yes. Fill in the information below.

Current value of debtor's interest

11. Accounts receivable

11a. 90 days old or less: _____ – _____ = ............ ➔ _____
face amount            doubtful or uncollectible accounts

11b. Over 90 days old: _____ – _____ = ............ ➔ _____
face amount            doubtful or uncollectible accounts

12. **Total of Part 3**
Current value on lines 11a + 11b = line 12. Copy the total to line 82.               $0.00

## Part 4: Investments

13. Does the debtor own any investments?

☑ No. Go to Part 5.
☐ Yes. Fill in the information below.

|  | | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 14. | **Mutual funds or publicly traded stocks not included in Part 1**<br>Name of fund or stock: | | |
| 15. | **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**<br>Name of entity:        % of ownership: | | |
| 16. | **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**<br>Describe: | | |
| 17. | **Total of Part 4**<br>Add lines 14 through 16. Copy the total to line 83. | | $0.00 |

## Part 5: Inventory, excluding agriculture assets

18. Does the debtor own any inventory (excluding agriculture assets)?

☑ No. Go to Part 6.
☐ Yes. Fill in the information below.

EXHIBIT 5, PAGE 124

| Debtor | **Chantilly Road, LLC** | | | Case number (if known) | |
| | Name | | | | |

| General description | Date of the last physical inventory MM/DD/YYYY | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 19. Raw materials | | | | |
| 20. Work in progress | | | | |
| 21. Finished goods, including goods held for resale | | | | |
| 22. Other inventory or supplies | | | | |
| 23. Total of Part 5 Add lines 19 through 22. Copy the total to line 84. | | | | $0.00 |

24. Is any of the property listed in Part 5 perishable?
☐ No
☐ Yes

25. Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?
☐ No
☐ Yes.  Book value _____    Valuation method _____    Current value _____

26. Has any of the property listed in Part 5 been appraised by a professional within the last year?
☐ No
☐ Yes

### Part 6: Farming and fishing-related assets (other than titled motor vehicles and land)

27. Does the debtor own or lease any farming or fishing-related assets (other than titled motor vehicles and land)?
☑ No.  Go to Part 7.
☐ Yes.  Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 28. Crops--either planted or harvested | | | |
| 29. Farm animals  *Examples:* Livestock, poultry, farm-raised fish | | | |
| 30. Farm machinery and equipment  (Other than titled motor vehicles) | | | |
| 31. Farm and fishing supplies, chemicals, and feed | | | |
| 32. Other farming and fishing-related property not already listed in Part 6 | | | |
| 33. Total of Part 6. Add lines 28 through 32. Copy the total to line 85. | | | $0.00 |

34. Is the debtor a member of an agricultural cooperative?
☐ No
☐ Yes.  Is any of the debtor's property stored at the cooperative?
   ☐ No
   ☐ Yes

35. Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?
☐ No
☐ Yes.  Book value _____    Valuation method _____    Current value _____

36. Is a depreciation schedule available for any of the property listed in Part 6?
☐ No
☐ Yes

37. Has any of the property listed in Part 6 been appraised by a professional within the last year?
☐ No
☐ Yes

EXHIBIT 5, PAGE 125

Debtor    **Chantilly Road, LLC**                                        Case number (if known) _____
      Name

## Part 7:  Office furniture, fixtures, and equipment; and collectibles

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

    ☑ No. Go to Part 8.
    ☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 39. Office furniture | | | |
| 40. Office fixtures | | | |
| 41. Office equipment, including all computer equipment and communication systems equipment and software | | | |
| 42. Collectibles  *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |

43. **Total of Part 7.**
    Add lines 39 through 42. Copy the total to line 86.                                          **$0.00**

44. **Is a depreciation schedule available for any of the property listed in Part 7?**
    ☐ No
    ☐ Yes

45. **Has any of the property listed in Part 7 been appraised by a professional within the last year?**
    ☐ No
    ☐ Yes

## Part 8:  Machinery, equipment, and vehicles

46. **Does the debtor own or lease any machinery, equipment, or vehicles?**

    ☑ No. Go to Part 9.
    ☐ Yes. Fill in the information below.

| General description Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles | | | |
| 48. Watercraft, trailers, motors, and related accessories  Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels | | | |
| 49. Aircraft and accessories | | | |
| 50. Other machinery, fixtures, and equipment (excluding farm machinery and equipment) | | | |

51. **Total of Part 8.**
    Add lines 47 through 50. Copy the total to line 87.                                          **$0.00**

52. **Is a depreciation schedule available for any of the property listed in Part 8?**
    ☐ No
    ☐ Yes

53. **Has any of the property listed in Part 8 been appraised by a professional within the last year?**
    ☐ No
    ☐ Yes

EXHIBIT 5, PAGE 126

| Debtor | Chantilly Road, LLC | Case number (if known) _____ |
|---|---|---|
| | Name | |

## Part 9: Real property

**54.** Does the debtor own or lease any real property?

☐ No. Go to Part 10.
☑ Yes. Fill in the information below.

**55.** Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1. **1116 N. Chantilly Rd.**<br>**Los Angeles, CA 90077**<br>1116 N. Chantilly Rd., Los Angeles, CA 90077<br>**Single Family Home** | Fee Simple | | Appraisal | $28,060,000.00 |
| 55.2. **1118 N. Chantilly Rd.**<br>**Los Angeles, CA 90077**<br>1118 N. Chantilly Rd., Los Angeles, CA 90077<br>Lien included in lien for 1116 N. Chantilly Rd. | Fee Simple | | | $0.00 |

**56.** Total of Part 9.
Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.

$28,060,000.00

**57.** Is a depreciation schedule available for any of the property listed in Part 9?
☑ No
☐ Yes

**58.** Has any of the property listed in Part 9 been appraised by a professional within the last year?
☑ No
☐ Yes

## Part 10: Intangibles and Intellectual Property

**59.** Does the debtor have any interests in intangibles or intellectual property?

☑ No. Go to Part 11.
☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **60.** Patents, copyrights, trademarks, and trade secrets | | | |
| **61.** Internet domain names and websites | | | |
| **62.** Licenses, franchises, and royalties | | | |
| **63.** Customer lists, mailing lists, or other compilations | | | |
| **64.** Other intangibles, or intellectual property | | | |

EXHIBIT 5, PAGE 127

| Debtor | **Chantilly Road, LLC** | Case number (if known) | |
|---|---|---|---|
| | Name | | |

**65.** Goodwill

**66.** Total of Part 10.
Add lines 60 through 65. Copy the total to line 89. | **$0.00**

**67.** Do your lists or records include personally identifiable information of customers (as defined in 11 U.S.C. §§ 101(41A) and 107)?
☐ No
☐ Yes

**68.** Is there an amortization or other similar schedule available for any of the property listed in Part 10?
☐ No
☐ Yes

**69.** Has any of the property listed in Part 10 been appraised by a professional within the last year?
☐ No
☐ Yes

## Part 11: All other assets

**70.** Does the debtor own any other assets that have not yet been reported on this form?
Include all interests in executory contracts and unexpired leases not previously reported on this form.

☐ No. Go to Part 12.
☑ Yes. Fill in the information below.

Current value of
debtor's interest

**71.** Notes receivable

Description (include name of obligor)

**72.** Tax refunds and unused net operating losses (NOLs)

Description (for example, federal, state, local)

**73.** Interests in insurance policies or annuities

**74.** Causes of action against third parties (whether or not a lawsuit has been filed)

| Lawsuit for Damages Estimate can be up to 900,000 | | Unknown |
|---|---|---|
| Nature of claim | Breach of Contract, Usery | |
| Amount requested | $400,000.00 | |

| Kismi, LLC Paul Martino The Maimon Group Eve and Roque Blue Projects Harleeny, LLC National Speciality Ins. Co. Verifly Insurance Services, LLC dba Thimble Insurance Services | | $300,000.00 |
|---|---|---|
| Nature of claim | Breach of Contract and Damage | |
| Amount requested | $300,000.00 | |

| Christopher Lai plus punitive damages | | $150,000.00 |
|---|---|---|
| Nature of claim | Malicious Prosecution | |
| Amount requested | $150,000.00 | |

EXHIBIT 5, PAGE 128

Debtor   **Chantilly Road, LLC**                                    Case number (if known) _____
         <sub>Name</sub>

75. **Other contingent and unliquidated claims or causes of action of every nature,**
    **including counterclaims of the debtor and rights to set off claims**

76. **Trusts, equitable or future interests in property**

77. **Other property of any kind not already listed** *Examples:* Season tickets, country club membership

78. **Total of Part 11.**                                                                    | $450,000.00 |
    Add lines 71 through 77. Copy the total to line 90.

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**
    ☑ No
    ☐ Yes

## Part 12: Summary

In Part 12 copy all of the totals from the earlier parts of the form.

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $0.00 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $0.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | $0.00 | |
| 83. **Investments.** *Copy line 17, Part 4.* | $0.00 | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $0.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | $0.00 | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $0.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $0.00 | |
| 88. **Real property.** *Copy line 56, Part 9.* ........................→ | | $28,060,000.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + $450,000.00 | |
| 91. **Total.** Add lines 80 through 90 for each column. | 91a. $450,000.00 | + 91b. $28,060,000.00 |

92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92............................   | $28,510,000.00 |

EXHIBIT 5, PAGE 129

| Fill in this information to identify the case: | |
|---|---|
| Debtor name | **Chantilly Road, LLC** |
| United States Bankruptcy Court for the: **CENTRAL DIST. OF CALIFORNIA** | |
| Case number (if known) | ☐ Check if this is an amended filing |

Official Form 206D

## Schedule D: Creditors Who Have Claims Secured by Property                12/15

Be as complete and accurate as possible.

1. **Do any creditors have claims secured by debtor's property?**

☐ No. Check this box and submit page 1 of this form to the court with debtor's other schedules. Debtor has nothing else to report on this form.

☑ Yes. Fill in all of the information below.

### Part 1:    List Creditors Who Have Secured Claims

2. List in alphabetical order all creditors who have secured claims. If a creditor has more than one secured claim, list the creditor separately for each claim.

| | | Column A Amount of claim Do not deduct the value of collateral. | Column B Value of collateral that supports this claim |
|---|---|---|---|
| **2.1** Creditor's name **All State Lending Group, Inc** | Describe debtor's property that is subject to a lien **SFH** | $2,500,000.00 | $28,060,000.00 |

Creditor's mailing address
**2540 Corporate Place #B-108**

Describe the lien
**3rd DOT / Agreement**

**Monterey Park    CA   91754**

Is the creditor an insider or related party?
☑ No
☐ Yes

Creditor's email address, if known

Is anyone else liable on this claim?
☑ No
☐ Yes. Fill out *Schedule H: Codebtors* (Official Form 206H)

Date debt was incurred   **September 202:**

Last 4 digits of account number   **0   8   1   4**

As of the petition filing date, the claim is:
Check all that apply.

Do multiple creditors have an interest in the same property?
☐ No
☑ Yes. Specify each creditor, including this creditor, and its relative priority.

☐ Contingent
☐ Unliquidated
☑ Disputed

1) Banc of California; 2) CapStack Partners; 3) All State Lending Group, Inc.

3. Total of the dollar amounts from Part 1, Column A, including the amounts from the Additional Page, if any.                $21,317,141.78

EXHIBIT 5, PAGE 130

Debtor    **Chantilly Road, LLC** _____    Case number (if known) _____

| **Part 1:** | **Additional Page** | | Column A | Column B |
|---|---|---|---|---|
| | | | **Amount of claim** | **Value of collateral** |
| Copy this page only if more space is needed.  Continue numbering the lines sequentially from the previous page. | | | Do not deduct the value of collateral. | that supports this claim |

**2.2**

| Creditor's name | Describe debtor's property that is | $16,181,893.37 | $28,060,000.00 |
|---|---|---|---|
| **Banc of California** | subject to a lien | | |

Creditor's mailing address
**11611 San Vicente Blvd., #500**

Describe debtor's property that is subject to a lien
**1116 N. Chantilly Rd., Los Angeles, CA 90077**

Describe the lien
**First Deed of Trust / Agreement**

**Los Angeles        CA    90049**

Creditor's email address, if known
_____

Is the creditor an insider or related party?
☑ No
☐ Yes

Date debt was incurred    **December 2021**

Is anyone else liable on this claim?
☑ No
☐ Yes.  Fill out *Schedule H: Codebtors* (Official Form 206H)

Last 4 digits of account
number            **4   7   2   9**

As of the petition filing date, the claim is:
Check all that apply.

Do multiple creditors have an interest in the same property?
☐ No
☑ Yes.  Have you already specified the relative priority?

☐ Contingent
☐ Unliquidated
☑ Disputed

☑ No.  Specify each creditor, including this creditor, and its relative priority.

For 1116 N. Chantilly Rd., Los Angeles, CA 90077: See 2.1.  For 1118 N. Chantilly Rd., Los Angeles, CA 90077: 1) Banc of California; 2) CapStack Partners.

☐ Yes.  The relative priority of creditors is specified on lines _____

**2.3**

| Creditor's name | Describe debtor's property that is | $2,635,248.41 | $28,060,000.00 |
|---|---|---|---|
| **CapStack Partners** | subject to a lien | | |

Creditor's mailing address
**1601 Clint Moore Rd #182**

Describe debtor's property that is subject to a lien
**1116 N. Chantilly Rd., Los Angeles, CA 90077**

Describe the lien
**Second DOT / Agreement**

**Boca Raton        FL    33487**

Creditor's email address, if known
_____

Is the creditor an insider or related party?
☑ No
☐ Yes

Date debt was incurred    **November 2023**

Is anyone else liable on this claim?
☑ No
☐ Yes.  Fill out *Schedule H: Codebtors* (Official Form 206H)

Last 4 digits of account
number            **R   o   a   d**

As of the petition filing date, the claim is:
Check all that apply.

Do multiple creditors have an interest in the same property?
☐ No
☑ Yes.  Have you already specified the relative priority?

☐ Contingent
☐ Unliquidated
☑ Disputed

☐ No.  Specify each creditor, including this creditor, and its relative priority.

☑ Yes.  The relative priority of creditors is specified on lines **2.1, 2.2**

EXHIBIT 5, PAGE 131

**Fill in this information to identify the case:**

Debtor **Chantilly Road, LLC**

United States Bankruptcy Court for the: **CENTRAL DIST. OF CALIFORNIA**

Case number
(if known)

☐ Check if this is an
 amended filing

## Official Form 206E/F

## Schedule E/F: Creditors Who Have Unsecured Claims   12/15

Be as complete and accurate as possible. Use Part 1 for creditors with PRIORITY unsecured claims and Part 2 for creditors with
NONPRIORITY unsecured claims. List the other party to any executory contracts or unexpired leases that could result in a claim.
Also list executory contracts on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B) and on *Schedule G:
Executory Contracts and Unexpired Leases* (Official Form 206G). Number the entries in Parts 1 and 2 in the boxes on the left.
If more space is needed for Part 1 or Part 2, fill out and attach the Additional Page of that Part included in this form.

### Part 1: List All Creditors with PRIORITY Unsecured Claims

1. Do any creditors have priority unsecured claims? (See 11 U.S.C. § 507).

  ☑ No. Go to Part 2.
  ☐ Yes. Go to line 2.

2. List in alphabetical order all creditors who have unsecured claims that are entitled to priority in whole or part.
  If more space is needed for priority unsecured claims, fill out and attach the Additional Page of Part 1.

|  | | Total claim | Priority amount |
|---|---|---|---|
| **2.1** Priority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | | |

☐ Contingent
☐ Unliquidated
☐ Disputed

Basis for the claim:

Date or dates debt was incurred

Is the claim subject to offset?

☐ No
☐ Yes

Last 4 digits of account
number  ___  ___  ___  ___

Specify Code subsection of PRIORITY unsecured
claim: 11 U.S.C. § 507(a)(  )

EXHIBIT 5, PAGE 132

| Debtor | **Chantilly Road, LLC** | Case number (if known) |

## Part 2:    List All Creditors with NONPRIORITY Unsecured Claims

3.   **List in alphabetical order all of the creditors with nonpriority unsecured claims.** If more space is needed for nonpriority unsecured claims, fill out and attach the Additional Page of Part 2.

Amount of claim

| 3.1 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $1,315.40 |
|---|---|---|---|

**ACS Security**

**3803 West Chester Pike #100**

- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Basis for the claim:
**Security**

| **New Town Square** | **PA** | **19073** |

Date or dates debt was incurred    **2024**

Is the claim subject to offset?
- ☑ No
- ☐ Yes

Last 4 digits of account number    **6   8   9   5**

| 3.2 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $14,570.78 |
|---|---|---|---|

**Bank of America**

**P.O. Box 982238**

- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Basis for the claim:
**Credit Card**

| **El Paso** | **TX** | **79998** |

Date or dates debt was incurred    **2024**

Is the claim subject to offset?
- ☑ No
- ☐ Yes

Last 4 digits of account number    **7   6   1   3**

| 3.3 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Castro's HVAC**

**1990 Meadow View Court**

- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Basis for the claim:
**Air Conditioning**

| **Thousand Oaks** | **CA** | **91362** |

Date or dates debt was incurred    **2023**

Is the claim subject to offset?
- ☑ No
- ☐ Yes

Last 4 digits of account number    **R   o   a   d**

| 3.4 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

**Charter Communications**

**Spectrum,**

**P.O. Box 223085**

- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Basis for the claim:
**Internet**

| **Pittsburg** | **PA** | **15251** |

Date or dates debt was incurred    **2024**

Is the claim subject to offset?
- ☑ No
- ☐ Yes

Last 4 digits of account number    **2   4   0   1**

EXHIBIT 5, PAGE 133

| Debtor | **Chantilly Road, LLC** | Case number (if known) | |

## Part 2:   Additional Page

Copy this page only if more space is needed.  Continue numbering the lines sequentially from the
previous page.  If no additional NONPRIORITY creditors exist, do not fill out or submit this page.

Amount of claim

---

**3.5** Nonpriority creditor's name and mailing address

Christopher Lai

Johathan M. Deer

Quantum Law Group

8383 Whilshire Blvd. #935

Beverly Hills          CA      90211

Date or dates debt was incurred      2023

Last 4 digits of account number     0  4  6  7

As of the petition filing date, the claim is:
Check all that apply.

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:
Lawsuit

Is the claim subject to offset?
☑ No
☐ Yes

**Unknown**

---

**3.6** Nonpriority creditor's name and mailing address

Creative Art Partners, LLC

6542 Hayes Dr.

Los Angeles          CA      90048

Date or dates debt was incurred      2024

Last 4 digits of account number     I  y  R  d

As of the petition filing date, the claim is:
Check all that apply.

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:
Art Staging

Is the claim subject to offset?
☑ No
☐ Yes

**Unknown**

---

**3.7** Nonpriority creditor's name and mailing address

DWP

2417 Daly St.

Los Angeles          CA      90031

Date or dates debt was incurred      2024

Last 4 digits of account number     8  8  0  2

As of the petition filing date, the claim is:
Check all that apply.

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:
Utility

Is the claim subject to offset?
☑ No
☐ Yes

**$8,394.11**

---

**3.8** Nonpriority creditor's name and mailing address

DWP

2417 Daly St.

Los Angeles          CA      90031

Date or dates debt was incurred      2024

Last 4 digits of account number     3  0  0  3

As of the petition filing date, the claim is:
Check all that apply.

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:
Utility

Is the claim subject to offset?
☑ No
☐ Yes

**$9,125.47**

---

EXHIBIT 5, PAGE 134

| Debtor | Chantilly Road, LLC | | Case number (if known) | |
|--------|---------------------|--|------------------------|--|

## Part 2:    Additional Page

Copy this page only if more space is needed. Continue numbering the lines sequentially from the
previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page.

**Amount of claim**

| 3.9 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: | Unknown |
|-----|--|--|--|

**3.9** Nonpriority creditor's name and mailing address

German Cruz

1522 W. 112 St

Los Angeles            CA      90047

Date or dates debt was incurred      2024

Last 4 digits of account number      R  o  a  d

As of the petition filing date, the claim is:
*Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Basis for the claim:
Landscaping

Is the claim subject to offset?
- ☑ No
- ☐ Yes

Amount of claim: **Unknown**

---

**3.10** Nonpriority creditor's name and mailing address

Gomez R Plumbing, Inc.

14320 Ventura Blvd. #704

Sherman Oaks            CA      91423

Date or dates debt was incurred      2024

Last 4 digits of account number      R  o  a  d

As of the petition filing date, the claim is:
*Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Basis for the claim:
Plumbing

Is the claim subject to offset?
- ☑ No
- ☐ Yes

Amount of claim: **$2,500.00**

---

**3.11** Nonpriority creditor's name and mailing address

HM Cali, Inc.

153 Lafayette St. 5th Fl

New York            NY      10013

Date or dates debt was incurred      2023

Last 4 digits of account number      l  y  R  d

As of the petition filing date, the claim is:
*Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Basis for the claim:
Staging

Is the claim subject to offset?
- ☑ No
- ☐ Yes

Amount of claim: **Unknown**

---

**3.12** Nonpriority creditor's name and mailing address

M & M Air Conditioning and Heating, Inc.

13995 Wallabi Ave.

Sylmar, CA 891342

Date or dates debt was incurred      2023-2024

Last 4 digits of account number      R  o  a  d

As of the petition filing date, the claim is:
*Check all that apply.*
- ☐ Contingent
- ☐ Unliquidated
- ☑ Disputed

Basis for the claim:
Air Conditioning

Is the claim subject to offset?
- ☑ No
- ☐ Yes

Amount of claim: **Unknown**

---

EXHIBIT 5, PAGE 135

Case 8:24-bk-13197-TA   Doc 1   Filed 12/15/24   Entered 12/15/24 17:49:10   Desc
Main Document      Page 29 of 47

Debtor    **Chantilly Road, LLC**_____    Case number (if known) _____

---

## Part 2:    Additional Page

Copy this page only if more space is needed. Continue numbering the lines sequentially from the
previous page. If no additional NONPRIORITY creditors exist, do not fill out or submit this page.                     Amount of claim

| 3.13 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $500.00 |
|---|---|---|---|

Martinez Pools & Spas

2334 S. Cloverdale Ave.

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:
Maintenance

Los Angeles              CA      90016

Date or dates debt was incurred    2024

Last 4 digits of account number    R  o  a  d

Is the claim subject to offset?
☑ No
☐ Yes

---

| 3.14 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $220,000.00 |
|---|---|---|---|

Showroom Interiors. LLC

dba Vesta Home

8905 Rex Rd

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:
Lawsuit

Pico Rivera              CA      90660

Date or dates debt was incurred    2024

Last 4 digits of account number    s  u  i  t

Is the claim subject to offset?
☑ No
☐ Yes

---

| 3.15 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | $184.93 |
|---|---|---|---|

Southern California Gas Co

P.O. Box C

Monterey Park, CA

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:
Utility

Date or dates debt was incurred    2024

Last 4 digits of account number    3  5  4  7

Is the claim subject to offset?
☑ No
☐ Yes

---

| 3.16 | Nonpriority creditor's name and mailing address | As of the petition filing date, the claim is: *Check all that apply.* | Unknown |
|---|---|---|---|

Zuniga Pool & Spa

9330 Telfair Ave.

☐ Contingent
☐ Unliquidated
☑ Disputed

Basis for the claim:
Pool Service

Sun Valley               CA      91352

Date or dates debt was incurred    2024

Last 4 digits of account number    l  y  R  d

Is the claim subject to offset?
☑ No
☐ Yes

---

EXHIBIT 5, PAGE 136

Debtor     **Chantilly Road, LLC**                                                        Case number (if known) _____

| **Part 4:** | **Total Amounts of the Priority and Nonpriority Unsecured Claims** |
|---|---|

5.    Add the amounts of priority and nonpriority unsecured claims.

|  |  |  | Total of claim amounts |
|---|---|---|---|
| 5a. | Total claims from Part 1 | 5a. | $0.00 |
| 5b. | Total claims from Part 2 | 5b. **+** | $256,590.69 |
| 5c. | Total of Parts 1 and 2<br>Lines 5a + 5b = 5c. | 5c. | $256,590.69 |

EXHIBIT 5, PAGE 137

**Fill in this information to identify the case:**

Debtor name    **Chantilly Road, LLC**

United States Bankruptcy Court for the: **CENTRAL DIST. OF CALIFORNIA**

Case number         Chapter   **11**      ☐ Check if this is an
(if known)                                   amended filing

Official Form 206G

## Schedule G: Executory Contracts and Unexpired Leases      12/15

Be as complete and accurate as possible. If more space is needed, copy and attach the additional page, numbering the entries consecutively.

1.   Does the debtor have any executory contracts or unexpired leases?

     ☐ No. Check this box and file this form with the court with the debtor's other schedules. There is nothing else to report on this form.
     ☑ Yes. Fill in all of the information below even if the contracts or leases are listed on *Schedule A/B: Assets - Real and Personal Property* (Official Form 206A/B).

2.   List all contracts and unexpired leases                State the name and mailing address for all other parties with whom the debtor has an executory contract or unexpired lease

| 2.1 | State what the contract or lease is for and the nature of the debtor's interest | Security<br>Contract to be ASSUMED | ACS Security<br>3803 West Chester Pike #100 | | |
|---|---|---|---|---|---|
| | State the term remaining | | | | |
| | List the contract number of any government contract | | New Town Square | PA | 19073 |
| 2.2 | State what the contract or lease is for and the nature of the debtor's interest | Rental Of Art<br>Contract to be ASSUMED | Creative Art Partners, LLC<br>6542 Hayes Dr. | | |
| | State the term remaining | | | | |
| | List the contract number of any government contract | | Los Angeles | CA | 90048 |
| 2.3 | State what the contract or lease is for and the nature of the debtor's interest | Staging Company<br>Contract to be ASSUMED | HM Cali, Inc.<br>153 Lafayette St. 5th Fl | | |
| | State the term remaining | | | | |
| | List the contract number of any government contract | | New York | NY | 10013 |

EXHIBIT 5, PAGE 138

**Fill in this information to identify the case:**

Debtor name    **Chantilly Road, LLC**

United States Bankruptcy Court for the: **CENTRAL DIST. OF CALIFORNIA**

Case number
(if known)

☐ Check if this is an
amended filing

## Official Form 206H

## Schedule H: Codebtors                                                                    12/15

Be as complete and accurate as possible. If more space is needed, copy the Additional Page, numbering the entries
consecutively. Attach the Additional Page to this page.

1.  **Does the debtor have any codebtors?**

☐ No. Check this box and submit this form to the court with the debtor's other schedules. Nothing else needs to be reported on this form.

☑ Yes

2.  **In Column 1, list as codebtors all of the people or entities who are also liable for any debts listed by the debtor in the
    schedules of creditors, *Schedules D-G.*** Include all guarantors and co-obligors. In Column 2, identify the creditor to whom the debt is
    owed and each schedule on which the creditor is listed. If the codebtor is liable on a debt to more than one creditor, list each creditor
    separately in Column 2.

| Column 1: Codebtor | | Column 2: Creditor | |
|---|---|---|---|
| Name | Mailing address | Name | Check all schedules that apply: |
| **2.1** **Diego Rudomin** | **36 Breeze Ave.**<br>Number    Street | **Bank of America** | ☐ D<br>☑ E/F<br>☐ G |
| | **Venice**      **CA**  **90291**<br>City          State  ZIP Code | | |

EXHIBIT 5, PAGE 139

**Fill in this information to identify the case and this filing:**

Debtor Name    **Chantilly Road, LLC**

United States Bankruptcy Court for the: **CENTRAL DIST. OF CALIFORNIA**

Case number
(if known)

Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors

12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☑  *Schedule A/B: Assets--Real and Personal Property* (Official Form 206A/B)

☑  *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☑  *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☑  *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☑  *Schedule H: Codebtors* (Official Form 206H)

☑  *A Summary of Assets and Liabilities for Non-Individuals* (Official Form 206-Summary)

☐  Amended Schedule

☑  *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☐  Other document that requires a declaration

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **12/15/2024**          X _____
         MM / DD / YYYY                          Signature of individual signing on behalf of debtor

                                        **Adrian Rudomin**
                                        Printed name
                                        **Managing Member**
                                        Position or relationship to debtor

Official Form 202          Declaration Under Penalty of Perjury for Non-Individual Debtors

**Fill in this information to identify the case:**

Debtor name    **Chantilly Road, LLC**

United States Bankruptcy Court for the: **CENTRAL DIST. OF CALIFORNIA**

Case number
(if known)

☐ Check if this is an
amended filing

Official Form 207

## Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy        04/22

The debtor must answer every question. If more space is needed, attach a separate sheet to this form. On the top of any
additional pages, write the debtor's name and case number (if known).

### Part 1:    Income

1.    **Gross revenue from business**

☐ None

| Identify the beginning and ending dates of the debtor's fiscal year, which may be a calendar year | | | | Sources of revenue<br>Check all that apply. | Gross revenue<br>(before deductions<br>and exclusions |
|---|---|---|---|---|---|
| From the beginning of the fiscal year to filing date: | From **01/01/2024**<br>MM / DD / YYYY | to | Filing date | ☑ Operating a business<br>☐ Other _____ | $70,000.00 |
| For prior year: | From **01/01/2023**<br>MM / DD / YYYY | to | **12/31/2023**<br>MM / DD / YYYY | ☑ Operating a business<br>☐ Other _____ | $0.00 |
| For the year before that: | From **01/01/2022**<br>MM / DD / YYYY | to | **12/31/2022**<br>MM / DD / YYYY | ☑ Operating a business<br>☐ Other _____ | $0.00 |

2.    **Non-business revenue**

Include revenue regardless of whether that revenue is taxable. *Non-business income* may include interest, dividends, money collected from
lawsuits, and royalties. List each source and the gross revenue for each separately. Do not include revenue listed in line 1.

☑ None

### Part 2:    List Certain Transfers Made Before Filing for Bankruptcy

3.    **Certain payments or transfers to creditors within 90 days before filing this case**

List payments or transfers--including expense reimbursements--to any creditor, other than regular employee compensation, within 90 days
before filing this case unless the aggregate value of all property transferred to that creditor is less than $7,575. (This amount may be
adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)

☑ None

EXHIBIT 5, PAGE 141

| Debtor | **Chantilly Road, LLC** | Case number (if known) | |
|---|---|---|---|
| | Name | | |

**4.  Payments or other transfers of property made within 1 year before filing this case that benefited any insider**

List payments or transfers, including expense reimbursements, made within 1 year before filing this case on debts owed to an insider or guaranteed or co-signed by an insider unless the aggregate value of all property transferred to or for the benefit of the insider is less than $7,575.  (This amount may be adjusted on 4/01/25 and every 3 years after that with respect to cases filed on or after the date of adjustment.)  Do not include any payments listed in line 3.  Insiders include officers, directors, and anyone in control of a corporate debtor and their relatives; general partners of a partnership debtor and their relatives; affiliates of the debtor and insiders of such affiliates; and any managing agent of the debtor.  11 U.S.C. § 101(31).

☑ None

**5.  Repossessions, foreclosures, and returns**

List all property of the debtor that was obtained by a creditor within 1 year before filing this case, including property repossessed by a creditor, sold at a foreclosure sale, transferred by a deed in lieu of foreclosure, or returned to the seller.  Do not include property listed in line 6.

☑ None

**6.  Setoffs**

List any creditor, including a bank or financial institution, that within 90 days before filing this case set off or otherwise took anything from an account of the debtor without permission or refused to make a payment at the debtor's direction from an account of the debtor because the debtor owed a debt.

☑ None

## Part 3:   Legal Actions or Assignments

**7.  Legal actions, administrative proceedings, court actions, executions, attachments, or governmental audits**
List the legal actions, proceedings, investigations, arbitrations, mediations, and audits by federal or state agencies in which the debtor was involved in any capacity--within 1 year before filing this case.

☐ None

| Case title | Nature of case | Court or agency's name and address | Status of case |
|---|---|---|---|
| 7.1.  **Lai v. Chantilly Road, LLC** | **Negligence** | **Los Angeles Superiot Court** <br> Name <br> **111 N. Hill St.** <br> Street | ☑ Pending <br> ☐ On appeal <br> ☐ Concluded |
| Case number <br> **23STCF20467** | | **Los Angeles**    CA   **90012** <br> City          State   ZIP Code | |

**8.  Assignments and receivership**

List any property in the hands of an assignee for the benefit of creditors during the 120 days before filing this case and any property in the hands of a receiver, custodian, or other court-appointed officer within 1 year before filing this case.

☑ None

EXHIBIT 5, PAGE 142

| Debtor | **Chantilly Road, LLC** | Case number (if known) | |
| | Name | | |

## Part 4:    Certain Gifts and Charitable Contributions

9.  List all gifts or charitable contributions the debtor gave to a recipient within 2 years before filing this case unless the
    aggregate value of the gifts to that recipient is less than $1,000

☑ None

## Part 5:    Certain Losses

10. All losses from fire, theft, or other casualty within 1 year before filing this case.

☑ None

## Part 6:    Certain Payments or Transfers

11. **Payments related to bankruptcy**
    List any payments of money or other transfers of property made by the debtor or person acting on behalf of the debtor within 1 year
    before the filing of this case to another person or entity, including attorneys, that the debtor consulted about debt consolidation or
    restructuring, seeking bankruptcy relief, or filing a bankruptcy case.

☐ None

| | Who was paid or who received the transfer? | If not money, describe any property transferred | Dates | Total amount or value |
|---|---|---|---|---|
| 11.1. | **Totaro & Shanahan, LLP** | **Plus Filing Fee of 1738.00** | **12/1/2024** | **$8,000.00** |
| | Address | | | |
| | **P.O. Box 789** | | | |
| | Street | | | |
| | | | | |
| | **Pacific Palisades**    **CA**    **90272** | | | |
| | City    State    ZIP Code | | | |
| | Email or website address | | | |
| | | | | |
| | Who made the payment, if not debtor? | | | |

12. **Self-settled trusts of which the debtor is a beneficiary**
    List any payments or transfers of property made by the debtor or a person acting on behalf of the debtor within 10 years before the filing
    of this case to a self-settled trust or similar device.
    Do not include transfers already listed on this statement.

☑ None

EXHIBIT 5, PAGE 143

| Debtor | **Chantilly Road, LLC** | Case number (if known) | |
|---|---|---|---|
| | Name | | |

**13. Transfers not already listed on this statement**

List any transfers of money or other property--by sale, trade, or any other means--made by the debtor or a person acting on behalf of the debtor within 2 years before the filing of this case to another person, other than property transferred in the ordinary course of business or financial affairs. Include both outright transfers and transfers made as security. Do not include gifts or transfers previously listed on this statement.

☑ None

## Part 7:   Previous Locations

**14. Previous addresses**

List all previous addresses used by the debtor within 3 years before filing this case and the dates the addresses were used.

☑ Does not apply

## Part 8:   Health Care Bankruptcies

**15. Health Care bankruptcies**

Is the debtor primarily engaged in offering services and facilities for:

■ diagnosing or treating injury, deformity, or disease, or

■ providing any surgical, psychiatric, drug treatment, or obstetric care?

☑ No. Go to Part 9.
☐ Yes. Fill in the information below.

## Part 9:   Personally Identifiable Information

**16. Does the debtor collect and retain personally identifiable information of customers?**

☑ No.
☐ Yes. State the nature of the information collected and retained _____

    Does the debtor have a privacy policy about that information?
      ☐ No.
      ☐ Yes.

**17. Within 6 years before filing this case, have any employees of the debtor been participants in any ERISA, 401(k), 403(b) or other pension or profit-sharing plan made available by the debtor as an employee benefit?**

☑ No. Go to Part 10.
☐ Yes. Does the debtor serve as plan administrator?
      ☐ No. Go to Part 10.
      ☐ Yes. Fill in below:

EXHIBIT 5, PAGE 144

Debtor   **Chantilly Road, LLC**                                    Case number (if known) _____
          Name

---

## Part 10:   Certain Financial Accounts, Safe Deposit Boxes, and Storage Units

**18. Closed financial accounts**

Within 1 year before filing this case, were any financial accounts or instruments held in the debtor's name, or for the debtor's benefit, closed, sold, moved, or transferred?

Include checking, savings, money market, or other financial accounts, certificates of deposit, and shares in banks, credit unions, brokerage houses, cooperatives, associations, and other financial institutions.

☑ None

**19. Safe deposit boxes**

List any safe deposit box or other depository for securities, cash, or other valuables the debtor now has or did have within 1 year before filing this case.

☑ None

**20. Off-premises storage**

List any property kept in storage units or warehouses within 1 year before filing this case. Do not include facilities that are in a part of a building in which the debtor does business.

☑ None

---

## Part 11:   Property the Debtor Holds or Controls That the Debtor Does Not Own

**21. Property held for another**

List any property that the debtor holds or controls that another entity owns. Include any property borrowed from, being stored for, or held in trust. Do not list leased or rented property.

☑ None

---

## Part 12:   Details About Environmental Information

For the purpose of Part 12, the following definitions apply:

■ *Environmental law* means any statute or governmental regulation that concerns pollution, contamination, or hazardous material, regardless of the medium affected (air, land, water, or any other medium).

■ *Site* means any location, facility, or property, including disposal sites, that the debtor now owns, operates, or utilizes or that the debtor formerly owned, operated, or utilized.

■ *Hazardous material* means anything that an environmental law defines as hazardous or toxic, or describes as a pollutant, contaminant, or a similarly harmful substance.

**Report all notices, releases, and proceedings known, regardless of when they occurred.**

**22. Has the debtor been a party in any judicial or administrative proceeding under any environmental law?**
Include settlements and orders.

☑ No
☐ Yes. Provide details below.

---

EXHIBIT 5, PAGE 145

Debtor    **Chantilly Road, LLC**                                        Case number (if known) _____
_____
Name

23. **Has any governmental unit otherwise notified the debtor that the debtor may be liable or potentially liable under or in violation of an environmental law?**

☑ No

☐ Yes. Provide details below.

24. **Has the debtor notified any govermental unit of any release of hazardous material?**

☑ No

☐ Yes. Provide details below.

| Part 13: | Details About the Debtor's Business or Connections to Any Business |
|---|---|

25. **Other businesses in which the debtor has or has had an interest**

List any business for which the debtor was an owner, partner, member, or otherwise a person in control within 6 years before filing this case. Include this information even if already listed in the Schedules.

☑ None

26. **Books, records, and financial statements**

26a. List all accountants and bookkeepers who maintained the debtor's books and records within 2 years before filing this case.

☐ None

| Name and address | | | Dates of service |
|---|---|---|---|

26a.1. **Penny M. Fox, CPA**                                    From    **2023**    To    **Present**
Name
**15615 Alton Parkway $450**
Street

**Irvine**                    **CA**        **92618**
City                          State         ZIP Code

26b. List all firms or individuals who have audited, compiled, or reviewed debtor's books of account and records or prepared a financial statement within 2 years before filing this case.

☑ None

26c. List all firms or individuals who were in possession of the debtor's books of account and records when this case is filed.

☐ None

| Name and address | If any books of account and records are unavailable, explain why |
|---|---|

26c.1. **Penny M. Fox, CPA**
Name
**15615 Alton Parkway $450**
Street

**Irvine**                    **CA**        **92618**
City                          State         ZIP Code

EXHIBIT 5, PAGE 146

| Debtor | Chantilly Road, LLC | Case number (if known) | |
|---|---|---|---|
| | Name | | |

26d.  List all financial institutions, creditors, and other parties, including mercantile and trade agencies, to whom the debtor issued a financial statement within 2 years before filing this case.

☑ None

**27. Inventories**

Have any inventories of the debtor's property been taken within 2 years before filing this case?

☑ No.

☐ Yes. Give the details about the two most recent inventories.

**28. List the debtor's officers, directors, managing members, general partners, members in control, controlling shareholders, or other people in control of the debtor at the time of the filing of this case.**

| Name | Address | Position and nature of any interest | % of interest, if any |
|---|---|---|---|
| Adrian Rudomin | 13900 Old Harbor Ln #208 Marina del Rey, CA 90282 | Co-President | |
| Diego Rudomin | 36 Breeze Ave. #3 Venice, CA 90291 | C0-President | |

**29. Within 1 year before the filing of this case, did the debtor have officers, directors, managing members, general partners, members in control of the debtor, or shareholders in control of the debtor who no longer hold these positions?**

☑ No

☐ Yes.  Identify below.

| Name | Address | Position and nature of any interest | Period during which position or interest was held |
|---|---|---|---|

**30. Payments, distributions, or withdrawals credited or given to insiders**

Within 1 year before filing this case, did the debtor provide an insider with value in any form, including salary, other compensation, draws, bonuses, loans, credits on loans, stock redemptions, and options exercised?

☑ No

☐ Yes.  Identify below.

**31. Within 6 years before filing this case, has the debtor been a member of any consolidated group for tax purposes?**

☑ No

☐ Yes.  Identify below.

**32. Within 6 years before filing this case, has the debtor as an employer been responsible for contributing to a pension fund?**

☑ No

☐ Yes.  Identify below.

EXHIBIT 5, PAGE 147

Debtor    **Chantilly Road, LLC**                                                    Case number (if known) _____
              Name

## Part 14:    Signature and Declaration

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.
18 U.S.C. §§ 152, 1341, 1519, and 3571.

I have examined the information in this *Statement of Financial Affairs* and any attachments and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on **12/15/2024**
                MM / DD / YYYY

X _____        Printed name   **Adrian Rudomin**
    Signature of individual signing on behalf of the debtor

    Position or relationship to debtor  **Managing Member** _____

**Are additional pages** to *Statement of Financial Affairs for Non-Individuals Filing for Bankruptcy* (Official Form 207) attached?
☑ No
☐ Yes

EXHIBIT 5, PAGE 148

B2030 (Form 2030) (12/15)

**UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
LOS ANGELES DIVISION**

In re  **Chantilly Road, LLC**                                    Case No. _____

                                                                 Chapter    11    _____

## DISCLOSURE OF COMPENSATION OF ATTORNEY FOR DEBTOR

1. Pursuant to 11 U.S.C. § 329(a) and Fed. Bankr. P. 2016(b), I certify that I am the attorney for the above named debtor(s) and that compensation paid to me within one year before the filing of the petition in bankruptcy, or agreed to be paid to me, for services rendered or to be rendered on behalf of the debtor(s) in contemplation of or in connection with the bankruptcy case is as follows:

| | |
|---|---|
| For legal services, I have agreed to accept................................................. | $8,000.00 |
| Prior to the filing of this statement I have received..................................... | $8,000.00 |
| Balance Due.................................................................................................. | $0.00 |

2. The source of the compensation paid to me was:

☐ Debtor          ☑ Other (specify)
                   **Managing Member of Entity Owner**

3. The source of compensation to be paid to me is:

☑ Debtor          ☐ Other (specify)

4. ☑ I have not agreed to share the above-disclosed compensation with any other person unless they are members and associates of my law firm.

☐ I have agreed to share the above-disclosed compensation with another person or persons who are not members or associates of my law firm. A copy of the agreement, together with a list of the names of the people sharing in the compensation, is attached.

5. In return for the above-disclosed fee, I have agreed to render legal service for all aspects of the bankruptcy case, including:

a. Analysis of the debtor's financial situation, and rendering advice to the debtor in determining whether to file a petition in bankruptcy;

b. Preparation and filing of any petition, schedules, statements of affairs and plan which may be required;

c. Representation of the debtor at the meeting of creditors and confirmation hearing, and any adjourned hearings thereof;

EXHIBIT 5, PAGE 149

B2030 (Form 2030) (12/15)

6.  By agreement with the debtor(s), the above-disclosed fee does not include the following services:

CERTIFICATION

I certify that the foregoing is a complete statement of any agreement or arrangement for payment to me for representation of the debtor(s) in this bankruptcy proceeding.

12/15/2024
Date

Michael R. Totaro                    Bar No.  102229
Totaro & Shanahan, LLP
P.O. Box 789
Pacific Palisades, CA 90272
Phone: (310) 804-2157

Adrian Rudomin
Managing Member

EXHIBIT 5, PAGE 150

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Michael R Totaro<br>Bar Number: 102229<br>Totaro & Shanahan, LLP<br>PO Box 789<br>Pacific Palisades, CA 90272<br>Phone: (310) 804-2157<br>Email: Ocbkatty@aol.com<br><br>☐ Debtor(s) appearing without attorney<br>☑ Attorney for Debtor(s) | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA -SANTA ANA DIVISION

| In re:<br><br>Chantilly Road, LLC | CASE NO.:<br>CHAPTER: 7 |
|---|---|
| | **VERIFICATION OF MASTER MAILING LIST OF CREDITORS**<br><br>**[LBR 1007-1(a)]** |
| Debtor(s). | |

Pursuant to LBR 1007-1(a), the Debtor, or the Debtor's attorney if applicable, certifies under penalty of perjury that the master mailing list of creditors filed in this bankruptcy case, consisting of  3      sheet(s) is complete, correct, and consistent with the Debtor's schedules and I/we assume all responsibility for errors and omissions.

Date:    12/15/2024

Signature of Debtor 1

Date:

Signature of Debtor 2 (joint debtor) (if applicable)

Date:    12/15/2024

Signature of Attorney for Debtor (if applicable)

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California

December 2015

F 1007-1.MAILING.LIST.VERIFICATION

ACS Security
3803 West Chester Pike #100
New Town Square, PA 19073


All State Lending Group, Inc
2540 Corporate Place #B-108
Monterey Park, CA 91754


Banc of California
11611 San Vicente Blvd., #500
Los Angeles, CA 90049


Bank of America
P.O. Box 982238
El Paso, TX 79998


CapStack Partners
1601 Clint Moore Rd #182
Boca Raton, FL 33487


Castro's HVAC
1990 Meadow View Court
Thousand Oaks, CA 91362


Charter Communications
Spectrum,
P.O. Box 223085
Pittsburg, PA 15251


Christopher Lai
Johathan M. Deer
Quantum Law Group
8383 Whilshire Blvd. #935
Beverly Hills, CA 90211

Creative Art Partners, LLC
6542 Hayes Dr.
Los Angeles, CA 90048

Diego Rudomin
36 Breeze Ave.
Venice, CA 90291


DWP
2417 Daly St.
Los Angeles, CA 90031


German Cruz
1522 W. 112 St
Los Angeles, CA 90047


Gomez R Plumbing, Inc.
14320 Ventura Blvd. #704
Sherman Oaks, CA 91423


HM Cali, Inc.
153 Lafayette St. 5th Fl
New York, NY 10013


M & M Air Conditioning and Heating, Inc.
13995 Wallabi Ave.
Sylmar, CA 891342


Martinez Pools & Spas
2334 S. Cloverdale Ave.
Los Angeles, CA 90016


Showroom Interiors. LLC
dba Vesta Home
8905 Rex Rd
Pico Rivera, CA 90660


Southern California Gas Co
P.O. Box C
Monterey Park, CA

Zuniga Pool & Spa
9330 Telfair Ave.
Sun Valley, CA 91352

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
870 Roosevelt, Irvine, CA 92620.

A true and correct copy of the foregoing document entitled: **PETITIONING CREDITORS' MOTION TO APPOINT INTERIM TRUSTEE PURSUANT TO 11 U.S.C. § 303(g)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. <u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)</u>**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On <u>July 8, 2025</u>, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

☒ Service information continued on attached page

**2. <u>SERVED BY UNITED STATES MAIL</u>**: On <u>July 8, 2025</u>, I delivered the document(s) described above via email to Omni Agent Solutions, Trustee's claims and noticing agent, for service on the interested persons and/or entities at the last known addresses by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid and addressed per the adversary mail matrix. Upon completion of the mailing by Omni Agent Solutions, Trustee will file a Certificate of Service listing the parties served by Omni Agent Solutions at the address at which they were addressed.

<u>DEBTOR</u>
CHANTILLY ROAD, LLC
c/o PENNY M. FOX, CPA
15615 ALTON PARKWAY, SUITE 450
IRVINE, CA 92618

<u>DEBTOR</u>
CHANTILLY ROAD, LLC
ATTN: OFFICER, A MANAGING OR GENERAL AGENT, OR TO
ANY OTHER AGENT AUTHORIZED BY APPOINTMENT OR
LAW TO RECEIVE SERVICE OF PROCESS
1207 DELAWARE AVE., STE. 2992
WILMINGTON, DE 19806

☐ Service information continued on attached page

**3. <u>SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL</u>**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on <u>July 8, 2025</u>, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

<u>PRESIDING JUDGE'S COPY - VIA PERSONAL DELIVERY</u>
UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
RONALD REAGAN FEDERAL BUILDING AND COURTHOUSE
411 WEST FOURTH STREET, SUITE 5130 / COURTROOM 5C
SANTA ANA, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| July 8, 2025 | Layla Buchanan | /s/ Layla Buchanan |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*

**F 9013-3.1.PROOF.SERVICE**

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: CONTINUED:

- **ATTORNEY FOR PETITIONING CREDITORS:** D Edward Hays    ehays@marshackhays.com, ehays@ecf.courtdrive.com; alinares@ecf.courtdrive.com; cmendoza@marshackhays.com; cmendoza@ecf.courtdrive.com
- **ATTORNEY FOR SECURED CREDITOR CSPRF 2 LLC:** Gabriel P Herrera    gherrera@kmtg.com, bxiong@kmtg.com
- **INTERESTED PARTY COURTESY NEF:** Harry D. Hochman    hhochman@pszjlaw.com, hhochman@pszjlaw.com
- **INTERESTED PARTY COURTESY NEF:** Harris M Madnick    hmmadnick@kramarmadnick.com
- **ATTORNEY FOR DEBTOR CHANTILLY ROAD, LLC:** Richard Morin    legal@rickmorin.net
- **ATTORNEY FOR SECURED CREDITOR CIVIC REAL ESTATE HOLDINGS III, LLC:** Richard M Pachulski    rpachulski@pszjlaw.com
- **ATTORNEY FOR PETITIONING CREDITORS:** Laila Rais    lmasud@marshackhays.com, lmasud@ecf.courtdrive.com; lbuchanan@marshackhays.com; alinares@ecf.courtdrive.com
- **U.S. TRUSTEE:** United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2012                                                                                **F 9013-3.1.PROOF.SERVICE**